IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **ROBERT BERG,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| **vs.** | § | **Case No. 6:19-cv-418-JDK** |
| | § | |
| | § | |
| **M&F WESTERN PRODUCTS, INC.,** | | |
| **Defendant.** | | |

### DECLARATION OF J. CRUMRINE LASHELLE IN SUPPORT OF M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Jeanne Crumrine LaShelle, declare as follows:

1. I submit this Declaration in support of M&F Western's Motion for Partial Summary Judgment regarding Plaintiff's claims of copyright infringement pertaining to Copyright Registration No. VA 1-159-548 ("the Buckle Registration"). If called as a witness, I could and would testify competently to the matters set forth in this Declaration.

2. I am currently employed by M&F Western Products, Inc. in the position of designer and engraver in Reno, Nevada. I have worked at M&F Western since 2007 in this position. As discussed below, I have been in the Western Jewelry industry and a jewelry designer for more than 50 years.

3. My father started Crumrine Manufacturing Jewelry, Inc. and I started working for his company (and with him) in 1970 as a designer and engraver working on buckles and jewelry design, among other things. My work evolved through the years, and by the mid-1990s, I was overseeing art and design work for Crumrine. This meant that I worked closely with our designers to help create our signature product lines.

**PAGE 1**

4. Starting in 2005, I became the President of Crumrine Manufacturing Jewelers, Inc., where my duties included overseeing all aspects of the business and I also continued as a designer and engraver and oversaw art and design.

5. In 2007, M&F Western and Crumrine Buckle Co. jointly acquired Crumrine Manufacturing Jewelers, Inc. as well as the copyrights in its designs through an Asset Purchase Agreement. While the details of the agreement are confidential, the fact that Crumrine Manufacturing Jewelers sold its business and intellectual property rights to M&F Western is not confidential. The intellectual property rights in the Crumrine Buckle discussed below were transferred via the Asset Purchase Agreement to M&F Western and Crumrine Buckle Co. A true and correct copy of the Asset Purchase Agreement, to which I am a signatory, is attached hereto as **Exhibit A** (with the purchase price redacted).

6. I have read Plaintiff's Amended Complaint and understand that the Plaintiff accuses two of M&F Western's belt buckles of infringing his copyright in the Buckle Registration. In particular, I understand that the accused products are an oval-shaped buckle and a barrel-shaped buckle each with a series of five tapered beads along the four compass points of the

buckle, as shown below:



| M&F Western Oval Buckle | M&F Western Barrel Buckle |
|---|---|

7. I also understand that Plaintiff does not accuse the remaining aspects of M&F Western's designs of infringing his copyright, and that his Buckle Design asserted in this case is limited to a series of five tapered beads along the compass points of a buckle as shown below:

| Plaintiff's Asserted Registration | Plaintiff's Asserted Design |
|---|---|
| COPY OF DEPOSIT<br>VA 1-159-548 | |
| COPY OF DEPOSIT<br>VA 1-159-548 | |

8. I also understand that Plaintiff's Copyright Registration for the Buckle Design claims a creation date of 2002 and a publication date of June 1, 2002.

9. The tapered beads Plaintiff claims in his Buckle Design are very common in the Western buckle and jewelry industry and have been used by many different designers and companies throughout the years dating back for decades, and were widely used well before 2002 when Plaintiff claims he created his Buckle Design.

10. Among other designs acquired pursuant to the Asset Purchase Agreement, M&F Western acquired the rights in a 1995 buckle design incorporating five tapered beads along the four compass points as shown below:



This design ("the Crumrine Buckle") was created under my direction when I worked at Crumrine Manufacturing Jewelers and it was sold in the Crumrine fall catalog in 1995. A true and correct copy of an excerpt from the catalog showing the Crumrine Buckle (M&F000003) is attached hereto as **Exhibit B**. I was an employee of Crumrine Manufacturing Jewelers in 1995 when the Crumrine fall catalog was published, and I am familiar with that catalog.

11. The Crumrine Buckle featured in the 1995 catalog was neither the first of its kind in the industry or even the last version created by Crumrine Manufacturing Jewelers. Crumrine, for example, subsequently made and sold additional iterations on this Crumrine Buckle, including iterations that had different finishes and where the bull rider was removed from

the center of the design. I no longer have all of the catalogs, but I do have a 2002 catalog

showing additional versions of the Crumrine Buckle:



These buckles were also created under my direction, and the buckle designs were acquired

by M&F Western pursuant to the Asset Purchase Agreement. A true and correct copy of a

page from the 2002 Crumrine Manufacturing Jewelers catalog showing these buckle designs,

M&F000631, is attached hereto as **Exhibit C**.

12. The M&F Western designs accused of infringement in this case both use the same series of

five tapered beads included in the Crumrine Buckle.



| Crumrine Buckle 1995 | M&F Western Accused Oval Buckle |
|---|---|

**PAGE 5**

13. The M&F Western oval buckle accused of infringing in this case was designed under my direction. This design is an evolution of the 1995 Crumrine Buckle design and the similarities are apparent. The wording is slightly different between the two and the bull rider does not appear in the Accused Oval Buckle. The finish is also different. The accused design is also highly similar to the designs described in Paragraph 11, with changes primarily to the finish.

14. I was not aware of the Buckle Registration at the time I oversaw the creation of the M&F oval buckle that is accused of infringing. I only learned of the Buckle Registration after this lawsuit was filed.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Signed on this _10th_ day of _June_ 2020, at _9:40 AM_.

By: _Jeanne Crumrine LaShelle_

Jeanne Crumrine LaShelle

PAGE 6

## CERTIFICATE OF SERVICE

I certify that on June 12, 2020, the foregoing was filed with the Court's electronic filing system which served a copy on all counsel of record.


_____
Kirstin E. Larson

# **EXHIBIT A**

# Asset Purchase Agreement

This Asset Purchase Agreement ("Agreement"), dated and effective on November 1, 2007 ("Effective Date") is by and between  Crumrine Manufacturing Jewelers, Inc ("Seller(s)"), a Nevada corporation with its principal place of business at 145 Catron Drive, Reno, Nevada 89512, and M & F Western Products, Inc. , a Texas corporation  and Crumrine Buckle Co., Inc. a Nevada Corporartion ("Purchaser(s)") with its principal place of business at 1303 Holiday Drive, Sulphur Springs, Texas 75482.

Whereas, Seller operates a certain business engaged in the manufacturing and sale of buckles and jewelry and known as Crumrine Manufacturing Jewelers ("Business") located at 145 Catron Drive, Reno, Nevada 89512.

