IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ROBERT BERG, § | | |
|     Plaintiff, § | | |
| vs. § | Case No. 6:19-cv-418-JDK | |
| § | | |
| M&F WESTERN PRODUCTS, INC., § | | |
|     Defendant. § | | |

### M&F WESTERN'S MOTION FOR PARTIAL[1] SUMMARY JUDGMENT

M&F Western seeks summary judgment on Berg's claims of copyright infringement directed at M&F Western's cross pendants, disposing of Berg's remaining substantive claims.

### I.   EXECUTIVE SUMMARY

Berg claims to have copyrighted tapered beads on cross pendants with two registrations he received in 2000 and 2003, respectively: Copyright Registration No. VA 1-091-617 (617 Registration) and Copyright Registration No. VA 1-229-288 (288 Registration) (collectively, Cross Registrations). Berg claims that his creative expression protected by the copyright act was taking tapered beads (which unquestionably already existed on other jewelry) and placing them on crosses. He does not claim protection for (or infringement of) any other elements of his crosses.

| Plaintiff's Asserted Registration<br>VA 1-091-617 | Plaintiff's Asserted Registration<br>VA 1-229-288 |
|---|---|
| | |

---

[1] The only issue that would remain is M&F Western's entitlement to fees and costs under relevant statutes and rules, including the Copyright Act; thus, for the purposes of this filing M&F Western has followed the requirements of Local Rule 7(a)(1).

**M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT--PAGE 1**

While originality is a relatively low bar, Berg's claim fails to meet it. Tapered beads are a stock design element in the Industry that predate Berg's registrations. Adding tapered beads to cross pendants without more is simply not protectable under copyright law.

But even if Berg's tapered beads were protectable, Berg has not produced a shred of credible evidence demonstrating the M&F Western copied Berg's designs. Berg accuses three crosses of infringement. Two of them are designs that originated with M&F Western's designer, Cary Kraft, an award-winning designer who has worked in the industry for many decades; he attested that he did not copy Berg's designs but rather incorporated industry standard design elements, including tapered beads (*see, e.g.*, the same tapered-bead design element from the 1995 Crumrine Buckle that the Court has already found was independently created by Crumrine. Dkt. 27 (Buckle MSJ), predating Berg's earliest cross registration by five years), into his designs. The third cross accused of infringement was acquired from 3-D Belt Company, L.P. Berg has made no allegations of copying that pertain to this design, and, in any event, the use of tapered beads in the design cannot be attributed to Berg given how pervasive tapered beads have been in Western jewelry for decades (and since well before Berg's earliest cross registration).

## II.   STATEMENT OF THE ISSUES TO BE DECIDED

M&F Western is entitled to summary judgment on Berg's Cross Designs because tapered beads are a standard design element in the Western jewelry and buckle industry (Industry) predating Berg's Cross Registrations and are not protectable under copyright law.

In the alternative, M&F Western is entitled to summary judgment on Berg's Cross Designs because Berg has produced no evidence of copying.

## III.   EVIDENCE

This Motion for Partial Summary Judgment is supported by the following evidence and exhibits, which are filed herewith or incorporated by reference.

Exhibit 1: Dkt. No. 23, Amended Complaint.

Exhibit 2: Plaintiff Robert Berg's Answers and Objections to Defendant's First Set of Interrogatories ("Rog. Responses").

Exhibit 3: Dkt. 1, Complaint.

Exhibit 4: December 26, 2019, letter from counsel for M&F Western to Plaintiff's counsel.

Exhibit 5: Expert Report of Hugh Weaver ("Weaver Expert Report") and Exhibits thereto.

Exhibit 6: August 17, 2020 Declaration of S. Dees ("Dees Decl.") in Support of Defendant's Motion for Summary Judgment and Exhibits thereto.

Exhibit 7: August 17, 2020 Declaration of C. Gist ("Gist Decl.") in Support of Defendant's Motion for Summary Judgment and Exhibits thereto.