Whereas, Seller desires to sell, convey and transfer certain assets of the Business to Purchaser and Purchaser desires to purchase such assets.

Now, therefore, the parties agree as follows:

1. Transferred Assets. Seller will sell, assign, convey, transfer and deliver to Purchaser, and Purchaser will purchase from Seller, all of Seller's right, title and interest in and to the following assets of every kind and description, tangible and intangible, of the Business (the "Assets"): (a) the inventory of the Business, including finished goods, raw materials and work in process; (b) the furniture, fixtures, office furnishings, machinery and equipment, including manufacturing equipment, ("Personal Property") of the Business; (c) receivable of the Business as (except as otherwise noted in "Excluded Assets" below)  (d) all rights of Seller in and to any leases (except for lease to the real property of business at 145 Catron, Dr., such lease is under a separate document between buyer and seller), contracts and other contractual commitments of or for the Business as defined below ("Assumed Contracts"), including the Bank of the West lease for four engraving machines, at $619.49/month thru 09/01/10, Dell computer lease of $451.16 thru 11/09/07. (e) all permits and licenses used or held for use in the operation of the Business (such licenses shall be transferred only to the extent transfer is permitted by law); (f) the intellectual property owned by Seller, including without limitation Seller's rights to the trade name "Crumrine" and "Crumrine Manufacturing Jewelers" and other trademarks and copyrights previously used in the business. (g) the rights to any existing telephone number of the Business; (h) any business records necessary to conduct business  (i) any credits relating to any supplier of the Business; and (j) the customer lists of the business.  The Assets shall not include the Excluded Assets set forth in Section 2. The Assets shall be free of any liens, except as noted herein.   Seller will  pay off any and all balances to get any  lien or guarantee relating  to the assets released as soon as possible, with the exception of the Bank of West lease of

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000612

$619.49/ month which will be assumed by Purchaser. Seller will pay all cost of getting any lien or guarantee released or transferred and Seller warrants and guarantees that Purchaser will be held harmless from any costs related to getting any lien or guarantee released, Purchaser will fully perform the obligations and duties under the Assumed Contracts, as defined in this Agreement.

2. Excluded Assets. Seller shall retain the following assets ("Excluded Assets") cash, petty cash and any checking accounts and balances and the accounts receivable balance for invoices billed and shipped as of the effective date, the NOL loss carryover credit for Corporate Federal Income Taxes, and the personal tools used by Jeanne La Shelle.

3. Assumed Liabilities. Purchaser shall assume any liabilities and shall hold Seller harmless from demands, obligations or other claims relating to the Business accruing after the Effective Date. Seller shall be responsible for all liabilities and shall hold Purchases harmless from demands and obligations or other claims relating to Business that occurred or accrued on or before the Effective date.

4. No Warranty on Assets. It is understood by Purchaser that all of the assets sold, assigned, conveyed and transferred by this agreement are sold "AS IS" and that Sellers makes no representation or warranty, either express or implied about the condition, fitness, durability or merchantability of such assets. It is agreed that Purchaser has made its own inspection of all such assets and assumes all responsibility for their condition, fitness, maintenance, and/or durability. Purchaser by purchasing such assets assumes all liability and risk for the ownership, operation and maintenance of such assets and agrees to indemnify and hold Sellers harmless from any and all claims, suits, citations and/or penalties related to or connected with in any manner the ownership, operation, and/or maintenance of such assets which occur after the Effective Date.

5. Excluded Liabilities. Seller shall retain the following liabilities, demands, obligations or other claims ("Excluded Liabilities") as follows: any claims related to the Excluded Assets; and any claims related to or stemming from acts, omissions or obligations accruing or occurring before the Effective Date, except as set forth in the Assumed Liabilities. Additionally, Seller shall be responsible for the Simplex Grinnell Sprinkler lease payments.

6. Purchase Price.



CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000613

7. <u>Proration of Expenses.</u> All expenses of the Business (including, but not limited to, prepaids, personal property taxes, insurance premiums, lease costs and obligations arising and accruing prior to the Effective Date) shall be prorated between Purchaser and Seller as of the Effective Date. Seller shall be responsible for the expenses (defined to include all benefits and burdens of ownership, including annual and recurring costs and expenses) of the Business before the Effective Date. Purchaser shall be responsible for the expenses of the Business after the Effective Date. Each party shall have reasonable access to the books and records to the other party to ensure compliance with this section.

8. <u>Closing and Closing Date.</u> The closing ("Closing") shall take place in Reno, Nevada at such place and time selected by Purchaser and Seller, on or before November 1, 2007 ("Closing Date").

9. <u>Execution of Documents at Closing.</u> Purchaser and Seller shall execute the following documents at Closing: (a) Asset Purchase Agreement; (b) Bill of Sale; and (c) documentation that liens and UCCs have been released. Including but not limited to UCC releases from CIT/Heller Financial. Seller will provide Purchaser documentation of releases of security interests held by Coulsen Service Corp. ( U.S. Small Business Administration) and Zions Banking within 30 days after effective date.

10. <u>Further Assurances.</u> The parties hereby agree to execute and deliver such other instruments of conveyance and transfer and to take such other action as any party may reasonably require to convey, transfer and to vest title to the Assets and Assumed Liabilities in Purchaser, and to put Purchaser in possession of the Assets. The parties shall also cooperate to obtain the consent of the lessors under the lease agreements. Purchaser shall promptly forward any mail relating to the Excluded Assets and Excluded Liabilities to Seller, including without limitation any demand, notice, claim, process of service, action, or lawsuit related thereto. Seller shall close any utility or other service to the Business in its name on the Effective Date or as soon as practicable thereafter. Purchaser shall be responsible and shall apply for and obtain utilities and other similar services in its own name on the Effective Date. Seller shall have the right, upon request, to make copies of the books and records of the Business.

11. <u>Representations and Warranties of Seller.</u> Seller represents and warrants to Purchaser that the following are true and correct on the Closing Date:

    a. <u>Ownership.</u>  Seller owns, free and clear of all liens (except for Bank of West lien on four engraving machines), on all of the Assets of the Business set forth in Exhibit A. Seller has full right, power and authority to sell, transfer and deliver title to the Assets to the Purchaser in accordance with this Agreement.

    b. <u>Authorization.</u>  The execution and delivery of this Agreement, the performance of all obligations under this Agreement and the sale and delivery of the Assets have been duly authorized by all necessary corporate action (including any necessary approval by the Board of Directors) on the part of Seller. This agreement has been duly executed and delivered by Seller and constitutes the legal, valid and binding obligation of Seller, enforceable in accordance with its terms.