Exhibit 8: Dkt. 27-2: June 10, 2020 Declaration of P. Eddins in Support of Defendant's Motion for Partial Summary Judgment ("Eddins June Decl.").[2]

Exhibit 9: August 18, 2020 Declaration of P. Eddins in Support of Defendant's Motion for Summary Judgment ("Eddins Aug. Decl.").

Exhibit 10: Dkt. 27-3: June 9, 2020 Declaration of C. Kraft in Support of Defendant's Motion for Partial Summary Judgment ("Kraft June Decl.") and Exhibits thereto.

Exhibit 11: August 18, 2020 Declaration of C. Kraft in Support of Defendant's Motion for Partial Summary Judgment ("Kraft Aug. Decl.") and Exhibits thereto.

Exhibit 12: Dkt. 27-4: June 10, 2020 Declaration of J. Crumrine LaShelle in Support of Defendant's Motion for Partial Summary Judgment ("LaShelle June Decl.") and Exhibits thereto.

Exhibit 13: August 18, 2020 Declaration of J. Crumrine LaShelle in Support of Defendant's Motion for Partial Summary Judgment ("LaShelle Aug. Decl.") and Exhibits thereto.

## IV. STATEMENT OF UNDISPUTED MATERIAL FACTS[3]

In the 617 Registration, Berg claims copyright protection in the tapered beads placed on a cross as depicted below. (Exhibit 1: Dtk. 23 at ¶ 12.)

---

[2] M&F Western previously submitted a Declaration from Mr. Eddins, Ms. Crumrine LaShelle and Mr. Kraft in support of its Motion for Partial Summary Judgment relating to Berg's buckle registrations (Dkt. 27.) As these declarations are already in the docket, M&F Western does not re-submit them herewith but rather incorporates them herein by reference.

[3] For the purposes of this Motion only, M&F Western does not dispute certain factual allegations in Plaintiff's Complaint and Amended Complaint. However, M&F Western reserves the right to challenge Plaintiff's allegations substantively, as appropriate, outside the context of this Motion.

**Berg's Asserted 617 Design**[4]

While the tapered beads are placed on the arms of the cross, when asked to define his "specific design elements that you claim are protected by copyright", Berg only claimed the use of tapered beads.[5] (*See* Exhibit 2, Rog. Response No. 2.) Berg claims a creation date of 2000 for the 617 Registration, and a publication date of January 31, 2000.[6] (Exhibit 1, Dkt. 23-2.)

The 288 Registration is similar. In it, Berg again claims copyright protection in the use of tapered beads on a cross. (Exhibit 1, Dtk. 23 at ¶ 15; see also Exhibit 2, Answer to Interrogatory No. 3[7].) Berg claims a date of creation of 2003, and a publication date of June 1, 2003. (Exhibit 1, Dkt. 23-4.)

---

[4] This blurry image is what Berg produced. Under various cases, it fails to meet his burden of providing a sufficiently definitive image of his alleged works to proceed on a copyright infringement. But, for purposes of this Motion only, M&F Western is focusing on the merits of Berg's claims that he copyrighted the inclusion of tapered beads on crosses and reserves its right to object further at a later date.

[5] In response to M&F Western's Interrogatory No. 2 asking "the basis for claiming copyright protection in [the 617 Registration], including identifying the specific design elements that you claim are protected by copyright, the date you created the design, and the date you first published the design", Berg responded: "The protected elements include the round beads tapered in size…" (Exhibit 2.) Thus, Berg identified only the tapered beads as his alleged protectable design element.

[6] In response to the same interrogatory as above, Berg claimed that he "created the design in the late 1980's and began incorporating this element into his designs in or about 1992." (Exhibit 2.) Given his position with the Copyright office, Berg is precluded from changing the creation date just to avoid summary judgment and any attempt to do so would impact the validity of Berg's Copyright Registrations on a separate basis. But, again, for the purposes of this Motion only, M&F Western does not address that claim and reserves its right to do so at a later date (including, if necessary, in the Reply).