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000614

c. <u>No Conflict.</u> The execution and delivery of this Agreement, and the consummation of the transactions contemplated herein, by Seller will not conflict with, violate, or constitute (or with notice or lapse of time or both would constitute) a default under (i) the Articles of Incorporation or Bylaws of Seller; (ii) any of Seller's contracts or other agreements; (iii) any law, statute, rule or regulation of any court or governmental authority to which the Assets are subject; or (iv) any judgment, decree, franchise, order, license or permit applicable to Seller.

d. <u>Liabilities.</u> Except for Assumed Liabilities. Purchaser will not be responsible for any liabilities of Seller

e. <u>Performance of Obligations.</u> Seller has performed all obligations required to be performed by it to date, and is not in default under any contract or lease relating to the Business, which may in any way impact Seller in its ability to sell the Assets set forth in Exhibit A.

f. <u>Tax Returns.</u> As relates to the business, Seller has filed all federal and state tax returns which are required to be filed, and has paid all taxes which have become due pursuant to such returns, or pursuant to any assessment received by the Seller. Seller shall retain the right to any tax refund accruing on or prior to the Effective Date.

g. <u>Compliance with Laws.</u> Seller has complied with, and is complying with, all applicable laws and regulations of any federal, state, municipal or other governmental authority relating to the operation and conduct of the Business of the Seller, including without limitation any employee benefit plans.

h. <u>Litigation.</u> As of the Effective Date, there are no pending litigation or lawsuits in which Seller is a party relating to the business of Seller. To Seller's knowledge, as of the Effective Date, there are no threatened litigation or lawsuits made against Seller relating to the business.

i. <u>Trade Name.</u> Seller represents that it has all legal rights to name "Crumrine" and "Crumrine Manufacturing Jewelers". To Seller's knowledge, Crumrine has the right to use the tradename in the trade areas in which it currently operates, as per the first sentence of this clause.

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000615

12. <u>Representations and Warranties of Purchaser.</u>  Purchaser represents and warrants to Seller that the following are true and correct on the Closing Date:

a. <u>Organization and Power .</u> Purchaser is a corporation duly organized, validly existing and in good standing under the laws of the State of Texas, with power and authority to conduct the business in which it is engaged, to lease and own the properties leased or owned by it and to enter into and perform its obligations under this Agreement.

b. <u>Authorization.</u> The execution and delivery of this Agreement, the performance of all obligations under this Agreement and the purchase of the Assets have been duly authorized by all necessary corporate action (including any necessary approval by the Board of Directors) on the part of Purchaser. This Agreement has been duly executed and delivered by Purchaser and constitutes the legal, valid and binding obligation of Purchaser, enforceable in accordance with its terms.

c. <u>No Conflict.</u> The execution and delivery of this Agreement, and the consummation of the transactions contemplated herein, by Purchaser will not conflict with, violate, or constitute (or with notice or lapse of time or both would constitute) a default under: (i) the Articles of Incorporation or Bylaws of Purchaser; (ii) any contract or other agreement of Purchaser; (iii) any law. statute, rule or regulation of any court or governmental authority to which Purchaser is subject; or (iv) any judgment, decree, franchise, order, license or permit applicable to Purchaser. Except as otherwise set forth herein, no consent, approval, license or authorization of any third party, governmental agency; commission, board or public authority is required in connection with the execution. delivery and performance of this Agreement by Purchaser.

d. <u>Liabilities.</u> Except for Excluded Liabilities, Seller will not be responsible for any liabilities of Purchaser.

e. <u>Tax Returns.</u> Purchaser will be responsible for all taxes relating to the period after the Effective Date. Purchaser will file all federal and state tax returns which are required to be filed, and will pay all taxes which become due pursuant to such returns, or pursuant to any assessment received by Purchaser.

13. Indemnification. Seller shall indemnify and hold the Purchaser harmless from and against any liability, loss, damage, deficiency, cost or expense (including, without limitation, reasonable attorneys' fees and associated costs and expenses) resulting from the Assumed Liabilities, the Assumed Contracts and any breach of Seller's representations contained herein.  Purchaser shall indemnify and hold the Seller harmless from and against any liability, loss, damage, deficiency, cost or expense (including, without limitation, reasonable attorneys' fees and associated costs and expenses) resulting from the Excluded Liabilities, the Assumed Contract and any breach of Purchaser's obligations, covenants or representations contained herein.

14. Employees.  The last day of employment for Seller's employees of the business will be the Effective Date. All of Seller's current employees of the business will be rehired by Purchaser under the same terms and conditions as such employee had with Seller, excluding any employee benefit plans, without the necessity of any reapplication process.

15. Notice. All notices, requests, demands and other communications hereunder shall be in writing and shall be sent by certified mail, return receipt requested or FedEx to the following:

        To Seller:      Crumrine Manufacturer Jewelers
                        Jeanne La Shelle
                        255 Blue Spruce Road
                        Reno, NV 89511


        To Purchaser:   M&F Western Products, Inc.
                        Paul Eddins
                        1303 Holiday Drive
                        Sulphur Springs, Texas 75482

16. Amendments. This Agreement may be amended, altered or modified by, and only by, a written instrument executed by all the parties hereto.

17. Expenses. The parties shall pay their own expenses (including, without limitation, the fees and expenses of their agents, representatives, counsel and accountants) relating to this Agreement.

18. Broker's Fee. The parties represent to each other that no broker, finder or other agent is entitled to any fee or other compensation related to this Agreement or the transactions herein contemplated.

19. Attorneys' Fees. If any legal action is commenced to enforce any provision of this Agreement or seeking remedies for any breach of this Agreement, the prevailing party shall be entitled to a recovery of the reasonable costs and attorneys' fees so incurred.

20. Exhibits. All exhibits attached hereto are incorporated into this Agreement by Reference.



CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000617

21. <u>Section Headings.</u> The section headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

22. <u>Binding Clause.</u> Subject to Section 25, this Agreement shall inure to the benefit of and become binding upon the parties, their heirs, personal representatives, successors and assigns.

23. <u>Counterparts.</u> This Agreement may be executed in separate counterparts each of which shall be deemed to be one and the same Agreement. This Agreement and all exhibits hereto may be executed by facsimile signature and as such shall be legally binding.

24. <u>Severability.</u> Should any one or more of provisions of this agreement be determined to be illegal, invalid or unenforceable, such provision should be substituted with another provision that is legal, valid and enforceable and most closely reflects the parties' intent in such provision. In any event, such illegal, invalid, or unenforceable provision shall be severed from this Agreement and all other provisions hereto shall be given effect separately therefrom and shall not be affected by such illegal, invalid or unenforceable provision.