[7] In response to M&F Western's Interrogatory No. 3 asking "the basis for claiming copyright protection in [the 288 Registration], including identifying the specific design elements that you claim are protected by copyright, the date you created the design, and the date you first published the design", Berg responded: "The protected elements include the round beads tapered in size with clusters of 3 or 5 beads. Plaintiff published the design in 1988 or 1989 but does not know the exact date of creation." (Exhibit 2.) Thus, Berg once again, identified only the tapered beads as his alleged protectable design element. As noted above, M&F Western reserves the right to challenge the validity of the Cross Registrations separately to the extent that Berg attempts to disavow the creation and publication dates in the registrations.

**Berg's Asserted 288 Cross Design**[8]



Berg is not the first person to create a cross design or put beads at the ends of the arms of a cross. Such designs date back to antiquity and have been widely used in the Industry for decades. At least as early as 1980, Crumrine Manufacturing Jewelers, Inc. (Crumrine) sold cross necklace pendants, earrings, and tie tacks incorporating beads on the ends of the arms of the crosses as shown below. (Exhibit 13, LaShelle Aug. Decl. at ¶ 17 and Exhibit 1D thereto.)

**Trinity Designs by Crumrine (1980)**

When M&F Western acquired Crumrine in 2007, it acquired the above designs and related intellectual property rights as well as designs incorporating varying numbers of tapered beads on a variety of different products from earrings to necklace pendants to bolo ties. (Dkt. 37 at p. 6; Exhibit 13, LaShelle Aug. Decl. at ¶ 6, ¶ 25[9]; Exhibit 9, Eddins Aug. Decl. at ¶ 8.) The Court

---

[8] This blurry image is the image of the 288 Design Berg provided in this case. For the purposes of this Motion only, M&F Western accepts that Berg presented this image to the Copyright Office with this Application and does not object to this blurry image as insufficient to show Berg's claimed tapered bead design; however, M&F Western reserves the right to object to this image at a later date as insufficient evidence to support his copyrightability claim.

[9] The exhibits to the LaShelle Aug. Declaration (Exhibit 13), consisting of catalogs and other documents, are authenticated in ¶ 25, unless otherwise noted in her declaration.

**M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT--PAGE 5**

has already ruled on the 1995 Crumrine Buckle using a series of five tapered beads at the compass points, but Crumrine also sold earrings incorporating a series of three tapered beads as a design element as early as 1997. (*Id.* at ¶ 15.) In short, Crumrine, like many others in the Industry were using varying numbers of tapered beads in their designs because it was a stock design element predating Berg's Cross Registrations. (*Id.* at ¶12-16; *see also* Exhibit 5, Weaver Expert Report at ¶¶ 9-14; Exhibit 7, Gist Decl. at ¶¶6, 8, 11-12; Exhibit 10, Dkt. 27-3, Kraft June Decl. at ¶ 10; Exhibit 11, Kraft Aug. Decl. at ¶¶ 9-11; Exhibit 6, Dees Decl. at ¶ 6.)

For example, Gist Silversmiths, Inc. used a series of five tapered beads in one of its buckle designs at least as early as 1985. (Exhibit 7, Gist Decl. at ¶10(a) and Exhibit A1 thereto.)



This buckle also uses other Industry standard design elements, including a flower, scrollwork, roping around the edge, and multiple colors of metal. (*Id.*) Such design elements were used commonly and repeatedly in subsequent Gist designs (all pre-dating the earliest of the Berg Cross Designs), along with tapered beads in varying numbers (including a series of three tapered beads). (*Id.* at ¶10(a-o) and Exhibits A1-A15 thereto, *see also* ¶¶11-12.)

Another example is Hugh Weaver's 1983 design:



Weaver Design 1983

(Exhibit 5, Weaver Report at ¶ 10.) Mr. Weaver is a jeweler and master engraver, who has worked in the Industry for more than 40 years and who also provided testimony in Berg's prior case against his ex-wife. Mr. Weaver's 1986 buckle design below also shows use of the three-tapered-bead design element on the East and West compass points of the buckle as well as a series of five tapered beads on the North and South compass points:



Weaver Design 1986

(Exhibit 5 at ¶ 12; *see also id.* at ¶¶ 10-14 for additional designs incorporating tapered beads predating Berg's Cross Registrations.)