25. <u>Governing Law.</u> This Agreement and its validity, interpretation, construction, enforceability and enforcement shall be governed by the laws of Washoe County, Nevada without reference to the principles of conflicts of laws.

26. <u>Assignment.</u> This Agreement may not be assigned by either party without the prior written consent of the other party.

**In witness thereof,** the parties have signed this Agreement on the date first above written.

PURCHASER:

ATTEST:

M&F Western Products, Inc.

By: _____
Paul Eddins, Treasurer.

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000618

ATTEST:

_____

_____

**SELLER:**

Crumrine Manufacturing Jewelers, Inc.

By: _____
Jeanne La Shelle , President

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000619

**EXHIBIT A**

**BILL OF SALE**

**This Bill of Sale** ("Bill of Sale") is made on November 1, 2007, from Crumrine Manufacturers Jewelers, Inc. ("Seller") to M&F Western Products, Inc. (Purchaser").

**Whereas,** concurrently with the execution and delivery of this Bill of Sale, Assignor has entered into an Asset Purchase Agreement ("Asset Purchase Agreement") with Assignee;

**Whereas,** Assignor desires to assign, transfer and convey to Assignee certain Assets of the business, subject to the terms and conditions set forth in the Asset Purchase Agreement.

**Now, therefore,** in consideration of the Purchase Price set forth in the Asset Purchase Agreement, Seller does herby Sell, TRANSFER, and DELIVER to Purchaser of Seller's rights, title and interest, if any, in the following:

(a) The furniture, fixtures, machinery, office furnishings and equipment of the Business;
(b) All of Seller's inventory and tangible personal property of the Business;
(c) All leases, contracts and commitments of or for the Business, including all warranties and guaranties (express or implied) in connection with the business; except for the lease of real property, 145 Catron Dr. which is addressed in a separate lease agreement.
(d) To the extent assignable, all licenses and permits which relate to the Business; and
(e) Any other asset of the Business set forth in Section 1 of the Asset Purchase Agreement which is not specifically set forth herein.

**Executed by the parties below:**

PURCHASER:

By: _____
Paul Eddins /Treasuer

SELLER:

Crumrine Manufacturing Jewelers, Inc.

By: _____
Jeanne La Shelle, PRESIDENT

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000620

# Indemnity and Hold Harmless Agreement

As additional security and consideration for the asset purchase defined in the Asset Purchase Agreement dated this same date Jeanne LaShelle and the Indemnitor and M&F Western Products Inc, the Purchaser agree as follows:

1. Jeanne LaShelle agrees to indemnify and hold the Purchaser harmless from any and all liens, encumbrances, charges, security interests, corporate guarantees or claims (collectively referred to as "claims")(except for the Bank of the West obligation and security interest which Purchase has assumed),  which were made or which occurred or accrued prior to the Effective Date of the Asset Purchase Agreement (hereinafter Agreement) between Crumrine Manufacturing Jewelers Inc. and M&F Western Products Inc. and which are specifically related to or connected with the Assets purchased by M&F Western Products Inc. by the Agreement.

2. It is agreed that Jeanne LaShelle's obligation to indemnify or hold the Purchaser harmless will not arise unless she receives written notice of the "claim" within ten (10) days after Purchaser received notice of the "claim". All notices of any "claim" made for which this Indemnity is provided shall be in writing and shall be considered given upon (1) personal service of a copy of the claim upon the party to be served, or (2) proper deposit of a copy of the claim in the United State Mail, by certified or registered mail, postage prepaid, receipt for delivery requested, addressed to the party to be served.  The address for Jeanne LaShelle is:

Jeanne LaShelle

255 Blue Spruce

Reno, Nevada 89511

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000621

The address of M&F Western Products Inc. is:

M&F Western Products Inc.

1303 Holiday Drive

Sulphur Springs, Texas 75482

Any change in address shall be given by the party having such change to the other party in the manner provided. Thereafter, all notices shall be given in accordance with the notice of the change of address.

3. It is agreed that should either party, Jeanne LaShelle or the Purchaser, M&F Western Products Inc. bring or initiate an action to enforce this agreement then In such instance the prevailing party to such an action shall be entitled to recover from the other their reasonable attorneys' fees and costs incurred in such action.

4. It is understood and agreed by the parties that this Indemnity and Hold Harmless Agreement shall be governed by the laws of the State of Nevada. Any action brought to enforce this action shall be brought in the Second Judicial District Court for the State of Nevada.

DATED THIS ___ day of November, 2007

_____
Jeanne LaShelle

_____
M&F Western Products Inc.

TOTAL P.12

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000622

TOTAL P.01

# COMMERCIAL LEASE AND DEPOSIT RECEIPT

**AGENCY RELATIONSHIP CONFIRMATION.** The following agency relationship is hereby confirmed for this transaction and supersedes any prior agency election (if no agency relationship, insert "NONE"):

LISTING AGENT: _____ Chris Fairchild _____ is the agent of (check one):
(Print Firm Name)

☐ the Lessor exclusively; or ☒ both the Lessee and the Lessor.

~~LEASING AGENT:~~ _____ N/A _____ (if not the same as the Listing Agent) is the agent of (check one):
(Print Firm Name)

☐ the Lessee exclusively; or ☐ the Lessor exclusively; or ☐ both the Lessee and the Lessor.

*Note: This confirmation DOES NOT take the place of the AGENCY DISCLOSURE form which may be required by law.*

RECEIVED FROM _____ M&F Western Products Inc. _____ hereinafter referred to as LESSEE. the sum of
$ __13,180.00__ ( _____ Thirteen Thousand, One Hundred and Eighty Dollars _____ dollars),
evidenced by _____ Check _____ as a deposit which will belong to Lessor and will be applied as follows:

| | TOTAL | RECEIVED | BALANCE DUE PRIOR TO OCCUPANCY |
|---|---|---|---|
| Rent for the period from __11/1/2007__ ,, to __11/30/2007__ | $ _____ | $ _____ | $ 6,590.00 |
| Security deposit (not applicable toward last month's rent) . . . . . . | $ _____ | $ _____ | $ 6,590.00 |
| Other . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ | $ _____ | $ _____ |
| TOTAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ | $ _____ | $ 13,180.00 |

In the event this Lease is not accepted by the Lessor within __5__ days, the total deposit received will be refunded.

Lessee offers to lease from Lessor the premises situated in the City of _____ Reno _____ County of _____ Washoe _____
State of __NV__ , described as _____ 145 Cairon Drive, Reno, NV 89512 _____
("the Premises") consisting of approximately __14645__ square feet which is approximately __100__ % of the total rental square footage of the entire property, upon the following terms and conditions:

1. **TERM.** The term will commence on (date) _____ 11/1/2007 _____ , and end on (date) _____ 10/31/2008 _____ .