On September 14, 2019, Berg filed his original Complaint alleging that three M&F Western Products cross pendants infringed his Cross Registrations as shown below and in Exhibit A to the Complaint. (Exhibit 3: Dkt. 1 at ¶¶ 11-14 and Exhibit A thereto.) As discussed further below, the top right pendant in the table with the rope around the central flower, is a

**M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT--PAGE 7**

148987751

design that M&F Western acquired from 3-D Buckle Company, L.P. in 2018 and is referenced herein as the "3-D Rope Design."[10]  The other two accused crosses are designs that were created by M&F designer Cary Kraft ("Kraft Crosses"):

| Berg Registration No. | Berg Design | M&F Western's Accused Product |
|---|---|---|
| VA 1-091-617 | | 3-D Rope Design acquired from 3-D Buckle Company L.P. |
| VA 1-091-617 | | M&F Western Kraft Design # 32120 |
| VA 1-229-288 | | M&F Western Kraft Design # 32110 |

---

[10] Mr. Dees and Mr. Eddins, who are signatories to the Asset Purchase Agreement pursuant to which M&F Western acquired the 3-D Rope Design, attest to the transfer of intellectual property rights in the design in their respective declarations submitted herewith. (Exhibit 6, Dees Decl. at ¶¶ 3-5 and Exhibit A thereto; Exhibit 9, Eddins Aug. Decl. at ¶¶ 4-7.)

**M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT--PAGE 8**

148987751

In the original Complaint, Berg alleged that M&F Western had access to Berg's designs at a December 2016 NRF retail trade show. (Dkt. 1, at ¶ 11.) But when M&F Western's counsel explained to Berg's counsel via detailed letter that all three of the accused designs predated the alleged December 2016 meeting with Berg (Exhibit 4, at p. 2 and Exhibit A thereto), Berg changed his story. On April 13, 2020, Berg filed his Amended Complaint claiming that M&F Western's copying took place "sometime after 2005." He also claimed that M&F Western "gained access to Plaintiff's molds and designs, including the Designs at issue here" at Berg's Mexico jewelry factory through Gary Bellinger. (Exhibit 1, Dkt. 23 at ¶¶ 17-19.) Berg further alleged (on information and belief) that Mr. Bellinger provided the molds to M&F Western, which used the molds to create copies of his designs. (*Id.* at ¶18-19.) Notably, Berg has not produced a shred of evidence to support this theory. Indeed, despite the Court's Order (Dkt. 39) requiring Berg to report to the Court regarding the investigation he and his counsel undertook with regard to M&F Western's Motion to Compel, Berg failed to make the required filing with the Court. He produced a sum total of three pages of additional documents to M&F Western on August 13th, none of which supports his allegations relating to Mr. Bellinger.[11]

## V. SUMMARY JUDGMENT SHOULD BE GRANTED ON BERG'S REMAINING CLAIMS

### A. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets

---

[11] M&F Western reserves the right to address Berg's failure to comply with the Court's Order separately and does not substantively do so here.

its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists that summary judgment should not be granted." *Haglund v. St. Francis Episcopal Day Sch.,* 8 F. Supp. 3d 860, 864 (S.D. Tex. 2014)*; see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). In determining whether there is a genuine issue of material fact, the evidence and the inferences to be drawn therefrom are viewed in the light most favorable to the non-moving party. *Id*. However, the non-moving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-moving party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered regardless of "[a]ny proof or evidentiary requirements imposed by the substantive law." *Id*. at 248.