2. **RENT.** The base rent will be $ __6,590.00__ per month payable on the __1st__ day of each month.
After the first 12 months the rent will be adjusted as follows: effective upon the first day of the month immediately following the expiration of 12 months from date of commencement of the term, and upon the expiration of each 12 months thereafter, in accordance with changes in the U.S. Consumer Price Index for ☐ All Urban Consumers (1982-84 = 100), or ☒ (other index) See Attached Addendum#1 _____
~~("CPI"). The base rent will be increased to an amount equal to the monthly rent, multiplied by a fraction, the numerator of which is the CPI for the second calendar month immediately preceding the adjustment date, and the denominator of which is the CPI for the second calendar month preceding the commencement of the Lease term; provided however, that the monthly rent will not be less than that immediately preceding the adjustment.~~
All rents will be paid to Lessor or his or her authorized agent, at the following address 255 Blue Spruce Road, Reno, NV 89511 _____ or at such other places as may be designated by Lessor from time to time. In the event rent is not received by Lessor within __10__ days after due date, Lessee agrees to pay a late charge of $ __250.00__ plus interest at __5__ % per annum on the delinquent amount. Lessee further agrees to pay $ __500.00__ for each dishonored bank check. The late charge period is not a grace period, and Lessor is entitled to make written demand for any rent if not paid when due.

3. **NET LEASE PROVISIONS.** If checked ☒ AND INITIALED BELOW BY LESSEE, the following provisions are included in this Lease: Lessee agrees to pay, in addition to the base monthly rental set forth in Item 2, ~~Lessee's proportionate share of the~~ Lessor's operating expenses, ~~including utility and service costs,~~ insurance, real property taxes, and common area maintenance. Lessee's share is based on the ratio of the square footage of the Premises to the total square footage of the rental space of the entire property of which the Premises are a part. Lessee's monthly share of said expenses at the commencement of the term is $ __1,000.00__ .
*(initial)* Lessee ( _____ ) agrees to the foregoing additional rental provisions.

4. **USE.** The premises are to be used for the operation of _____ the manufacturing of belt buckles _____ and for no other purpose, without prior written consent of Lessor. Lessee will not commit any waste upon the premises, or any nuisance or act which may disturb the quiet enjoyment of any tenant in the building.

5. **USES PROHIBITED.** Lessee will not use any portion of the premises for purposes other than those specified. No use will be made or permitted to be made upon the premises, nor acts done, which will increase the existing rate of insurance upon the property, or cause cancellation of insurance policies covering the property. Lessee will not conduct or permit any sale by auction on the premises.

6. **ASSIGNMENT AND SUBLETTING.** Lessee will not assign this Lease or sublet any portion of the premises without prior written consent of the Lessor, which will not be unreasonably withheld. Any such assignment or subletting without consent will be void and, at the option of the Lessor, will terminate this Lease.

Lessee [ _____ ] has read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

Page 1 of 4
FORM 107.1 (02-2007) COPYRIGHT © 1987-2007 BY PROFESSIONAL PUBLISHING, NOVATO, CA

**PROFESSIONAL PUBLISHING**

Form generated by: TrueForms™ www.TrueForms.com 800-498-9612

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000623

Property Address _____ 145 Carmp Drive, Reno, NV 99512 _____

**7. ORDINANCES AND STATUTES.** Lessee will comply with all statutes, ordinances, and requirements of all municipal, state and federal authorities now in force, or which may later be in force, regarding the use of the premises. The commencement or pendency of any state or federal court abatement proceeding affecting the use of the premises will, at the option of the Lessor, be deemed a breach of this Lease.

**8. MAINTENANCE, REPAIRS, ALTERATIONS.** Unless otherwise indicated, Lessee acknowledges that the premises are in good order and repair. Lessee will, at his or her own expense, maintain the premises in a good and safe condition, including plate glass, electrical wiring, plumbing and heating and air conditioning installations, and any other system or equipment. The premises will be surrendered, at termination of the Lease, in as good condition as received, normal wear and tear excepted. Lessee will be responsible for all repairs required during the term of the lease, except the following which will be maintained by Lessor: roof, exterior walls, structural foundations (including any retrofitting required by governmental authorities) and the following: none _____
_____

Lessee ☒ will, ☐ will not maintain the property adjacent to the premises, such as sidewalks, driveways, lawns, and shrubbery, which would otherwise be maintained by Lessor.

No improvement or alteration of the premises will be made without the prior written consent of the Lessor. Prior to the commencement of any substantial repair, improvement, or alteration, Lessee will give Lessor at least two (2) days written notice in order that Lessor may post appropriate notices to avoid any liability for liens.

**9. ENTRY AND INSPECTION.** Lessee will permit Lessor or Lessor's agents to enter the premises at reasonable times and upon reasonable notice for the purpose of inspecting the premises, and will permit Lessor, at any time within sixty (60) days prior to the expiration of this Lease, to place upon the premises any usual "For Lease" signs, and permit persons desiring to lease the premises to inspect the premises at reasonable times.

**10. INDEMNIFICATION OF LESSOR.** Lessor will not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the premises. Lessee agrees to hold Lessor harmless from any claims for damages arising out of Lessee's use of the premises, and to indemnify Lessor for any expense incurred by Lessor in defending any such claims.

**11. POSSESSION.** If Lessor is unable to deliver possession of the premises at the commencement date set forth above, Lessor will not be liable for any damage caused by the delay, nor will this Lease be void or voidable, but Lessee will not be liable for any rent until possession is delivered. Lessee may terminate this Lease if possession is not delivered within __3__ days of the commencement term in Item 1.

**12. LESSEE'S INSURANCE.** Lessee, at his or her expense, will maintain plate glass, public liability, and property damage insurance insuring Lessee and Lessor with minimum coverage as follows: _____ $2,000,000 Combined Single Limit _____
Lessee will provide Lessor with a Certificate of Insurance showing Lessor as additional insured. The policy will require ten (10) day's written notice to Lessor prior to cancellation or material change of coverage.

**13. LESSOR'S INSURANCE.** Lessor will maintain hazard insurance covering one hundred percent (100%) actual cash value of the improvements throughout the Lease term. Lessor's insurance will not insure Lessee's personal property, leasehold improvements, or trade fixtures.

**14. SUBROGATION.** To the maximum extent permitted by insurance policies which may be owned by the parties, Lessor and Lessee waive any and all rights of subrogation against each other which might otherwise exist.