    **B.**     **Plaintiff Cannot Sustain His Burden of Showing Copying Because the Tapered-Bead Design Element Is a Stock Design Element that Is Not Protectable**

The elements of a copyright infringement claim are "(1) ownership of a valid copyright and (2) actionable copying, which is the copying of constituent elements of the work that are copyrightable." [12] *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 576 (5th Cir. 2003). "The Fifth Circuit consistently holds that the copyrightability of a work should be evaluated at the summary judgment stage." *Jane Envy, LLC v. Infinite Classic, Inc.*, Nos. SA14-CV-065-DAE, SA:14-CV-081-DAE, SA:14-CV-083-DAE, 2016 WL797612, at *4 (W.D. Tex. Feb. 26, 2016) (citing *Peel & Co., Inc. v. The Rug Mkt.*, 238 F.3d391, 398 (5th Cir. 2001)).

---

[12] For the purposes of this Motion, M&F Western disputes validity of the asserted Cross Registrations on the grounds of lack of originality. M&F Western reserves the right to challenge the validity of the asserted Cross Registrations on other grounds at a later time (e.g., failure to comply with statutory formalities). In addition, Berg has failed to produce certified copies of the Cross Registrations, thus M&F Western also reserves the right to challenge the presumption of validity on this ground as well.

To qualify for copyright protection, a work must be "original." 17 U.S.C. § 102(a). To satisfy the originality requirement, the work must be "independently created by the author (as opposed to copied from other works)" and must possess "at least some minimal degree of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) ("the *sine qua non* of copyright is originality"). While the level of creativity required to meet the "minimal degree of creativity" threshold is low, it is also the case that "familiar symbols and designs like a cross or the infinity symbol are not copyrightable on their own"; rather, "a unique 'combination of elements that are unoriginal in themselves' meets the originality requirement to warrant copyright protection." *Jane Envy,* 2016 WL 797612, at *6 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001); 37 C.F.R. § 202.1(a)). For example, the notes in a scale are "not protectable, but a pattern of notes in a tune may earn copyright protection." *Id.* citing *Metcalf v. Bochoco*, 294 F.3d 1069, 1074 (9th Cir. 2002) and *Feist*, 449 U.S. at 348 (copyright protection extends to choices of "selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity.").

Here, Berg does not claim a unique combination of elements in his design, rather he claims only that the tapered beads are his protectable design element. (Exhibit 2, Rog. Response Nos. 2-3.) But this single design element is not enough on its own to merit protection under copyright law given that it is a stock or standard design element in the Industry—long predating Berg's Cross Registrations—not a unique combination that displays the stamp of originality such that copyright protection is warranted "for the particular expression of a common symbol, rather than the symbol itself." *Jane Envy*, 2016 WL 797612, at *7. The court in *Jane Envy* evaluated copyright protection in a variety of jewelry designs noting "[w]hile this Court accepts Defendants' argument that crosses, arrowhead shapes, infinity symbols, and quotations from Scripture are not themselves copyrightable, this does not preclude *a unique presentation of these symbols* from meeting the originality requirement required to establish ownership of a valid copyright." *Id.*

**M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT--PAGE 11**

148987751

(emphasis added). Berg's Cross Designs present no unique presentation of design elements and fail to possess the minimum spark of creativity required by *Feist*. 499 U.S. at 345.

Indeed, after a bench trial in Berg's prior case against his ex-wife, Judge Rosenthal found that: "Berg was not the first to use a black background, more than one color gold, or vine and leaf scrollwork, *or to place beads on the edge of a buckle or piece of jewelry*." *Berg v. Symons*, 393 F. Supp. 2d. 525, 532 (S.D. Tex. 2005).

Further, numerous individuals from the Industry have attested to using tapered beads before the Cross Registrations:

- Hugh Weaver is a jeweler and master engraver who has worked in the Industry for more than 40 years. He was also a witness in the *Berg v. Symons* case. As Mr. Weaver explained in his 2004 Affidavit submitted in that case, "in or around 1982, [he] created a style of design that consisted of dot and half rounds (tapered beads) with overlays and black backgrounds". (Exhibit 5, Weaver Expert Report at ¶9 and Exhibit B thereto at ¶ 5.) From 1982-1986, he made many buckles with this tapered bead design element, "which had become well-known in western circles." (*Id.* at ¶9 and Exhibit B thereto at ¶ 6.) For examples of Mr. Weaver's designs (pre-dating Berg's) and incorporating tapered beads, see Exhibit 5 at ¶¶9-12 and Exhibit B thereto. Mr. Weaver met with Mr. Berg in 1986 and showed him his tapered bead designs. (*Id.* at ¶ 9.) Judge Rosenthal specifically noted in her opinion in the *Symons* case that: "Weaver credibly testified at trial that he showed Berg design features that Berg later incorporated into his own belt buckle and jewelry designs, *including the use of tapered raised beads on a raised edge*." *Berg v. Symons*, 393 F. Supp. 2d. at 532 (emphasis added).

- Chad Gist is the Art Director of Gist Silversmiths, Inc., which is widely recognized as one of the top trophy buckle companies in the United States. (Exhibit 7, Gist Decl. at ¶¶2-3.) Mr. Gist is an artist and silversmith who has been designing and engraving buckles for more than three decades and has personally designed and engraved thousands of buckles during

his career. (*Id*. at ¶3.) He attests that: "Use of tapered beads along the edge (or other locations) on a buckle is very common in the Industry and has been for decades. Gist Silversmiths has used tapered beads in its buckle designs dating back to at least as early as 1985." (*Id*. at ¶ 6.) He also attests that "[w]hether there are three beads used, or five, or seven, tapered beads (whether on a buckle, a cross, an earring or a bolo tie) are an Industry standard design element and have been for decades" along with "[o]ther stock or standard design elements includ[ing] flowers . . ., scrollwork, black enamel backgrounds, roping and use of multiple colors of metal in one design. . ." (*Id*. at ¶ 8.) Illustrative examples of Gist Silversmiths designs predating Berg's cross registrations and incorporating tapered beads (in various numbers) are shown below (authenticated at *Id*. at ¶10):



**M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT--PAGE 13**

148987751

- Ms. LaShelle, who has worked in the Industry as a jewelry designer for more than 50 years, attests that Crumrine made cross designs dating back through the decades, including cross designs dating to at least 1980 with beads on the ends of the arms of the crosses. (Exhibit 13, LaShelle Aug. Decl. at ¶ 17.) And, as she previously explained in her June Declaration, Crumrine created the 1995 Crumrine Buckle with tapered beads predating Berg's Buckle Design and that tapered beads were a common design element dating back for decades. (Exhibit 12, Dkt. 27-4, LaShelle June Decl. at ¶¶ 9-11.) "[T]he tapered beads Plaintiff claims in the Berg Cross Designs are very common in the Industry and have been used by many different designers and companies throughout the years dating back for decades, and were widely used well before 2000 when Plaintiff claims he created the earlier of the two Cross Registrations, i.e., the design in the VA 1-091-617 Registration." (Exhibit 13, LaShelle Aug. Decl. at ¶ 12.)

- Mr. Kraft, who has been a jewelry designer for more than 45 years and who designed the two M&F Western crosses accused of infringement, attests that he is aware of "the use of tapered beads as a standard design element in the Industry used in a variety of designs dating back at least to the early 1990s." (Exhibit 11, Kraft Aug. Decl. at ¶ 10.) He used a series of three tapered beads in his designs for his prior employer, Leegin Creative Leather Goods, dating to at least as early as 1996 as shown below (*Id.* at ¶ 11 and Exhibits 1 and 1A thereto):



Kraft Designs for Leegin 1996

**M&F WESTERN'S MOTION FOR PARTIAL SUMMARY JUDGMENT--PAGE 14**

The Court should reject Berg's argument that his Cross Registrations give him the exclusive rights to the tapered-bead design. The tapered beads on their own do not meet the spark of creativity required by *Feist*, and summary judgment should therefore be granted as to the Kraft Crosses and the 3-D Rope Design.