**15. UTILITIES.** Lessee agrees that he or she will be responsible for the payment of all utilities, including water, gas, electricity, heat and other services delivered to the premises, except: _____ none _____
_____

**16. SIGNS.** Lessee will not place, maintain, nor permit any sign or awning on any exterior door, wall, or window of the premises without the express written consent of Lessor, which will not be unreasonably withheld, and of appropriate governmental authorities.

**17. ABANDONMENT OF PREMISES.** Lessee will not vacate or abandon the premises at any time during the term of this Lease. If Lessee does abandon or vacate the premises, or is dispossessed by process of law, or otherwise, any personal property belonging to Lessee left on the premises will be deemed to be abandoned, at the option of Lessor.

**18. CONDEMNATION.** If any part of the premises is condemned for public use, and a part remains which is susceptible of occupation by Lessee, this Lease will, as to the part taken, terminate as of the date the condemnor acquires possession. Lessee will be required to pay such proportion of the rent for the remaining term as the value of the premises remaining bears to the total value of the premises at the date of condemnation; provided, however, that either party may, at his or her option, terminate this Lease as of the date the condemnor acquires possession. In the event that the premises are condemned in whole, or the remainder is not susceptible for use by the Lessee, this Lease will terminate upon the date which the condemnor acquires possession. All sums which may be payable on account of any condemnation will belong solely to the Lessor; except that Lessee will be entitled to retain any amount awarded to him or her for his or her trade fixtures and moving expenses.

**19. TRADE FIXTURES.** Any and all improvements made to the premises during the term will belong to the Lessor, except trade fixtures of the Lessee. Lessee may, upon termination, remove all his or her trade fixtures, but will pay for all costs necessary to repair any damage to the premises occasioned by the removal.

Lessee [ _____ ] [ _____ ] has read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.
Page 2 of 4
FORM 107.2 (02/2007)   COPYRIGHT © 1987-2007 BY PROFESSIONAL PUBLISHING, NOVATO, CA

Ⓟ **PROFESSIONAL PUBLISHING**

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER
M&H 000624

Property Address _____ 146 Carron Drive, Reno, NV 89512

**20. DESTRUCTION OF PREMISES.** In the event of a partial destruction of the premises during the term, from any cause except acts or omission of Lessee, Lessor will promptly repair the premises, provided that such repairs can be reasonably made within sixty (60) days. Such partial destruction will not terminate this Lease, except that Lessee will be entitled to a proportionate reduction of rent while such repairs are being made, based upon the extent to which the making of such repairs interferes with the business of Lessee on the premises. If the repairs cannot be made within sixty (60) days, this Lease may be terminated at the option of either party by giving written notice to the other party within the sixty (60) day period.

**21. HAZARDOUS MATERIALS.** Lessee will not use, store, or dispose of any hazardous substances upon the premises, except the use and storage of such substances that are customarily used in Lessee's business, and are in compliance with all environmental laws. Hazardous substances means any hazardous waste, substance or toxic materials regulated under any environmental laws or regulations applicable to the property. Lessee will be responsible for the cost of removal of any toxic contamination caused by lessee's use of the premises.

**22. INSOLVENCY.** The appointment of a receiver, an assignment for the benefits of creditors, or the filing of a petition in bankruptcy by or against Lessee, will constitute a breach of this Lease by Lessee.

**23. DEFAULT.** In the event of any breach of this Lease by Lessee, Lessor may, at his or her option, terminate the Lease and recover from Lessee: (a) the worth at the time of award of the unpaid rent which had been earned at the time of termination; (b) the worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of the award exceeds the amount of such rental loss that the Lessee proves could have been reasonably avoided; (c) the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the Lessee proves could be reasonably avoided; and (d) any other amount necessary to compensate Lessor for all the detriment proximately caused by the Lessee's failure to perform his or her obligations under the Lease or which in the ordinary course of things would be likely to result therefrom, including, but not limited to, that portion of any leasing commission paid by Lessor and applicable to the unexpired term of the lease.

Lessor may, in the alternative, continue this Lease in effect, as long as Lessor does not terminate Lessee's right to possession, and Lessor may enforce all of Lessor's rights and remedies under the Lease, including the right to recover the rent as it becomes due under the Lease. If said breach of Lease continues, Lessor may, at any time thereafter, elect to terminate the Lease.

These provisions will not limit any other rights or remedies which Lessor may have.

**24. SECURITY.** The security deposit will secure the performance of the Lessee's obligations. Lessor may, but will not be obligated to, apply all or portions of the deposit on account of Lessee's obligations. Any balance remaining upon termination will be returned to Lessee. Lessee will not have the right to apply the security deposit in payment of the last month's rent.

**25. DEPOSIT REFUNDS.** The balance of all deposits will be refunded within thirty (30) days (or as otherwise required by law), from date possession is delivered to Lessor or his or her authorized agent, together with a statement showing any charges made against the deposits by Lessor.

**26. ATTORNEY FEES.** In any action, arbitration, or other proceeding involving a dispute between Lessor and Lessee arising out of this Lease, the prevailing party will be entitled to reasonable attorney fee, expert witness fees, and costs.

**27. WAIVER.** No failure of Lessor to enforce any term of this Lease will be deemed to be a waiver.

**28. NOTICES.** Any notice which either party may or is required to give, will be given by mailing the notice, postage prepaid, to Lessee at the premises, or to Lessor at the address shown in Item 2, or at such other places as may be designated in writing by the parties from time to time. Notice will be effective five (5) days after mailing, or on personal delivery, or when receipt is acknowledged in writing.

**29. HOLDING OVER.** Any holding over after the expiration of this Lease, with the consent of Owner, will be a month-to-month tenancy at a monthly rent equal to the preceding month's rent plus _____ $2,000/month _____, payable in advance and otherwise subject to the terms of this Lease, as applicable, until either party terminates the tenancy by giving the other party thirty (30) days written notice.

**30. TIME.** Time is of the essence of this Lease.

**31. HEIRS, ASSIGNS, SUCCESSORS.** This Lease is binding upon and inures to the benefit of the heirs, assigns, and successors of the parties.

**32. OPTION TO RENEW.** Provided that Lessee is not in default in the performance of this Lease, Lessee will have the option to renew the Lease for an additional term of __36__ months commencing at the expiration of the initial Lease term. All of the terms and conditions of the Lease will apply during the renewal term, except that the monthly rent will be the sum of $ Addendum #1 which will be adjusted after commencement of the renewal term in accordance with the cost of living increase provision set forth in Item 2.