### C.   Summary Judgment Should Be Granted Because Plaintiff Has Produced No Evidence of Copying

Berg's Cross Claims also fail for the additional reason that he cannot show "actionable copying, which is the copying of constituent elements of the work that are copyrightable." *Bridgmon*, 325 F.3d at 576. Thus, even if the tapered bead design element in Berg's registrations were copyrightable (which it is not), Berg cannot show that the accused crosses copied the tapered-bead element from Berg.

After M&F Western explained to Liebowitz that the copying allegations in the original Complaint were unsupported because all three of the accused designs predated Berg's alleged 2016 meeting with M&F Western (Exhibit 4), Berg changed his story. He alleged—based solely on "information and belief"—that Gary Bellinger gained access to Berg's molds at Berg's Mexico factory and distributed the molds to M&F Western in 2005, which then copied the designs. (Exhibit 1, Dkt. 23 at ¶¶ 17-19.)

While "factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity", *Peel & Co.*, 238 F.3d 394 (5th Cir. 2001), Berg cannot show either. He has not offered credible evidence of how M&F Western had access to his work. He has not produced a shred of evidence to support his allegation that Bellinger gave Berg's molds to M&F Western. And even if Berg's farfetched and unsupported story were accepted as to the two accused Kraft Cross designs, this theory could not be the basis for Berg's copying claim as to the 3-D Rope Design given that the 3-D Rope

Design predated M&F Western's acquisition of 3-D. In other words, Berg has not alleged facts that pertain to access to or copying by 3-D of his cross.

And, in any event, even if Berg had credible evidence of access (which he does not), given how pervasive tapered beads are in the industry, any similarity is not probative of copying. M&F Western's predecessor Crumrine was using the same beads long before Berg's registrations, including in the 1995 Crumrine Buckle that was the basis for M&F's earlier successful summary judgment motion.

Indeed, M&F Western's designer, Cary Kraft (designer of the Kraft Crosses), attested that he "chose to use tapered beads in these cross designs for the same reason I used flowers, scrollwork and the black background: namely, all of these elements are standard in the Industry. Use of tapered beads has been common in many products through the years and adding tapered beads to these cross designs was simply another example drawing on prior M&F Western and Crumrine designs, like the 1995 Crumrine Buckle, that used tapered beads." (Exhibit 11, Kraft Aug. Decl. at ¶¶ 13, 20 and Exhibits 2-5 thereto.) He did not copy those elements from Berg's crosses. (*Id*. at ¶ 13.) He has used tapered beads in his designs dating to at least as early as 1996. (*Id.* at ¶ 11.) Ms. LaShelle, who did the engraving for the copper mold for the 32110 cross, attested that this is skilled work which took her approximately 10 hours. (Exhibit 13, LaShelle Aug. Decl. at ¶ 22 and Exhibits 2-4 thereto.) She also attested that she did not copy Berg's design. (*Id*. at ¶ 23.) Berg cannot support his copying claim based on his speculative allegations (made on information and belief) that Mr. Bellinger stole his molds and provided them to M&F Western who used them to copy his designs.

## VI.   CONCLUSION

Berg has pressed forward with his bogus claims regarding the tapered-bead design in hopes of leveraging a settlement from M&F Western so he can then bring similar claims against others in the Industry who are also using the tapered bead design element in their designs. The

Court should grant summary judgment on the remaining claims in this case for the reasons set forth above.

Dated: August 18, 2020

Respectfully submitted,

By: /s/ John R. Hardin

John R. Hardin
Texas Bar No. 24012784
JohnHardin@perkinscoie.com
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, TX 75201
Phone: 214-965-7700
Facsimile: 214-965-7799

Judith B. Jennison
Washington State Bar No. 36463
JJennison@perkinscoie.com
Kirstin E. Larson
Washington State Bar No. 31272
KLarson@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: 206-359-8000
Fax: 206-359-9000

***Attorneys for Defendant M&F Western Products, Inc.***

## CERTIFICATE OF SERVICE

    I certify that on August 18, 2020, the foregoing was filed with the Court's electronic filing system, which served a copy on all counsel of record.

_____
Kirstin E. Larson