The option will be exercised by written notice given to Lessor not less than __90__ days prior to the expiration of the initial Lease term. If notice is not given within the time specified, this Option will expire.

**33. AMERICANS WITH DISABILITIES ACT.** The parties are alerted to the existence of the Americans With Disabilities Act, which may require costly structural modifications. The parties are advised to consult with a professional familiar with the requirements of the Act.

Lessee [ _____ ] [ _____ ] has read this page.

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

Page 3 of 4
FORM 107.3 (09-2007)   COPYRIGHT © 1987-2007 BY PROFESSIONAL PUBLISHING, NOVATO, CA

**PROFESSIONAL PUBLISHING**

Form generated by: TrueForms™   www.TrueForms.com   800-499-9612

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000625

Property Address _____ 145 Catron Drive, Reno, NV 89512 _____

**34. LESSOR'S LIABILITY.** In the event of a transfer of Lessor's title or interest to the property during the term of this Lease, Lessee agrees that the grantee of such title or interest will be substituted as the Lessor under this Lease, and the original Lessor will be released of all further liability; provided, that all deposits will be transferred to the grantee.

**35. ESTOPPEL CERTIFICATE.**

(a) On ten (10) days' prior written notice from Lessor, Lessee will execute, acknowledge, and deliver to Lessor a statement in writing: [1] certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect), the amount of any security deposit, and the date to which the rent and other charges are paid in advance, if any; and [2] acknowledging that there are not, to Lessee's knowledge, any uncured defaults on the part of Lessor, or specifying such defaults if any are claimed. Any such statement may be conclusively relied upon by any prospective buyer or encumbrancer of the premises.

(b) At Lessor's option, Lessee's failure to deliver such statement within such time will be a material breach of this Lease or will be conclusive upon Lessee: [1] that this Lease is in full force and effect, without modification except as may be represented by Lessor; [2] that there are no uncured defaults in Lessor's performance; and [3] that not more than one month's rent has been paid in advance.

(c) If Lessor desires to finance, refinance, or sell the premises, or any part thereof, Lessee agrees to deliver to any lender or buyer designated by Lessor such financial statements of Lessee as may be reasonably required by such lender or buyer. All financial statements will be received by the Lessor or the lender or buyer in confidence and will be used only for the purposes set forth.

**36. SUBORDINATION.** This Lease, at Lessor's option, will be subordinate to any mortgage, deed of trust, or other security now existing or later placed upon the property; provided, however, that Lessee's right to quiet possession will not be disturbed if Lessee is not in default on the payment of rent or other provision of this lease.

**37. ENTIRE AGREEMENT.** The foregoing constitutes the entire agreement between the parties and may be modified only in writing signed by all parties. The following exhibits are a part of this Lease:

Exhibit A: Duties Owed _____
Exhibit B: Addendum #1 _____

**36. ADDITIONAL TERMS AND CONDITIONS.** See Attached Addendum #1 _____

_____
_____
_____

The undersigned Lessee acknowledges that he or she has thoroughly read and approved each of the provisions contained in this Offer, and agrees to the terms and conditions specified.

Lessee _____ Date _10/30/07_ Lessee _____ Date _____
M&F Western Products Inc.

Receipt for deposit acknowledged by _____ Date _____

## ACCEPTANCE

The undersigned Lessor accepts the foregoing Offer and agrees to lease the premises on the terms and conditions set forth above.

**NOTICE: The amount or rate of real estate commissions is not fixed by law. They are set by each broker individually and may be negotiable between the owner and broker.**

The Lessor agrees to pay to _____ Chris Fairchild _____ , the Broker in this transaction, the sum of $ _1,000.00_ for services rendered and authorizes Broker to deduct said sum from the deposit received from Lessee.

In the event the Lease is extended for a definite period of time or on a month-to-month basis after expiration of the original term, Lessor will pay to Broker an additional commission of _____% of the total rental for the extended period. This commission will be due and payable at the commencement of the extended period if for a fixed term, or if on a month-to-month basis, at the termination of Lessee's occupancy or one year, whichever is earlier.

In any action for commission, the prevailing party will be entitled to reasonable attorney fees.

Lessor _____ Date _10-31-2007_ Lessor _____ Date _____
Four Buy Investments LLC

Lessor's Address _255 Blue Spruce Road, Reno, NV 89511_ Telephone _775-849-2875_ Fax _____

_____ E-mail _greg@crumrinebuckles.com_

Lessee acknowledges receipt of a copy of the accepted Lease on (date) _____ [ ] [ ]
(Initials)

**CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.**

Page 4 of 4
FORM 107.4 (02-2007) COPYRIGHT © 1987-2007 BY PROFESSIONAL PUBLISHING, NOVATO, CA

PROFESSIONAL PUBLISHING

Form generated by: TrueForms™ www.TrueForms.com 800-499-9612

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER
M&F000626

## ADDENDUM NO. _____ 1

To Agreement dated _____10/12/2007_____, between _____Four Buy Investments LLC_____,
and _____M&F Western Products Inc._____, concerning property located at
_____145 Catron Drive, Reno, NV 89512_____

The parties agree as follows:

1. A $6,590.00 deposit is required to insure that the Lessee will leave the space clean and removed of any trade fixtures, which belong to M&F Western Products Inc. or were acquired by the purchase of Crumrine, as well as, to return the premises to a tenantable condition upon the Lessee's vacating the premeises.

2. The Lease may be terminated at any time by lessee providing 90 days written notice to the lessor.

3. The Base Lease Rate for the renewal term shall be as follows:

| | |
|---|---|
| Nov. 1, 2008 - Oct. 31, 2009 | $5,795 |
| Nov. 1, 2009 - Oct. 31, 2010 | $8,055 |
| Nov. 1, 2010 - Oct. 31, 2011 | $6,295 |

Note: This rate does not include the Net Lease Provisions (Common Area Maintenance Fees) of $1000.00.

This Addendum, upon its execution by both parties, is made a part of the above Agreement.
If checked ☐ this Addendum is of no force or effect unless executed by all parties and delivered prior to
(date) _____ (time) _____ ☐ a.m. ☐ p.m., to _____
(Name of Party)

Seller/Lessor _____ Date __10 - 21 - 2007__
                    Four Buy Investments LLC

Seller/Lessor _____ Date _____

Buyer/Lessee _____ Date __10/30/07__
                    M&F Western Products Inc.

Buyer/Lessee _____ Date _____

CAUTION: The copyright laws of the United States forbid the unauthorized reproduction of this form by any means including scanning or computerized formats.

FORM 101-B (03-2008) COPYRIGHT BY PROFESSIONAL PUBLISHING, NOVATO, CA (415) 884-2164
Form generated by TrueForms™ from REVEAL ⓡ SYSTEMS, Inc. 800-499-9612

Rev. by_____
Date_____

PROFESSIONAL
PUBLISHING

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000627

TOTAL P.15

# DUTIES OWED BY A NEVADA REAL ESTATE LICENSEE

*This form does not constitute a contract for services nor an agreement to pay compensation.*

In Nevada, a real estate licensee is required to provide a form setting forth the duties owed by the licensee to:
  a) Each party for whom the licensee is acting as an agent in the real estate transaction, and
  b) Each unrepresented party to the real estate transaction, if any.

**LICENSEE:** The licensee in the real estate transaction is _____ Christopher Scott Fairchild _____ ("Licensee") whose license number is _____ 0071829 _____. The Licensee is acting for [*client's name(s)*] ___ Four Buy Investments ___
who is/are ☒ Seller/Landlord; ☐ Buyer/Tenant

**BROKER:** The broker is _____ Mark Glenn _____ ("Broker"), whose company is
_____ Industrial Properties of Nevada _____ ("Company").

**Licensee's Duties Owed to All Parties:**
A Nevada real estate licensee shall:
  1. Not deal with any party to a real estate transaction in a manner which is deceitful, fraudulent or dishonest.
  2. Exercise reasonable skill and care with respect to all parties to the real estate transaction.
  3. Disclose to each party to the real estate transaction as soon as practicable:
     a. Any material and relevant facts, data or information which licensee knows, or with reasonable care and diligence the licensee should know, about the property.
     b. Each source from which licensee will receive compensation.
  4. Abide by all other duties, responsibilities and obligations required of the licensee in law or regulations.

**Licensee's Duties Owed to the Client:**
A Nevada real estate licensee shall:
  1. Exercise reasonable skill and care to carry out the terms of the brokerage agreement and the licensee's duties in the brokerage agreement.
  2. Not disclose, except to the licensee's broker, confidential information relating to a client for 1 year after the revocation or termination of the brokerage agreement, unless licensee is required to do so by court order or the client gives written permission.
  3. Promote the interest of the client by:
     a. Seeking a sale, lease or property at the price and terms stated in the brokerage agreement or at a price acceptable to the client.
     b. Presenting all offers made to, or by the client as soon as practicable.
     c. Disclosing to the client material facts of which the licensee has knowledge concerning the real estate transaction.
     d. Advising the client to obtain advice from an expert relating to matters which are beyond the expertise of the licensee.
     e. Accounting to the client for all money and property the licensee receives in which the client may have an interest.

**Duties Owed By a broker who assigns different licensees affiliated with the brokerage to separate parties:**
Each licensee shall not disclose, except to the real estate broker, confidential information relating to client.

**Licensee Acting for Both Parties:**
You understand that the licensee (*initial one*) [_____( [_____] may or [_____] [_____] may not, in the future act for two or more parties who have interests adverse to each other. In acting for these parties, the licensee has a conflict of interest. Before a licensee may act for two or more parties, the licensee must give you a "Consent to Act" form to sign.

I/We acknowledge receipt of a copy of this list of licensee duties, and have read and understand this disclosure

| | | |
|---|---|---|
| _signature_ 10-31-2007 | | _signature_ 10/3/07 |
| Seller/Landlord  Four Buy Investments LLC  Date/Time | Buyer/Tenant  M&F Western Products Inc.  Date/Time |
| | | |
| Seller/Landlord  Date/Time | Buyer/Tenant  Date/Time |

FORM 110.55 NEV (10-2005) BY PROFESSIONAL PUBLISHING, NOVATO, CA
Form generated by: TrueForms™ from: REVEAL® SYSTEMS, Inc. 800-499-9612

**PROFESSIONAL PUBLISHING**

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000628

## Indemnity and Hold Harmless Agreement

As additional security and consideration for the asset purchase defined in the Asset Purchase Agreement dated this same date Jeanne LaShelle and the Indemnitor and  M&F Western Products Inc, the Purchaser agree as follows:

1. Jeanne LaShelle agrees to indemnify and hold the Purchaser harmless from any and all liens, encumbrances, charges, security interests, corporate guarantees or claims [collectively referred to as "claims"](except for the Bank of the West obligation and security interest which Purchase has assumed),  which were made or which occurred or accrued prior to the Effective Date of the Asset Purchase Agreement (hereinafter Agreement) between Crumrine Manufacturing Jewelers, Inc. and M&F Western Products Inc. and which are specifically related to or connected with the Assets purchased by M&F Western Products Inc. by the Agreement.

2. It is agreed that Jeanne LaShelle's obligation to indemnify or hold the Purchaser harmless will not arise unless she receives written notice of the "claim" within ten (10) days after Purchaser received notice of the "claim". All notices of any "claim" made for which this indemnity is provided shall be in writing and shall be considered given upon (1) personal service of a copy of the claim upon the party to be served, or (2) proper deposit of a copy of the claim in the United State Mail, by certified or registered mail, postage prepaid, receipt for delivery requested, addressed to the party to be served.  The address for Jeanne LaShelle is:


Jeanne LaShelle

255 Blue Spruce

Reno, Nevada 89511

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

The address of M&F Western Products Inc. is:

M&F Western Products Inc.

1303 Holiday Drive

Sulphur Springs, Texas 75482

Any change in address shall be given by the party having such change to the other party in the manner provided. Thereafter, all notices shall be given in accordance with the notice of the change of address.

3. It is agreed that should either party, Jeanne LaShelle or the Purchaser, M&F Western Products Inc. bring or initiate an action to enforce this agreement then in such instance the prevailing party to such an action shall be entitled to recover from the other their reasonable attorneys' fees and costs incurred in such action.

4. It is understood and agreed by the parties that this Indemnity and Hold Harmless Agreement shall be governed by the laws of the State of Nevada. Any action brought to enforce this action shall be brought in the Second Judicial District Court for the State of Nevada.

DATED THIS 31ST day of November, 2007

_Jeanne LaShelle_

Jeanne LaShelle

M&F Western Products Inc.

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000630

# EXHIBIT B



# **EXHIBIT C**



#10281  3"x2-1/4"  $62.00

#10278  4-1/2"x3-1/4"
$101.00

Patriot
Series

#00245  3-1/2"x2-3/4"
$66.00

#10276  4-1/2"x3-1/2"
$129.00

#10280  3-1/2"x2-3/4"
$66.00

#10277  4-1/2"x3-1/2"  $129.00

#10279  3-1/2"x2-3/4"  $84.00

M&F000631