# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| ROBERT BERG,<br><br>                          Plaintiff,<br><br>   - against -<br><br>M & F WESTERN PRODUCTS, INC.<br><br>                     Defendant. | Docket No. 6:19-cv-0418-JDK<br><br>JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

Plaintiff Robert Berg ("Berg" or "Plaintiff") by and through his undersigned counsel, as and for his Amended Complaint against Defendant M & F Western Products, Inc. ("M & F" or "Defendant") hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for copyright infringement under Section 501 of the Copyright Act. This action arises out of Defendant's unauthorized reproduction and public display of copyrighted designs, owned and registered by Berg, a professional designer. Accordingly, Berg seeks monetary relief under the Copyright Act of the United States, as amended, 17 U.S.C. § 101 *et seq*.

## JURISDICTION AND VENUE

2.     This claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq*., and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.     This Court has personal jurisdiction over Defendant because Defendant resides in and/or transacts business in Texas.

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

designs. Berg initiated the technique of stacking tri-color gold to achieve a three-dimensional look in his buckles and jewelry.

10.     By 2000, Berg's jewelry designs had become well-known in the United States and Texas.  For example, he was asked to design the trophy cup for the world championship professional bull riding competition.  He also built championship buckles for prominent rodeo committees across the United States and supplied buckles to the champions of the Australian Pro Rodeo Association for over two decades.

11.     Between 2000 and 2003, Berg created original designs consisting of Western-styled jewelry and belt buckles that are the subject of this lawsuit (collectively the "Designs"). A true and correct copy of some of the Designs are attached hereto as Exhibit A.

12.     In 2000, Berg created a stylized and intricate design of a cross with angular corners (the "Angular Cross") and registered it with the U.S. Copyright Office under No. VA 1-091-617, with effective date of June 12, 2000 (the "617 Registration").  Attached as Exhibit B is a true and correct copy of the 617 Registration, as maintained by the U.S. Copyright Office's website.

13.     In 2002, Berg created a stylized and intricate design for an oval belt buckle (the "Oval Buckle") and registered it with the U.S. Copyright Office under No. VA 1-159-548, with effective date of July 26, 2002 (the "548 Registration").  Attached as Exhibit C is a true and correct copy of the 548 Registration, as maintained by the U.S. Copyright Office's website.

14.     In 2002, Berg created a stylized and intricate design for a rectangular belt buckle (the "Rectangular Buckle") and registered it with the U.S. Copyright Office under No. VA 1-159-548, with effective date of July 26, 2002.  See Exhibit C.

15.     In 2003, Berg created a stylized and intricate design for a cross with linear

corners (the "Linear Cross") and registered it with the U.S. Copyright Office under No. VA 1-229-288, with effective date of August 29, 2003 (the "288 Registration"). Attached as Exhibit D is a true and correct copy of the 288 Registration, as maintained by the U.S. Copyright Office's website (the "288 Registration").

16.     Berg is the author of the Designs and has at all times been the sole owner of all right, title and interest in and to the Designs, including the copyright thereto.

17.     Upon information and belief, in late 2004/early 2005, an individual named Gary Bellinger, who supplied products to M&F, gained access to Plaintiff's molds and designs, including the Designs at issue here. Bellinger was not an employee of Berg. He was an independent manufacturer of belts in Mexico. However, because Bellinger was a major industry player who spoke the local language and knew everyone, Bellinger had access (through Berg's ex-wife) to Berg's jewelry factory in Mexico where Berg's belt buckles were manufactured.

18.     Upon information and belief, Bellinger gained access to Berg's copyrighted molds for his designs in 2005 and then distributed them to M&F without Berg's knowledge or authorization.

**B.     Defendant's Infringing Activities**

19.     Upon information and belief, sometime in 2005 or thereafter, M & F created their own products copying the Designs for their products and mass producing them. Some examples are attached hereto as Exhibit A.

20.     Upon information and belief, Defendant may also have infringed other copyrighted designs created by Plaintiff which are not identified in this complaint.

21.     M & F  did not license the Designs from Plaintiff, nor did M & F have Plaintiff's permission or consent to use the Designs.

22.     Berg did not know back in 2005 that Bellinger gave M&F access to Berg's copyrighted design molds. Berg did not actually discover M&F's infringement until 2019.

# EXHIBIT B

Case 6:19-cv-00418-JDK   Document 44-1   Filed 08/18/20   Page 6 of 189 PageID #: 187



**Library buildings are closed to the public until further notice, but the U.S. Copyright Office Catalog is available. More.**

| Help | Search | History | Titles | Start Over |

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = VA0001091617
Search Results: Displaying 1 of 1 entries



Labeled View

### *Bob Berg jewelry.*

**Type of Work:** Visual Material
**Registration Number / Date:** VA0001091617 / 2000-06-12
**Application Title:** Bob Berg buckles.
**Title:** Bob Berg jewelry.
**Notes:** Collection.
**Copyright Claimant:** Robert Peter Berg, 1952-
**Date of Creation:** 2000
**Date of Publication:** 2000-01-31
**Basis of Claim:** New Matter: additions to preexisting items.
**Copyright Note:** C.O. correspondence.
**Names:** Berg, Robert Peter, 1952-



| Save, Print and Email (**Help Page**) |
|---|
| Select Download Format [Full Record ▾] [Format for Print/Save] |
| Enter your email address: [          ] [Email] |



Case 6:19-cv-00418-JDK   Document 25-4   Filed 04/13/20   Page 1 of 3   PageID #: 192

# EXHIBIT D



**Library buildings are closed to the public until further notice, but the U.S. Copyright Office Catalog is available. More.**

| Help | Search | History | Titles | Start Over |

---

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = VA0001229288
Search Results: Displaying 1 of 1 entries



---

Labeled View

*Bob Berg buckles.*

**Type of Work:** Visual Material
**Registration Number / Date:** VA0001229288 / 2003-08-29
**Application Title:** Bob Berg jewelry.
**Title:** Bob Berg buckles.
**Copyright Claimant:** Robert Peter Berg, 1952-
**Date of Creation:** 2003
**Date of Publication:** 2003-06-01
**Names:** Berg, Robert Peter, 1952-



| **Save, Print and Email (Help Page)** |
| Select Download Format   Full Record   Format for Print/Save |
| Enter your email address:   _____   Email |

---

Help    Search    History    Titles    Start Over

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ROBERT BERG,

                              Plaintiff,

        - against –


M & F WESTERN PRODUCTS, INC.,

                              Defendant.

Case No. 6:19-cv-418-JDK

## PLAINTIFF ROBERT BERG'S ANSWERS AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Robert Berg ("Berg"), by its counsel, Liebowitz Law Firm, PLLC, hereby answers and objects to Defendant M & F Western Products, Inc.'s First Set of Interrogatories (the "Interrogatories," and each individually, a "Interrogatory") as follows:

## GENERAL OBJECTIONS

Plaintiff makes the following General Objections to the Interrogatories. These General Objections apply to each of the Interrogatories, set forth immediately below, and are incorporated therein by reference. The Specific Objections, even if the same or similar, do not waive the General Objections. Answering any Specific Interrogatory shall not be construed as an admission that the Defendant is entitled to any response more specific than provided:

1.      Plaintiff objects to Instructions, Definitions, and Interrogatories that impose duties or obligations beyond, or inconsistent with, those set forth in Local Rules and the Federal Rules.

2.      Plaintiff objects to the extent the Interrogatories seek information outside the scope of this proceeding. To the extent that the information sought is not relevant nor

1

**Answer to Interrogatory No. 1**: PBR Cup and World Champion buckles (2000-2002); APRA Australian Champion Buckles (200-2004).

Interrogatory No. 2: *Please identify the basis for claiming copyright protection in Plaintiff's asserted cross design that is the subject of Copyright Registration VA 1-091-617 and is identified in Exhibit A to the Amended Complaint, including identifying the specific design elements that you claim are protected by copyright, the date you created the design, and the date you first published the design.*

**Answer to Interrogatory No. 2**: The protected elements include the round beads tapered in size. Plaintiff created the design in the late 1980's and began incorporating this element into his designs in or about 1992.

Interrogatory No. 3: *Please identify the basis for claiming copyright protection in Plaintiff's cross design that is the subject of Copyright Registration VA 1-229-288 and is identified in Exhibit A to the Amended Complaint, including identifying the specific design elements that you claim are protected by copyright, the date you created the design, and the date you first published the design.*

**Answer to Interrogatory No. 3:** The protected elements include the round beads tapered in size with clusters of 3 or 5 beads.  Plaintiff first published the design in 1988 or 1989 but does not know the exact date of creation.

Interrogatory No. 4: *Please identify the basis for claiming copyright protection in Plaintiff's Oval Buckle (as defined in Paragraph 13 of the Amended Complaint) and Rectangular Buckle (as defined in Paragraph 14 of the Amended Complaint) that are the subject of Copyright Registration VA 1-159-548 and are identified in Exhibit A to the Amended Complaint, including identifying the specific design elements that you claim are protected by copyright, the date you created the design, and the date you first published the design.*

**Answer to Interrogatory No. 4:** The protected elements include the round beads tapered in size with clusters of 3 or 5 beads featured on the buckle.  Plaintiff first published the design in 1988 or 1989 but does not know the exact date of creation.

Interrogatory No. 5: *Please identify the facts forming the basis for your allegations upon "information and belief" in Paragraph 17 of the Amended Complaint that Gary Bellinger (sic) "supplied products to M&F" in late 2004 / early 2005. To the extent you allege someone told you that, please identify the person, the date of all communications on this subject and the contents of the communications. To the extent you allege personal knowledge, please state the basis for that personal knowledge.*

**Answer to Interrogatory No. 5:**  In or around February or March 2005, Plaintiff, who was in Texas, called Gary Ballenger in Mexico.  Plaintiff was informed that buckles were sold to Fisher from Australia from Plaintiff's factory. Plaintiff was also informed that his Mexico-based factory was then under the control of Defendant as Ballenger had in his possession several molds of

3

Dated: June 15, 2020

LIEBOWITZ LAW FIRM, PLLC

By: /s/richardliebowitz
    Richard P. Liebowitz
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
Tel: (516) 233-1660
rl@LiebowitzLawFirm.com

*Attorney for Plaintiff Robert Berg*

## VERIFICATION

I, BOB BERG, hereby certify that I have read my answers and responses to Defendant's First Set of Interrogatories, and that they are true and accurate to the best of my personal knowledge and/or good faith belief.

June 16t, 2020

*Bob Berg*
_____
BOB BERG

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| ROBERT BERG, | |
| Plaintiff, | Docket No. 6:19-cv-418 |
| - against - | JURY TRIAL DEMANDED |
| M & F WESTERN PRODUCTS, INC. | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Robert Berg ("Berg" or "Plaintiff") by and through his undersigned counsel, as and for his Complaint against Defendant M & F Western Products, Inc. ("M & F" or "Defendant") hereby alleges as follows:

## **NATURE OF THE ACTION**

1.      This is an action for copyright infringement under Section 501 of the Copyright Act. This action arises out of Defendant's unauthorized reproduction and public display of copyrighted designs, owned and registered by Berg, a professional designer. Accordingly, Berg seeks monetary relief under the Copyright Act of the United States, as amended, 17 U.S.C. § 101 *et seq*.

## **JURISDICTION AND VENUE**

2.      This claim arises under the Copyright Act, 17 U.S.C. § 101 *et seq*., and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has personal jurisdiction over Defendant because Defendant resides in and/or transacts business in Texas.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

11.      Sometime after December 2016, M & F created their own products copying the Designs for their products and mass producing them. Some examples are attached hereto as Exhibit A.

12.      M & F did not license the Designs from Plaintiff, nor did M & F have Plaintiff's permission or consent to use the Designs.

**CLAIM FOR RELIEF**
**(COPYRIGHT INFRINGEMENT AGAINST DEFENDANT)**
**(17 U.S.C. §§ 106, 501)**

13.      Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1-12 above.

14.      M & F infringed Plaintiff's copyright in the Designs by reproducing and publicly displaying the Designs on the Website. M & F is not, and has never been, licensed or otherwise authorized to reproduce, publically display, distribute and/or use the Designs.

15.      The acts of Defendant complained of herein constitute infringement of Plaintiff's copyright and exclusive rights under copyright in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

16.      Upon information and belief, the foregoing acts of infringement by Defendant have been willful, intentional, and purposeful, in disregard of and indifference to Plaintiff's rights.

17.      As a direct and proximate cause of the infringement by the Defendant of Plaintiff's copyright and exclusive rights under copyright, Plaintiff is entitled to damages and Defendant's profits pursuant to 17 U.S.C. § 504(b) for the infringement.

18.      Alternatively, Plaintiff is entitled to statutory damages up to $150,000 per work infringed for Defendant's willful infringement of the Designs, pursuant to 17 U.S.C. § 504(c).

# EXHIBIT A

**COMPANY: M&F WESTERN PRODUCTS INC.**
Shipping Address: 1303 Holiday Dr Sulphur Springs, TX 75482
Mailing Address: P O Box 287 Sulphur Springs, TX 75483
WEBSITE: WWW.MFWESTERN.COM
Email: CustomerService@mfwestern.com
Phone number: USA Call 1.800.256.8646    Canada Call 1.800.456.5200
USA Fax 1.800.256.4274    Canada Fax 1.800.937.6066

| M&F WESTERN PRODUCTS INC. | COPYRIGHT | VA |
|---|---|---|
|  | | COPY OF DEPOSIT<br>VA 1-091-617 |
|  |  | <br>COPY OF DEPOSIT<br>VA 1-159-548 |

| M&F WESTERN PRODUCTS INC. | COPYRIGHT | VA |
|---|---|---|
|  |  | <br>COPY OF DEPOSIT<br>**VA 1-159-548** |
|  |  | <br>COPY OF DEPOSIT<br>**VA 1-229-288** |
|  |  | <br>COPY OF DEPOSIT<br>**VA 1-091-617** |



Case 6:19-cv-00418-JDK   Document 41-1   Filed 09/18/20   Page 20 of 189 PageID #: 668



# EXHIBIT 4



500 North Akard Street
Suite 3300
Dallas, TX 75201-3347

☎ +1.214.965.7700
🖷 +1.214.965.7799
PerkinsCoie.com

John R. Hardin
JohnHardin@perkinscoie.com
D.  +1.214.965.7743
F.   +1.214.965.7793

December 26, 2019


**VIA EMAIL: RL@LiebowitzLawFirm.com**


Richard Liebowitz
Liebowitz Law Firm, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, New York 11580
United States


Re:    ***Berg v. M & F Western Products, Inc.*, Cause No 6:19-cv-418
       (Litigation)**

Mr. Liebowitz,

We have reviewed the claims you filed against M & F Western Products, Inc. The
claims are baseless. First, M & F Western developed its designs independently and
began selling them well-before the alleged meeting with Berg in December 2016.
Second, Berg is asserting copyright claims in design elements such as "beaded
edges," "jewels," and "scrollwork" that are very common in buckle and cross designs
and have been around for decades.  Third, in prior litigation Mr. Berg stipulated
that he "was not asserting copyright protection for the tapered beaded edge" in the
designs at issue.  *See Berg v. Symons*, 393 F. Supp. 2d 525, 533 (S.D. Tex. 2005).
Accordingly, he has disclaimed at least one of the dominant design elements (and in
some cases the only similarity) between his designs and M&F's designs.

It is apparent to us that the Litigation was filed to extort a settlement. This case
has the same fingerprints as the numerous cases you have filed (and been
reprimanded and sanctioned for) in the Southern District of New York. *See e.g.,
Sands v. Bauer Media Group USA, LLC*, Cause No. 17-CV-9215 (S.D.N.Y.
November 26, 2019) ("As Judge Furman recently observed, there is a growing body
of law in this District devoted to the question of whether and when to impose

146730001.2

Richard Liebowitz
December 26, 2019
Page 2

sanctions on Mr. Liebowitz.") (internal citations omitted). The Litigation asserts a copyright violation for basic and extremely common design elements that Berg does not own and in some cases has publicly disclaimed.

M & F Western intends to defend aggressively and will seek recovery of its attorneys' fees and costs when it prevails.

## M & F Western's Designs at Issue All Predate the Alleged December 2016 Meeting

The Complaint alleges that "Carry" from M & F Western stopped by Mr. Berg's booth at a December 2016 NRF retail trade show and expressed Mickey's interest in buying a range of Mr. Berg's designs for use by M & F Western. (¶ 10.) The Complaint further alleges that Mr. Berg declined, and that "sometime after December 2016", M & F Western created their own products copying the Works. (*Id.* at ¶ 11-12.). However, all of the allegedly infringing designs were created before the December 2016 meeting. *See* **Exhibit A** showing that the designs in question were created before the alleged December 2016 meeting.

## M & F Western Developed its Belt Buckle Designs Before Berg

Mr. Berg appears to claim copyright protection in a series of five beads ("Bead Design") located along the compass points of the buckles as shown below.[1]

| Copyright Registration | Registered Work | M & F Western Product |
|---|---|---|
| VA 1-159-548<br><br>Date of creation: 2002<br><br>Date of publication: 6/1/2002 | | |

[1] As you know, the circular and rectangular shapes of Mr. Berg's designs are not protectable elements under copyright law. They are not original and are also functional.

Richard Liebowitz
December 26, 2019
Page 3



| A 1-159-548 Date of creation: 2002 Date of publication: 6/1/2002 | | |
|---|---|---|

As an initial matter, there is no basis for your client's claim that the Bead Design is his copyrightable contribution to the world of buckle design. Mr. Berg's Bead Design was addressed in a prior case involving copyright and trade dress infringement allegations against his ex-wife. *See Berg v. Symons*, 393 F. Supp. 2d 525 (S.D. Tex. 2005). As the case made clear, tapered beaded edges used in buckle designs did not originate with Mr. Berg.[2] Indeed, Mr. Berg stipulated in the case that he "was not asserting copyright protection for the tapered beaded edge" in the designs at issue, thus, it is inconsistent, at best, for you to make such allegations in the Litigation. *Id.* at 533.

In any event, Mr. Berg's belt buckle claim fails because M & F Western's buckles were designed before Berg's. M & F Western acquired the designs when it purchased the Crumrine Buckle Company in 2007. Crumrine has used beaded edges in its designs since at least the mid-1990s, long before the creation dates asserted by Berg. Indeed, there can be no mistake that the alleged infringing M & F Western design is the same as or substantially similar to the 1995 Crumrine design shown below:

---

[2] We have attached as **Exhibit B** additional images showing that the use of beaded edges is ubiquitous in the world of belt buckle designs.

Richard Liebowitz
December 26, 2019
Page 4

| Crumrine 1995 | Alleged Infringing M & F Western Design |
|---|---|
|  | |

Therefore, there is no basis for your client's copyright infringement claim given that the Crumrine design predated the publication of your client's Works.

**Berg's Cross Designs are Not Original to Berg and M&F Didn't Copy Them**

Cross designs (typically associated with Christianity) are ubiquitous in jewelry and date back more than 2000 years. As discussed above and shown in **Exhibit A**, the allegedly infringing cross designs were all created before the meeting with Mr. Berg in December 2016. Further, in any event, the allegedly infringing designs are different in important ways from Mr. Berg's designs. First, the use of beads at the end of the arms of Mr. Berg's cross designs are not protectable subject matter under copyright law based on the historic use of such design elements. Indeed, this issue was addressed in Mr. Berg's case against his ex-wife, wherein the court states that "Berg was not the first to use a black background, more than one color gold, or vine and leaf scrollwork, or place beads on the edge of a buckle or piece of jewelry." *Berg v. Symons*, 393 F. Supp. 2d at 532.

In addition, **Exhibit C** contains examples of cross designs that are highly similar to your client's designs. For example, the use of scrollwork, circles around a central element (i.e., at the intersection of the arms of the cross), flowers and gems are not your client's original contribution to cross designs. As a result of the pre-existing designs, any rights your client may have in the cross designs are extremely thin, if he has any at all. Thus, the differences between your client's designs and our client's designs are fatal to your client's claims.

146730001.2

Richard Liebowitz
December 26, 2019
Page 5

Please see the table below highlighting the important differences between your client's cross designs and those of our client.

| Copyright Registration | Registered Work | M & F Western Product | Comments/Differences |
|---|---|---|---|
| VA 1-091-617 |  |  | M & F Western uses different stylization of the centerpiece of the cross, including a silver lariat forming a prominent circle around the rosette as well as different scrollwork. Further, the centerpiece in M & F Western's design has a border, which is entirely absent from the registered design.<br><br>In addition, please see **Exhibit C** for examples of crosses that are highly similar to your client's design. |

146730001.2

Richard Liebowitz
December 26, 2019
Page 6

| VA 1-091-617 |  |  | The shaping of the gold scrollwork differs from that of Mr. Berg's design. In particular, the scroll in the M&F Western design starts from the center flower and moves towards the end of the four arms of the cross, with an extra curl at the bottom and top of the cross. In addition, the arms of the M&F Western cross have more embellishments on the scroll and the flower designs are also different. The shape of the M&F Western cross is also different in that the angle created by the arms is more acute (or tighter) than with the Berg design.<br><br>In addition, please see **Exhibit C** for examples of crosses that are highly similar to your client's design. |
| VA 1-229-288 |  |  | The shaping of the central rosette design and the stylization of the silver scrollwork differ in important ways between the two pieces, including with the scrolls twisting in different directions between the respective |

146730001.2

Richard Liebowitz
December 26, 2019
Page 7

| | | | |
|---|---|---|---|
| | | | pieces. Further, the angles formed by the arms of the M & F cross are not right angles; each is slightly acute. By contrast, the arms on the cross shown in the noted registration form right angles.<br><br>In addition, please see **Exhibit C** for examples of crosses that are highly similar to your client's design. |

We are confident that discovery will reveal even more evidence showing the baselessness of Mr. Berg's claims.

In light of the foregoing, it would be prudent for Mr. Berg to dismiss his suit now before you and he incur additional legal exposure.  If he does so by the first of year, M & F Western will agree not to seek sanctions or fees for the costs it has incurred to date.

Very truly yours,

John R. Hardin

146730001.2

**EXHIBIT A**

| Reg. No. | Berg | M&F Product | |
|---|---|---|---|
| VA 1-091-617<br><br>Date of creation: 2000<br><br>Date of publication: 1/31/2000 |  |  | M&F obtained this design when it purchased the assets of 3-D in December, 2018, but the image was created at some time prior to August 1, 2006. This a common shape. The scrolling and artwork appear to be different from Berg's. |
| |  |  | This item is in the M & F Western 2016 Buckles and Jewelry catalog shown below: |

## EXHIBIT A

| Reg. No. | Berg | M&F Product |
|---|---|---|
| | | Also, the 2010 Spring Preview Catalog page below shows a similar shaped cross that M&F used on a buckle:<br><br><br><br>Therefore, M&F designs were created long before the alleged December 2016 meeting with Berg. |

### EXHIBIT A

| Reg. No. | Berg | M&F Product |
|---|---|---|
| VA 1-229-288<br><br>Date of creation: 2003<br><br>Date of publication: 6/1/2003 |  | <br><br>This cross design was created no later than July 2015 according to the M&F design documentation:<br><br>Modified:    Wednesday, July 01, 2015, 5:34:44 PM<br><br><br><br>The item is shown on the cover of the 2016 Spring Preview book. Spring 2016 was before the alleged December 2016 meeting with Berg. |

**EXHIBIT A**

| Reg. No. | Berg | M&F Product |
|---|---|---|
|  |  |  This cross shape (with slanted angles) was originally used on buckle 37017, which appeared in the June 2007 catalog: |

**EXHIBIT A**

| Reg. No. | Berg | M&F Product |
|---|---|---|
| | | 

On both the buckle and the pendant, the shape of the cross with angled edges is different from Berg's.  So is the scrolling.  Moreover, M & F's designer has been using similar scrollwork since he won the 1977 Western Designer of the year award. |
| VA 1-159-548

Date of creation: 2002

Date of publication: 6/1/2002 |  | 

This design is from Crumrine – which created the designs back in the 90s. Hence, the design predates the Berg copyright. M&F purchased Crumrine in 2007. |

## EXHIBIT A

| Reg. No. | Berg | M&F Product |
|---|---|---|
| VA 1-159-548<br><br>Date of creation: 2002<br><br>Date of publication:<br><br>6/1/2002 |  | See note above regarding Crumrine design.<br><br>This item was in M & F's Fall 2016 Preview catalog (below), which was created prior to the alleged December 2016 meeting with Berg. |

EXHIBIT B

| BUCKLES | |
|---|---|
| **Design** | **Source** |
|  | 1995 Catalog. |
|  | http://www.buckletown.com/itm/crs-007-crosses-belt-buckle/7377 |
|  | http://www.buckletown.com/itm/crs-008-crosses-belt-buckle/7378 |

| | |
|---|---|
|  | https://www.montanasilversmiths.com/faith-in-four-buckle-with-a-bronc-rider |
|  | https://www.montanasilversmiths.com/two-tone-cowboy-cameo-buckle-with-longhorn |
|  | https://sheamichellebuckles.com/collections/barbwire-tooled-leather-line/products/bw-9 |

146231537.3

| | |
|---|---|
|  | https://sheamichellebuckles.com/collections/barbwire-tooled-leather-line/products/bw-4 |
|  | https://sheamichellebuckles.com/collections/barbwire-tooled-leather-line/products/bw-7 |

**EXHIBIT C**

| CROSSES | |
|---|---|
| **Design** | **Source** |
|  | https://www.fanningjewelry.com/p-3b-small/ |
|  | https://www.fanningjewelry.com/p-9b/ |
|  | https://www.fanningjewelry.com/p-8b/ |
|  | https://hyosilver.com/shop/jewelry/cross-pendants/lone-star-cross-pendant-blackest-black/ |
|  | https://hyosilver.com/shop/jewelry/cross-pendants/rimrock-silver-cross-with-black-onyx-petite/ |

146231537.3



| | |
|---|---|
| | https://hyosilver.com/shop/jewelry/cross-pendants/tall-cross-pendant-crystal-clear-sterling-silver/ |
| | https://hyosilver.com/shop/jewelry/cross-pendants/western-cross-pendant-blackest-black-sterling-silver/ |
| | https://hyosilver.com/shop/jewelry/cross-pendants/tall-cross-pendant-sapphire-blue-sterling-silver/ |
| | https://hyosilver.com/shop/jewelry/cross-pendants/tall-cross-pendant-blackest-black-sterling-silver/ |
| | https://hyosilver.com/shop/jewelry/cross-pendants/lariat-medium-cross-pendant-blackest-black-sterling-silver/ |

- 5 -



| | https://us.boohoo.com/rounded-cross-necklace/MZZ57114.html |
|---|---|
| | https://sabrinasilver.com/sabrinasilver/ShopCart/impl/product.php?productid=72074&cat=1768&page=97 |
| | https://shop.celtiquecreations.com/products/rounded-celtic-cross-necklace-fine-pewter-adjustable |
| | https://arthursjewelryhawaii.com/products/silver-2-tone-medium-plumeria-scroll-cross-pendant |
| | https://www.almy.com/Product1/zc0003650 |

| | |
|---|---|
|  | https://www.cozzoo.com/home/5747-77482-unique-men-s-lava-stone-beaded-bracelet-stainless-steel-cross-charm-leather-bracelet-male-jewelry-dropship-gifts-for-men-dlb73.html |
|  | https://usartquest.com/product/celtic-cross-charm/ |
|  | https://www.factorydirectjewelry.com/rose-gold-fancy-cross-pendant-necklace-with-gemstone-and-diamonds/ |
|  | https://www.vintagepinsbrooches.com/product/vintage-large-christian-catholic-orthodox-cross-crucifix-turquoise-aqua-marine-rhinestone-pin-brooch-pendant-combo-religious-designer-jewelry-women/ |
|  | https://www.etsy.com/listing/451334324/vintage-021084-handmade-sterling-silver |

- 7 -



| | |
|---|---|
| | https://www.overstock.com/Jewelry-Watches/10K-Yellow-Gold-Nugget-Cross-Pendant/13808127/product.html?refccid=TKHQN3VZ3OGLDNKGAXD2T5FSEU&searchidx=2&option=22892625&kwds=10k%20yellow%20gold%20nugget%20cross%20pendant&rfmt= |
| | https://www.overstock.com/Jewelry-Watches/Luxurman-14k-Gold-Mens-2-3-4ct-TDW-Diamond-Necklace-Designer-Cross-Pendant-with-Chain/30359551/product.html?kwds=luxurman%2014k%20gold%20men%27s%202%203-4ct%20tdw%20diamond%20necklace%20designer%20cross%20pendant%20with%20chain%20-%20rose&option=54385358&refccid=OPJBMZ7JG5UK25CLT7P2RLPRDU&rfmt= |
| | https://www.overstock.com/Jewelry-Watches/Versil-Sterling-Silver-Antiqued-Cross-Pendant-with-18-inch-Chain/22208747/product.html?option=36993464 |
| | https://www.overstock.com/Jewelry-Watches/Versil-10-Karat-Yellow-Gold-Solid-Cross-Inside-A-Cross-Charm-with-18-inch-Chain/29579272/product.html?option=52599152 |
| | https://www.sportsmansguide.com/product/index/western-cross-necklace?a=922247 |

- 8 -

| | |
|---|---|
|  | https://wildwestliving.com/products/msjs60979-western-tri-color-filagress-cross-necklace-matching-earrings |
|  | http://www.kiwiimport.com/products.php?product=Western-Cross-Peace-Rose-Turquoise-Rhinestone-Gold-Silver-Charms-Necklace-with-Earrings-Set |
|  | https://www.amazon.com/Western-Peak-Turquoise-Rhinestone-Necklace/dp/B018F31TD0 |
|  | https://www.goldmountaintrading.com/rope-edge-cross-necklace.html |

- 9 -

# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

ROBERT BERG,

       Plaintiff,

  - v -

M & F WESTERN PRODUCTS, INC.

       Defendant.

Docket No. 6:19-cv-418-JDK

**Expert Report of Hugh E. Weaver**

**Scope of Inquiry**

1. I have been retained by M&F Western Products, Inc. to provide expert analysis and testimony regarding buckle and jewelry design in the western jewelry industry (the "Industry"). In particular, I have been asked to opine regarding: (1) the prevalence of certain design elements in the Industry; and (2) whether certain design elements claimed by Mr. Berg in his copyright registrations and in this case ("Asserted Design Elements") were created by Mr. Berg.

**Qualifications**

2. I am 63 years of age and am a jeweler and master engraver by trade. I have worked in this Industry for 40 plus years, meaning most of my professional life. In 2000, I won the prestigious Academy of Western Artists Master Engraver of the Year award, the highest honor awarded in my field based on the body of my work and the strong design influence that I had had in the Industry as of that point.

3. Since then, I have continued with my work and am still widely regarded as one of the top designers and engravers in my field. I have been commissioned to

148638785.4

create many original works for high-profile and celebrity clients throughout the years. Some of my pieces have sold for as much as $35,000. I continue to sell my work, including through my website located at

https://heirloomengraversworldwide.com/ and have attached true and correct copies of the About HEW page as well as samples from my portfolio and of my products hereto as Exhibit A. As seen on my website, my work includes buckle design as well as jewelry design, including bracelets, hair clips, pendants (including crosses), rings, and tack and money clips.

4.      I was a witness in Mr. Berg's previous cases against his ex-wife Joanne Symons on behalf of Ms. Symons. My testimony in those cases is discussed further below. In her opinion, Judge Lee H. Rosenthal in the *Berg v. Symons* case recognized that I was a credible witness, stating: "Weaver credibly testified at trial that he showed Berg design features that Berg later incorporated into his own belt buckle and jewelry designs, including the use of tapered raised beads on a raised edge." *Berg v. Symons*, 393 F. Supp. 2d 525, 532 (S.D. Tex. 2005).[1] Aside from this one previous case where my expertise and credibility was established, I have not served as an expert witness in any other court cases.

5.      My rate of compensation as a testifying expert in this case is $350 per day.

**Materials Reviewed**

6.      In preparing this declaration, I have reviewed Mr. Berg's Complaint and Amended Complaint as well as the Answer and the Answer to the Amended

---

[1] Mr. Berg sued Ms. Symons in a case in Texas as well as in a case in Nevada, which also involved other companies. *Berg v. Symons et al*, D. Nev., Case No. A476557.

- 2 -

148638785

Complaint and the related exhibits; M&F Western's Motion for Partial Summary Judgment and related exhibits; the documents Mr. Berg produced in this case relating to his asserted copyright registrations; and Mr. Berg's responses to M&F Western's Interrogatories and Requests for Admission. I am also familiar with evidence provided in the prior Berg cases relating to my own prior work. In addition, I draw on my experience in the Industry and knowledge relating to designs used by third parties.

**Analysis**

7.     I understand from my review of the documents described above that Mr. Berg is claiming that he owns the copyright in several designs that all consists of a series of tapered beads relating both to belt buckle designs and to cross designs. In particular, I understand that he is asserting three different copyright registrations as described below and is accusing various M&F Western buckle and cross designs of infringement as shown:

| Plaintiff's Asserted Copyright Registration | Plaintiff's Asserted Design | M&F Western's Accused Product |
|---|---|---|
| COPY OF DEPOSIT<br>VA 1-159-548<br><br>Date of Creation: 2002<br><br>Date of Publication: 6/1/2002 | | |



COPY OF DEPOSIT

**VA 1-159-548**

Date of Creation: 2002

Date of Publication:
June 1, 2002







COPY OF DEPOSIT

**VA 1-091-617**

Date of Creation: 2000

Date of Publication:
January 31, 2000







- 4 -

148638785



COPY OF DEPOSIT
VA 1-229-288

Date of Creation: 2003

Date of Publication:
June 1, 2003





8.      I have reviewed Mr. Berg's interrogatory responses in which he states that the protected elements in his Asserted Designs are the "round beads tapered in size." (Answers to Interrogatories Nos. 2-4.) I have also reviewed his Answers to M&F Western's Requests for Admission where he denies that I showed him the use of tapered beads prior to the dates he claims he created and published his designs. (Answers to Requests for Admission Nos. 9-11.)

9.      The tapered-bead design was directly at issue in the prior case involving Mr. Berg's ex-wife, Ms. Symons, where I was a witness. I provided an affidavit on January 5, 2004 ("Affidavit") in that case; a true and correct copy of the Affidavit and exhibits thereto is attached as Exhibit B to this Report. As discussed in my Affidavit, in or around 1982, I created a style of design that consisted of dot and half rounds (tapered beads) with overlays and black backgrounds. (Exhibit B, Affidavit at ¶ 5.) From 1982-1986, I designed and made many buckles with these elements, which had become well-known in western circles. (*Id.* at ¶ 6.) These designs originate with me,

- 5 -

not with Mr. Berg. I met Mr. Berg in 1986 and showed him my buckle designs,

including designs that incorporated the tapered beads. (*Id.* at ¶¶ 7-9.)

10.    For example, when I first met Mr. Berg in 1986, I was wearing the buckle below, which I made in 1983. This buckle is a classic example of my design work and includes tapered beads, as shown on the loop element for example.



11.    In addition, below is another buckle I designed and showed Berg in 1986:

148638785



I made the above buckle design in 1985, and it has my classic look, including the series of tapered beads that Mr. Berg later attempted to copyright for himself, including in the Copyright Registration No. 1-159-548, which he is asserting in this case.

12.    I also showed him other buckle designs with tapered beaded edging at that time, including the designs below and discussed in my Affidavit:

148638785



SON OF THE SAGE STUDIOS
HUGH WEAVER



While this image is a bit difficult to see, the use of tapered beads at the four compass points of the buckle is plainly visible. In addition, the date on this buckle is shown on the lower left-hand corner and is 1986. I showed this buckle to Mr. Berg at our first meeting.

13.    The details of my prior interactions with Mr. Berg are set forth in the Affidavit. It is clear that in this case, Mr. Berg is trying to rewrite history. Judge Rosenthal recognized in the *Berg v. Symons* case that my testimony was credible and that Mr. Berg incorporated my design features into his designs: "Weaver credibly testified at trial that he showed Berg design features that Berg later incorporated into his own belt buckle and jewelry designs, including the use of tapered raised beads on a raised edge." *Berg v. Symons*, 393 F. Supp. 2d 525, 532 (S.D. Tex. 2005). The court also noted that "Berg was not the first to use a black background, more than one color gold, or vine and leaf scrollwork, or to place beads on the edge of a buckle or jewelry design." *Id.* The court also noted that "[a]lthough the copyright for one of the jewelry collections includes drawings of edge designs consisting of tapered beads of various sizes on blank buckles, (Trophy Blank Cast Two BB1249), Berg stipulated at trial that he was not asserting copyright

- 9 -

148638785

protection for the tapered beaded edge design contained in the drawings." *Id.*

14.   If called to testify at trial, I will testify that Mr. Berg did not create the tapered beaded design, that the design became popular in the Industry after I created it (including among many other manufacturers of buckles and jewelry, including for example Gist, Inc. as shown in Exhibit C). These design elements existed well before Berg claims to have created them, whether they are placed on a cross or a buckle or another piece of jewelry.

15.   I reserve the right to provide a supplemental report to the extent necessary to correct the record should Mr. Berg make further factual misstatements and/or address positions or allegations Mr. Berg has not yet submitted in this matter.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 26 2020.

By: Hugh E. Weaver

Hugh E. Weaver

- 10 -

148638785

# EXHIBIT A

# Heirloom Engravers Worldwide

Home    **About HEW**    Products    Portfolio    Contact Us    🔍

## About HEW

Home | About HEW



Hugh E Weaver was born in Fallon Nevada in 1956. Apprenticed to Saddlemaker's Dave Schuler and his son Peter Schuler 1972-1979. Dave was like a father to Hugh and remained like family until his death in 2013.

Growing up around Reno, Nevada, Hugh was exposed to many great craftsman who helped him immensely. Bill Malloy~ Saddlemaker, Bill Rogers~ Saddlemaker, Al Tejon~ Bit & Spur Maker, Al Petcheti~ Silversmith and Tool & Die Maker, unfortunately all now deceased.

Hugh met Dan Murray in 1973 who was most influential, a big supporter and mentor till his death. In Hugh's opinion as well as a great many others, Dan Murray was the King of Western Articles. Truly the Mastercraftsman, Dan's talents were seemingly limitless.

Hugh received silver engraving help from Barry Lee Hands, Eathen Jatsik, Hartch Nargizian and Gary Gist. Hugh also had technical help and support and inspiration cutting steel from Lyton Mckenzie (deceased) and Ron Smith.

Hugh has had a major style influence in the Western Silver Industry and was named Academy of Western Arts, Master Engraver in 2000. Having cut Masters designed, taught to Sabona Bracelets, Tom Balding Bits & Spurs, Montana Watch Company, John Mincer Silversmiths. Hugh also lived in Australia where he went to consult and design, teach to Bob Berg Silversmiths and many more.

Hugh has been an avid horseman all his life having apprenticed to numerous World Champions in a 25 year period, breaking horses for a living for 30 plus years also having a letter of reference from NRCCHA Triple Crown Winner, Bobby Ingersoll. Hugh no longer rides any outside horses, riding only a few of his own he raised.

Hugh now concentrates all his efforts to his jewelry, working in styles of Victorian, Art Nouveau, Art Deco, Japanese and Western in 18kt and 14kt multi-colored Gold, Silver and precious stones.

Hugh Weaver resides near Reno, Nevada, where he continues to follow his passion as a Master Engraver and Jeweler, creating unparalleled, heirloom quality jewelry for his clients. [/vc_column_text]

## Our Mission

Through blood, sweat & tears and with only the finest quality metals, jewels and precious stones, Hugh creates one-of-a-kind Heirloom Masterpieces that will be treasured by all for lifetimes.

## Core Goals

To always persevere in the quest to improve our abilities, techniques and styles in order to better serve our customers and their individual needs.

Heirloom Engraver's Worldwide takes pride in every one of a kind product we create.

**HEW's Focus is on Offering the Absolute Best Customer Experience Imaginable Every Time.**

## Some Of Our Past Clients

Here are some of the past clients we have worked with.

## Testimonials

I have known Hugh Weaver for a very long time, 25 plus years. The only work that is truly worthy of a high price, is that which is 100% original and that has the WOW factor. For anyone can do mediocre work but Hugh's work WOW's me!

Ron Smith ~ Master Engraver

· · ·

Write a review

f  P  🔊  g+

Heirloom Engravers Worldwide 2014 All Rights Reserved. Website by Wyo West Website Services

Home    About HEW    Products ^    Portfolio ^    Contact Us



# Heirloom Engravers Worldwide

Home    About HEW    Products    Portfolio    Contact Us

*Powder Face Buckle Set*

Home › Buckle Sets › Powder Face Buckle Set

Amazing Buckle Set with rubies and diamonds. Inspired by water color of "Powder Face", by Artist Charles Russell.

Categories: Buckle Sets, Currently Available.
Tags: 18 kt, 4 colored, bezel set chrysoprase, buds, buckle set, channel set rubies, charles russel, diamond, diamond flower centers, flower, gold, heirloom quality, high dome, leaves, powder face, two stage tip, wild roses.

Description

## Product Description

**Powder Face Buckle Set is for sale $50,000**

Charles Russel's famous water color painting of "Powder Face", inspired this gorgeous Buckle Set by Hugh Weaver, dubbed "Powder Face".

High Dome Buckle 4 colored 18kt gold wild roses, buds and leaves with channel set rubies, diamond flower centers, bezel set chrysoprase, green stones 2 stage tip.

This Amazing Heirloom Quality Buckle Set took nearly 500 hours of labor and is currently for sale. Interested parties should use the contact us form to request additional information and pricing.

### Sidebar

Bracelets
Buckle Sets
 Men's Buckle Sets
 Women's Buckle Sets
Buckles
Currently Available
Other Products
 Hair Clips
 Money Clips
Pendants
Rings
 Men's Rings
 Women's Rings
Tack
 Bits
 Spurs

## Related Products

Ladies Wide Flat Band
Read More ›

Women's Western Flower Ring
Read More ›

Japanese Style Buckle Set
Read More ›

Money Clip with Logo
Read More ›

# Heirloom Engravers Worldwide

Home  About HEW  Products  Portfolio  Contact Us

*Custom Handmade Money Clip with Diamonds, Rubies and Tsavorite Garnets*

Home  Portfolio

< Prev  Next >



Custom Handmade Money Clip

Initial, Gold Elk, Diamonds, Rubies and Tsavorite Garnets.

Materials Cost = $10,000+

300+ Hours Total Labor

Final Cost = $35,000

August 22, 2014    By nik    Current Projects    Leave a comment

Heirloom Engravers Worldwide 2014 All Rights Reserved. Website by Wyo West Website Services

Home  About HEW  Products ⌃  Portfolio ⌃  Contact Us

## Leave a Reply

You must be logged in to post a comment.



Document title: Heirloom Engravers Worldwide | Product Categories Currently Available
Capture URL: https://heirloomengraversworldwide.com/product-category/currently-available/
Capture timestamp (UTC): Thu, 25 Jun 2020 19:25:21 GMT

Ranchester, Wyoming 82839 · Call or Call (307-751-4103) · Home of Master Engraver & Jeweler, Hugh Weaver

# Heirloom Engravers Worldwide

Home     About HEW     Products     Portfolio     Contact Us

## Personalized Buckle Set with Name on Tip

Home     Buckle Sets     Men's Buckle Sets     Personalized Buckle Set with Name on Tip



Personalized 3 Piece Buckle Set with Name on Tip

Categories: Buckle Sets, Men's Buckle Sets.

Tags: 3 piece buckle set, hugh, hugh weaver, name on tip, personalized.

### Bracelets

### Buckle Sets
  Men's Buckle Sets
  Women's Buckle Sets

### Buckles

### Currently Available

### Other Products
  Hair Clips
  Money Clips

### Pendants

### Rings
  Men's Rings
  Women's Rings

---

### Description

## Product Description

Personalized 3 Piece Buckle Set With Name On Tip.

This particular one was created by Hugh Weaver for himself but has since been requested by others.

Featuring Hugh's Very Own Buckle Design and Radiant Daisies.

**URL**

https://heirloomengraversworldwide.com/product/personalized-buckle-set-with-name-on-tip/

**Timestamp**

Fri Jun 26 2020 11:46:50 GMT-0700 (Pacific Daylight Time)

## Related Products

Tack

Spurs



### Pheasant Buckle Set

Read More ›



### Bronc Rider Buckle Set with Ruby In Tongue

Read More ›



### Sterling Buckle Set with Gold Overlay

Read More ›



### 3 Piece Buckle Set with Steer and Brand

Read More ›

Heirloom Engravers Worldwide 2014 All Rights Reserved. Website by Wyo West Website Services

Home    About HEW    Products ⌃    Portfolio ⌃    Contact Us

**URL**

https://heirloomengraversworldwide.com/product/personalized-buckle-set-with-name-on-tip/

**Timestamp**

Fri Jun 26 2020 11:46:50 GMT-0700 (Pacific Daylight Time)



# Heirloom Engravers Worldwide

Home   About HEW   **Products**   Portfolio   Contact Us   🔍

## *Bracelets*

Home / Bracelets

Custom Made Bracelets for Him and Her

Showing all 5 results

Default sorting ▾



**Bracelet with Rubies and Diamonds**

Read More ›



**Flower Bracelet**

Read More ›



**Silver Elk Ivory Bracelet**

Read More ›



**Sterling Silver Bracelet with Gold Brand**

Read More ›



**Sterling Silver Bracelet with Initials**

Read More ›



Bracelets

Buckle Sets

Men's Buckle Sets

Women's Buckle Sets

Buckles

Currently Available

Other Products

Hair Clips

Money Clips

Pendants

Rings

Men's Rings

Women's Rings

Tack

**URL**

https://heirloomengraversworldwide.com/product-category/bracelets/

**Timestamp**

Fri Jun 26 2020 09:45:44 GMT-0700 (Pacific Daylight Time)





# Heirloom Engravers Worldwide

Home    About HEW    **Products**    Portfolio    Contact Us    🔍

## *Pendants*

Home   Pendants

Custom Made Pendants Available in Various Styles Including Art Deco, Art Nouveau, Western, Japanese and More

Showing the single result



**Winged Pendant**

Read More ›



Bracelets

Buckle Sets

Men's Buckle Sets

Women's Buckle Sets

Buckles

Currently Available

Other Products

Hair Clips

Money Clips

Pendants

Rings

Men's Rings

Women's Rings

Tack

**URL**

https://heirloomengraversworldwide.com/product-category/pendants/

**Timestamp**

Fri Jun 26 2020 09:46:10 GMT-0700 (Pacific Daylight Time)

Case 1:19-cv-00746 Document 91-4 Filed 09/18/20

Ranchester, Wyoming 82839 | Call or Text: (307) 751-4105 | Heirloom Master Engraver & Jeweler, Full Metal Art

# Heirloom Engravers Worldwide

Home    About HEW    **Products**    Portfolio    Contact Us    🔍

## *Rings*

Home / Rings

Custom Made Rings for Men and Women.

Showing all 8 results

Default sorting ▾



**Elk Ivory Ring with Diamonds**

Read More ⟩



**Ladies Oval Top Ring with Diamonds**

Read More ⟩



**Ladies Victorian Ring with Diamonds**

Read More ⟩



**Ladies Wide Flat Band**

Read More ⟩



**Men's 18k Gold Diamond Ring**

Read More ⟩



**Men's Elk Ivory Ring**

Read More ⟩



**Women's Western Flat Style Band**

Read More ⟩



**Women's Western Flower Ring**

Read More ⟩



Bracelets

Buckle Sets

   Men's Buckle Sets

   Women's Buckle Sets

Buckles

Currently Available

Other Products

   Hair Clips

   Money Clips

Pendants

Rings

   Men's Rings

   Women's Rings

Tack

**URL**

https://heirloomengraversworldwide.com/product-category/rings/

**Timestamp**

Fri Jun 26 2020 09:46:24 GMT-0700 (Pacific Daylight Time)



Home    About HEW    **Products**    Portfolio    Contact Us    🔍

## *Tack*

Home / Tack

Custom Tack Including Bits, Spurs, Cheeks and More

Showing all 3 results

Default sorting







**Custom Spurs**

Read More ›

**Custom Spurs with Initials**

Read More ›

**Santa Barbara Cheek with Spade Mouthpiece**

Read More ›



Bracelets

Buckle Sets

   Men's Buckle Sets

   Women's Buckle Sets

Buckles

Currently Available

Other Products

   Hair Clips

   Money Clips

Pendants

Rings

   Men's Rings

   Women's Rings

Tack

**URL**

https://heirloomengraversworldwide.com/product-category/tack/

**Timestamp**

Fri Jun 26 2020 09:46:37 GMT-0700 (Pacific Daylight Time)

Ranchester, Wyoming 82839 · ( USA or Canada 307-752-3405 · Heirloom Master Engravers & Jeweler, Hugh Anderson

# *Heirloom Engravers Worldwide*

Home   About HEW   Products   Portfolio   Contact Us   🔍

## *Search Results for: money*

Home   |   Results for "money"



### Custom Handmade Money Clip with Diamonds, Rubies and Tsavorite Garnets

August 22, 2014   |   By nik   |   Current Projects   |   Leave a comment

Custom Money Clip Project

Details ›



### Money Clip with Logo

June 19, 2014   |   By nik

Money Clip with gold logo sterling extra fine facet one side, scroll engraving on the other side.

Details ›



Bracelets

Buckle Sets

  Men's Buckle Sets

  Women's Buckle Sets

Buckles

Currently Available

Other Products

  Hair Clips

  Money Clips

Pendants

Rings

  Men's Rings

  Women's Rings

Tack

**URL**

https://heirloomengraversworldwide.com/?s=money

**Timestamp**

Fri Jun 26 2020 09:46:50 GMT-0700 (Pacific Daylight Time)

## Homepage version 3

March 19, 2014    By nik

Bracelets Buckle Sets Rings Pedants Tack Other Products Thank you for visiting the New Home for H-E-WI Here at Heirloom Engraver's Worldwide, at the foot of the Big Horn Mountains in Beautiful Ranchester Wyoming, World Reknown Jeweler and Master Engraver Hugh E Weaver delights his clients with his exquisite and intricately designed, one of a... Details ›

Bits

Spurs

**URL**

https://heirloomengraversworldwide.com/?s=money

**Timestamp**

Fri Jun 26 2020 09:46:50 GMT-0700 (Pacific Daylight Time)



# Heirloom Engravers Worldwide

Home   About HEW   **Products**   Portfolio   Contact Us   🔍

*Hair Clips*

Home / Other Products / Hair Clips

Custom Made Hair Clips She will Love

Showing all 2 results

Default sorting ▾



### Hair Clip with Gold Hummingbird

Read More ›



### Sterling Silver Hair Clip with Monogram

Read More ›

Bracelets

Buckle Sets

  Men's Buckle Sets

  Women's Buckle Sets

Buckles

Currently Available

Other Products

  Hair Clips

  Money Clips

Pendants

Rings

  Men's Rings

  Women's Rings

Tack

**URL**

https://heirloomengraversworldwide.com/product-category/other-products/hair-clips/

**Timestamp**

Fri Jun 26 2020 09:45:57 GMT-0700 (Pacific Daylight Time)

# EXHIBIT B

Affidavit of Hugh Weaver

1. I, Hugh Weaver, am over the age of 18 and have personal knowledge of the facts stated herein, and if called upon, would, and could testify competently to them.

2. I am now a resident of Sheridan, Wyoming.

3. I am a jeweler and master engraver by trade. I won the prestigious Academy of Western Artists Master Engraver of the Year 2000, the highest honor awarded in my field based on the body of my work and the strong design influence that I have had in the industry.

4. I have been commissioned to create original works for many high-profile celebrity clients. Some of my pieces have sold for as much as $20,000. A piece that is near completion is priced at $48,000.

5. In or around 1982, I created a new style of design that consisted of the dot and half rounds with overlays and black backgrounds, the same design elements that Robert Berg refers to as the "Berg" elements.

6. From 1982 to 1986, I designed and made many belt buckles with these elements, which had become well known and western circles.

7. In 1986, I was living in Reno, Nevada. Robert Berg called me there and asked if we could meet. I had never met or spoken with Mr. Berg before that phone call.

8. Soon after that phone call, I drove to Lodi, California to meet with Mr. Berg in person.

9. I took Mr. Berg several belt buckles that I had designed and made, along with sketches. Photos of two of the buckles that I showed Mr. Berg in Lodi, California are attached this affidavit.



10. Mr. Berg and I spoke on the phone several times after that meeting. He wanted me to come to Australia to be a consultant for his business. I told him I was not interested.

11. I then ran into Mr. Berg at the National Finals Rodeo in the Fall of 1988. He again tried to convince me to come to Australia to serve as a consultant to his business.

12. This time, I agreed to come.

13. Mr. Berg and I first signed a non-compete agreement where he agreed only to make or sell rodeo trophy buckles in the United States because I was not making trophy buckles at that time. As consideration, I agreed not to design or sell any products in Australia to compete with Mr. Berg for a period of 10 years.

14. I went to Australia in 1989 and worked as a consultant to Mr. Berg's company for about six months.

15. While in Australia, I worked as an independent contractor, creating designs for Mr. Berg to be used solely in the trophy buckle business in the United States as per our non-compete agreement. I never gave up copy rights or any other property rights to my designs.

16. When I first met Mr. Berg, he was not making any buckles or jewelry that contained what he now refers to as the "Berg elements".

17. It wasn't until Mr. Berg moved to the United States in 1993 that I learned that he was using my designs to create a line of jewelry and buckles despite our non-compete agreement.

18. It wasn't until Mr. Berg began sending cease and desist letters in 2003 that I learned that Mr. Berg had copyrighted several designs and was claiming the exclusive rights to use and the sole inventorship of the elements which I originally created.

19. I called Mr. Berg's Houston counsel Mr. Mark Tidwell of Jackson Walker when I learned of his threats to file suit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of January, 2004          By: _____
                                                     Hugh Weaver

State of Wyoming
County of Sheridan

The foregoing instrument was acknowledged before me this 5th day of January 2004 by Hugh Weaver.



KATHY A. McMANUS - NOTARY PUBLIC
County of          State of
Sheridan           Wyoming
My Commission Expires Sept. 14, 2005

Kathy a McManus
Notary Public



Most copied trophy buckle in the Western industry.
Classic Hugh Weaver Look

EXHIBIT 



SON OF THE SAGE STUDIOS

HUGH WEAVER

EXHIBIT J

BOB SAW THIS BUCKLE IN PERSON

LODI FIRST MEETING

CIRCA 1985

© Hug Zilla



Buckles 007

Gold/Silver/Jewels/Engraving

Limited # _____

Costs: _____

Item: _____



IN   PRO GRESS     300 HRS 



# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ROBERT BERG,                     §
           **Plaintiff**        §
                              §
                              §

vs.                               §        Case No. 6:19-cv-418-JDK
                              §
                              §

M&F WESTERN PRODUCTS, INC.,
          **Defendant.**

## DECLARATION OF STEVE DEES

I, Steve Dees, declare as follows:

1.  I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth in this Declaration. I submit this Declaration in support of M&F Western's Motion for Partial Summary Judgment regarding Plaintiff's claims of copyright infringement pertaining to Copyright Registration Nos. VA 1-091-617 and VA 1-229-288 ("the Cross Registrations").

2.  I am currently a General Partner at Dees Cattle. Previously, I owned 3-D Belt Company, L.P., which was founded in 1988. I worked at 3-D in the role of its President from 1988 until December 2018 when I sold the company to M&F Western as discussed below. 3-D was a purveyor of Western items, including belts, belt buckles, and jewelry. Through my work at 3-D, I was involved in the review of the marketplace for Western buckles and jewelry, including products by others in the Western buckle and jewelry industry. As such I am intimately familiar with 3-D's business and the Western wear industry, including Western-style jewelry and belt buckles.

3. In 2018, M&F Western acquired 3-D Belt Company, L.P. as well as the intellectual property in its designs through an Asset Purchase Agreement. A true and correct copy of that agreement, to which I am a signatory, is attached as <u>Exhibit A</u> to this declaration. While some of the details of the agreement are confidential and have thus been redacted for the purposes of the submission into the public record, the fact that 3-D sold its business and intellectual property rights to M&F Western is not confidential.

4. Pursuant to the Asset Purchase Agreement, M&F Western acquired the rights in all "copyrights, including all applications and registrations, and works of authorship, whether or not copyrightable" pursuant to the Asset Purchase Agreement. <u>Exhibit A</u> at Section 1.01(d). Pursuant to Section 3.06(a): "The Intellectual Property Assets constitute all of the registered and unregistered intellectual property owned by the Company. Seller owns or has the right to use all Intellectual Property Assets." The assets acquired by M&F Western include the cross design below:



| Plaintiff's Registration VA 1-091-617 | 3-D Design |
|---|---|

5. This design was created by 3-D sometime prior to August 1, 2006, based on historical business records that were transferred to M&F Western in connection with the Asset Purchase Agreement. The item was sold from 2006 until the sale of the company to M&F

Western in 2018 with no issues. The item was also included in numerous 3-D catalogs, including the catalog as of the date of the Asset Purchase Agreement in December, 2018.

6. Based on my experience in the Western buckle and jewelry industry, tapered beads are used as a standard or stock design element in a wide variety of products, from buckles to various jewelry items, such as the 3-D cross pendant. This has been the case for many decades, dating to prior than 2000. Use of the tapered beads on the 3-D cross pendant reflects use of a design element that was standard in the Industry, like the use of roping, scrollwork, a flower, a black background and multiple colors of metal, which are also seen in the 3-D cross pendant.


I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Signed on this __17__ day of August 2020, at Schulenburg, Texas.

by: _____

Steve Dees

ASSET PURCHASE AGREEMENT


between


3-D BELT COMPANY, L.P.


and


M & F WESTERN PRODUCTS, INC.

dated as of

December 21, 2018

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000586

# TABLE OF CONTENTS

Page

ARTICLE I    PURCHASE AND SALE ................................................................................1

Section 1.01    Purchase and Sale of Assets ................................................1
Section 1.02    Excluded Assets......................................................................2
Section 1.03    Assumption of Liabilities ......................................................2
Section 1.04    Purchase Price........................................................................3
Section 1.05    Allocation of Purchase Price ................................................3

ARTICLE II    CLOSING ............................................................................................3

Section 2.01    Closing ....................................................................................3
Section 2.02    Closing Deliverables..............................................................3

ARTICLE III    REPRESENTATIONS AND WARRANTIES OF SELLER ....................4

Section 3.01    Organization and Authority of Seller; Enforceability........4
Section 3.02    No Conflicts; Consents ..........................................................4
Section 3.03    Title to Purchased Assets ......................................................5
Section 3.04    Legal Proceedings..................................................................5
Section 3.05    Customers and Suppliers........................................................5
Section 3.06    Intellectual Property................................................................5

ARTICLE IV    REPRESENTATIONS AND WARRANTIES OF BUYER......................6

Section 4.01    Organization and Authority of Buyer; Enforceability ........6
Section 4.02    No Conflicts; Consents ..........................................................6
Section 4.03    Legal Proceedings..................................................................6
Section 4.04    Sufficiency of Funds..............................................................6
Section 4.05    Solvency ..................................................................................6

ARTICLE V    COVENANTS........................................................................................7

Section 5.01    Public Announcements; Confidentiality ..............................7
Section 5.02    Transfer Taxes ........................................................................7
Section 5.03    Employees ..............................................................................7
Section 5.04    Lease ........................................................................................7
Section 5.05    Change of Name ....................................................................7
Section 5.06    Domain Names ......................................................................7
Section 5.07    Retention of Records..............................................................7
Section 5.08    Certain Tax Matters ..............................................................8
Section 5.09    Further Assurances..................................................................8
Section 5.10    Insurance ................................................................................8
Section 5.11    Georgia Boot Consent ............................................................8

i

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000587

**ARTICLE VI    INDEMNIFICATION** ............................................................................... 8

Section 6.01    Survival ........................................................................................................ 8
Section 6.02    Indemnification By Seller ........................................................................... 8
Section 6.03    Indemnification By Buyer ........................................................................... 9
Section 6.04    Certain Limitations ..................................................................................... 9
Section 6.05    Indemnification Procedures ......................................................................... 9
Section 6.06    Tax Treatment of Indemnification Payments ............................................. 10
Section 6.07    Exclusive Remedies .................................................................................. 10

**ARTICLE VII    MISCELLANEOUS** ................................................................................. 10

Section 7.01    Expenses .................................................................................................... 10
Section 7.02    Notices ....................................................................................................... 10
Section 7.03    Headings .................................................................................................... 11
Section 7.04    Severability ............................................................................................... 11
Section 7.05    No Other Representations and Warranties ................................................. 11
Section 7.06    Entire Agreement ...................................................................................... 11
Section 7.07    Successors and Assigns ............................................................................. 11
Section 7.08    No Third-party Beneficiaries ..................................................................... 11
Section 7.09    Amendment and Modification ................................................................... 12
Section 7.10    Interpretation ............................................................................................ 12
Section 7.11    Waiver ....................................................................................................... 12
Section 7.12    Governing Law .......................................................................................... 12
Section 7.13    Submission to Jurisdiction ........................................................................ 12
Section 7.14    Counterparts .............................................................................................. 12

**DISCLOSURE SCHEDULES**

Schedule 1.01(c) – Assumed Contracts
Schedule 1.01(d) – Intellectual Property Assets
Schedule 1.01(k) – Domain Names; Websites
Schedule 1.02 – Excluded Assets
Schedule 1.03 – Unfulfilled Customer Orders/Backorders
Schedule 1.05 – Allocation of Purchase Price
Schedule 3.05(a) – Customers
Schedule 3.05(c) – Suppliers

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000588

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (this "**Agreement**"), dated as of December 21, 2018 (the "**Closing Date**"), is entered into between 3-D Belt Company, L.P., a Texas limited partnership ("**Seller**" or the "**Company**"), and M & F Western Products, Inc., a Texas corporation ("**Buyer**").

### RECITALS

WHEREAS, Seller is engaged in the business of the manufacturing and distribution of traditional western leather accessories for apparel, home and work for sale to retailers throughout the United States and the sale of traditional western leather accessories for apparel, home and work to retailers throughout the United States (collectively, the "**Business**"); and

WHEREAS, Seller wishes to sell and assign to Buyer, and Buyer wishes to purchase and assume from Seller, substantially all of the assets used in connection with the Business other than the Excluded Assets (as defined below) as well as the Assumed Liabilities (as defined below), subject to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
### PURCHASE AND SALE

**Section 1.01  Purchase and Sale of Assets**. Subject to the terms and conditions set forth herein, Seller shall sell, assign, transfer, convey and deliver to Buyer, and Buyer shall purchase from Seller, all of Seller's right, title and interest in, to and under the following assets, properties and rights of Seller, to the extent that such assets, properties and rights exist as of the Closing Date and primarily relate to the Business (collectively, the "**Purchased Assets**"):

(a)     all accounts or notes receivable

Redacted

(b)     all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories of the Business ("**Inventory**");

(c)     any rights the Seller has as of the Closing Date under all contracts set forth on **Section 1.01(c)** of the schedules attached hereto (the "**Disclosure Schedules**" and such contracts set forth therein shall be referred to herein as the "**Assumed Contracts**");

(d)     all (i) trademarks and service marks, including all applications and registrations and the goodwill connected with the use of and symbolized by the foregoing; (ii) copyrights, including all applications and registrations, and works of authorship, whether or not copyrightable; (iii) trade secrets and confidential know-how; (iv) patents and patent applications; (v) websites and internet domain name registrations; and (vi) all other intellectual property and industrial property rights and assets, and all rights, interests and protections that are associated with, similar to, or required for the exercise of, any of the

6539324v6

foregoing that are owned by Seller and exclusively used in connection with the Business, including the registered Intellectual Property set forth on **Section 1.01(d)** of the Disclosure Schedules (the "**Intellectual Property Assets**");

(e)    all Company data in a format acceptable to Buyer regarding all vendor information, inventory detail and accounts receivable data and other data necessary for the transition;

(f)    all filing cabinets containing Company records for the 2018 year including invoices, accounts payable files and customer credit information as well as other necessary Business records;

(g)    all prepaid expenses, credits, advance payments, security, deposits, charges, sums and fees to the extent related to any Purchased Assets ("**Prepaids**");

(h)    all of Seller's rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(i)    all rights to the name "3-D Belt Company, L.P." and all derivations of such name held by the Company;

(j)    all customer lists, sales, records, credit data and other customer information primarily relating to the Business;

(k)    all marketing materials primarily relating to the Business, including the information and content on the Company's website;

(l)    the domain names, websites listed or described in **Schedule 1.01(k)**;

(m)    all rights to the name "Ranahan Western, L.L.C." and all derivations of such name held by the Company as the sole equityholder of Ranahan Western, L.L.C. (the "**Subsidiary**");

(n)    other than the Excluded Assets, all software, files and documents on the laptops or desktops used exclusively in the Business;

(o)    other than the Excluded Assets, copies of all books, records, documents and instruments and all historical files and archives owned by and currently in the possession or under the control of the Company that are exclusively related to the Business and are from the three years preceding Closing ("**Books and Records**"); *provided that* Seller shall be entitled to retain one copy of all Books and Records; and

(p)    all goodwill and going concern value associated with any of the Purchased Assets described in the foregoing clauses.

**Section 1.02  Excluded Assets**. Notwithstanding the foregoing or anything contained herein to the contrary, the Purchased Assets shall not include any of the assets described on **Section 1.02** of the Disclosure Schedules (the "**Excluded Assets**").

**Section 1.03  Assumption of Liabilities.** Subject to the terms and conditions set forth herein, Buyer shall assume and agree to pay, perform and discharge (i) all liabilities and obligations arising on or after the Closing (as defined herein) relating to the Business or the Purchased Assets, (ii) any liability of the Company arising on or after Closing under the Assumed Contracts, (iii) all benefits of and all liability associated with the unfulfilled customer orders and backorders listed on **Section 1.03** of the

2

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000590

Disclosure Schedules, and (iv) all liabilities and obligations for (x) taxes relating to the Business, the Purchased Assets or the Assumed Liabilities for any taxable period after the Closing Date and (y) taxes for which Buyer is liable pursuant to **Section 5.02** (collectively, the "**Assumed Liabilities**"). Other than the Assumed Liabilities, Buyer shall not assume any liabilities or obligations of Seller of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created, including any liabilities or obligations arising out of or relating to Seller's ownership or operation of the Business and the Purchased Assets prior to the Closing Date, and any liabilities or obligations relating to or arising out of the Excluded Assets, and any liabilities or obligations for taxes relating to the Business, the Purchased Assets or the Assumed Liabilities for any taxable period ending on or prior to the Closing Date and any other taxes of Seller (other than taxes allocated to Buyer under **Section 5.02**) for any taxable period. Any liabilities other than the Assumed Liabilities shall be referred to herein as the "**Excluded Liabilities**".

    **Section 1.04  Purchase Price.**

Redacted

    **Section 1.05  Allocation of Purchase Price.**

Redacted

**ARTICLE II**
CLOSING

    **Section 2.01  Closing.** The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place simultaneously with the execution of this Agreement on the Closing Date. The parties hereto need not attend the Closing in person, and the delivery of all documents and funds as described in **Sections 1.04 and 2.02** may be handled by wire transfer and electronic mail or by facsimile transmission. The transactions contemplated by this Agreement shall be considered closed, and possession of the Purchased Assets, the risk of their loss and Buyer's assumption of the Assumed Liabilities shall be deemed to have been passed to Buyer at 4:00 p.m., Central Daylight Savings Time, on the Closing Date.

    **Section 2.02  Closing Deliverables.**

    (a)    At the Closing, Seller shall deliver to Buyer the following:

        (i)    a bill of sale, assignment and assumption agreement in the form of <u>Exhibit A</u> hereto (the "**Assignment and Assumption Agreement**") and duly executed by Seller, effecting the assignment to and assumption by Buyer of the Purchased Assets and the Assumed Liabilities;

        (ii)    assignments in the form of <u>Exhibit B</u> hereto (the "**Intellectual Property Assignments**") and duly executed by Seller, transferring all of Seller's right, title and interest in and to the

3

6539324v86

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000591

trademark registrations and applications and copyright registrations and applications included in the Intellectual Property Assets to Buyer;

(iii)    a funds flow statement outlining adjustments to the Purchase Price made prior to the date hereof for changes in Inventory, Prepaids and accounts receivable included in the Purchased Assets and wiring instructions for the Seller (the "**Closing Statement**");

(iv)    a payoff statement from Texas Capital Bank;

(v)    resolutions of the general partner and the limited partners of Seller, duly adopted and in effect, which authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby; and

(vi)    a Noncompetition Agreement in the form of Exhibit C hereto (the "**Majority Partner Non-Compete**") and duly executed by Steve Dees.

(b)    At the Closing, Buyer shall deliver to Seller the following:

(i)    the Purchase Price;

(ii)    the Assignment and Assumption Agreement duly executed by Buyer;

(iii)    the Intellectual Property Assignments duly executed by Buyer;

(iv)    the resolutions of the board of directors of Buyer, duly adopted and in effect, which authorize the execution, delivery and performance of this Agreement and the transactions contemplated hereby; and

(v)    the Majority Partner Non-Compete duly executed by Buyer.

## ARTICLE III
### REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Buyer that the statements contained in this **ARTICLE III** are true and correct as of the date hereof.

**Section 3.01  Organization and Authority of Seller; Enforceability.** Seller is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Texas. Seller has full limited partnership power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby.  The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Seller. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Seller, and (assuming due authorization, execution and delivery by Buyer) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms..

**Section 3.02  No Conflicts; Consents.** The execution, delivery and performance by Seller of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of formation,

4

6339324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000592

partnership agreement or other organizational documents of Seller; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Seller or the Purchased Assets; or (c) other than with respect to Georgia Boot (as contemplated by **Section 5.11**), require the consent, notice or other action by any person under, conflict with, result in a violation or breach of, constitute a default under or result in the acceleration of any Assumed Contract. No consent, approval, declaration or filing with, or notice to, any governmental authority is required by or with respect to Seller in connection with the execution and delivery of this Agreement.

**Section 3.03  Title to Purchased Assets.** Seller owns and has good title to the Purchased Assets, free and clear of all mortgages, pledges, liens, charges and other encumbrances, other than liens in favor of Texas Capital Bank which will be released at or promptly after Closing in connection with the payoff of the debt owed to Texas Capital Bank. Seller warrants that it has good title to all Purchased Assets and Seller will be responsible for any debt or lien on the Purchased Assets that was incurred prior to the Closing Date.

**Section 3.04  Legal Proceedings.** There are no actions pending or, to Seller's knowledge, threatened against or by Seller that challenge or seek to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

**Section 3.05  Customers and Suppliers.**

(a)     Schedule 3.05(a) lists, with respect to the year ended December 31, 2018 the 10 largest customers (by dollar volume) of the Business during such period (collectively, the "**Customers**").

(b)     The Company has not received any notice from any Customer that such Customer has terminated or ceased its business with the Company or plans to cease business after Closing.

(c)     Schedule 3.05 (c) lists with respect to the year ended December 31, 2018 the 10 largest suppliers (by dollar volume) of the Business during such period (collectively, the "**Suppliers**").

(d)     The Company has not received any notice from any Supplier that such Supplier has terminated or ceased its business with the Company or plans to do so after Closing.

**Section 3.06  Intellectual Property.**

(a)     The Intellectual Property Assets constitute all of the registered and unregistered intellectual property owned by the Company. Seller owns or has the right to use all Intellectual Property Assets. There are no amounts or royalties due regarding the continued use of any trademark or design, with the exception of the royalty agreement for the use of the name Georgia Boot Company and Rocky Boot Company.

(b)     Trade Name.  Seller represents that the trademark Alamo Hat (the "Trademark") and Alamo Hat Company has been in the United States market since Spring, 1992.  Seller purchased the rights to the Trademark from Trinidad Traylor, DJT Brothers, LLC, D/B/A Alamo Hat Company and received a Trademark Assignment Agreement dated November 24, 2015 and signed by Trinidad Traylor.     Seller has used the Trademark since 2015 and has not received any objection to such use or other notice of infringement.  To Seller's knowledge, Business has the right to use the trademark in the trade areas in which it currently operates.  Seller assigns all legal rights and benefits to the Trademark (and all derivations of such name held by Seller)  to Buyer.

6539324v6

5

M&F000593

(c)    To Seller's knowledge, the Company does not infringe, misappropriate, or violate the intellectual property of any person and there is no dispute or threatened litigation relating to any intellectual property.

## ARTICLE IV
### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer represents and warrants to Seller that the statements contained in this **ARTICLE IV** are true and correct as of the date hereof.

**Section 4.01  Organization and Authority of Buyer; Enforceability.** Buyer is a corporation duly organized, validly existing and in good standing under the laws of the state of Texas. Buyer has full corporate power and authority to enter into this Agreement and the documents to be delivered hereunder, to carry out its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder and the consummation of the transactions contemplated hereby have been duly authorized by all requisite corporate action on the part of Buyer. This Agreement and the documents to be delivered hereunder have been duly executed and delivered by Buyer, and (assuming due authorization, execution and delivery by Seller) this Agreement and the documents to be delivered hereunder constitute legal, valid and binding obligations of Buyer enforceable against Buyer in accordance with their respective terms.

**Section 4.02  No Conflicts; Consents.** The execution, delivery and performance by Buyer of this Agreement and the documents to be delivered hereunder, and the consummation of the transactions contemplated hereby, do not and will not: (a) violate or conflict with the certificate of incorporation, by-laws or other organizational documents of Buyer; (b) violate or conflict with any judgment, order, decree, statute, law, ordinance, rule or regulation applicable to Buyer or (c) conflict with, result in a breach of, constitute a default under, result in the acceleration of, create in any party the right to  accelerate, terminate, modify, or cancel, or require any notice under any agreement, contract, license, instrument, or other arrangement to which Buyer is a party or by which Buyer is bound or to which Buyer is subject. No consent, approval, waiver or authorization is required to be obtained by Buyer from any person or entity (including any governmental authority) in connection with the execution, delivery and performance by Buyer of this Agreement and the consummation of the transactions contemplated hereby.

**Section 4.03  Legal Proceedings.** There is no claim, action, suit, proceeding or governmental investigation of any nature pending or, to Buyer's knowledge, threatened against or by Buyer that challenges or seeks to prevent, enjoin or otherwise delay the transactions contemplated by this Agreement.

**Section 4.04  Sufficiency of Funds.** Buyer has sufficient cash on hand or other sources of immediately available funds to enable it to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement.

**Section 4.05  Solvency.** Buyer is, after giving effect to the transactions contemplated by this Agreement, solvent as determined under all applicable laws.

6

8539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000594

## ARTICLE V
### COVENANTS

**Section 5.01  Public Announcements; Confidentiality.**  Buyer agrees it will not make any announcements, including to the employees of the Company, regarding this Agreement or the transactions contemplated hereby prior to 9 a.m. CST on December 26, 2018.

**Section 5.02  Transfer Taxes.**  All transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees incurred in connection with this Agreement shall be the responsibility of the Buyer.

**Section 5.03  Employees.**  The Company intends to continue to employ all employees of the Company as of the Closing Date for the period commencing with the Closing Date and ending for at least two weeks after Closing and the Company shall instruct all such employees that they are required to be available during such time period to assist Buyer with transition matters relating to the transactions contemplated by this Agreement that are reasonably related to the positions held by and the work performed by such employees prior to the Closing Date.  Buyer is not responsible for any costs or expenses of the employees or any employment termination costs.  Buyer will only be responsible for employee costs should Buyer expressly hire an employee at the end of the two week period after Closing.

**Section 5.04  Lease.**  The Company shall provide Buyer with an option to rent the premises located at 1001 Huser Blvd., Schulenburg, Texas 78956 from the Company or an affiliate of the Company for a period of up to six (6) months from the Closing Date. For the period commencing on the Closing Date and ending on the one-month anniversary of the Closing Date, the Buyer shall not have to pay any rent to utilize such option. Seller agrees to keep utilities and phone operational without cost for the one month period that is rent free, including keeping all current office furniture, equipment as they currently are for the one month period.  From and after the one-month anniversary of the Closing Date, Buyer shall pay the Company $11,225 per month in advance as rent for each month it chooses to utilize its option to lease such premises.

**Section 5.05  Change of Name.**  No later than forty-five days after the Closing, the Company will change its legal name and the legal name of the Subsidiary and abandon any use of any assumed name or trade name incorporating "**3-D Belt**" or "**Ranahan Western**" and thereafter will never use such names.

**Section 5.06  Domain Names.**  The Company will (i) transfer its domain names and websites to Buyer and (ii) shut down all email addresses with the name "3-D" in them no later than six months after the Closing Date.  During the period prior to the transfer of such domain names and websites and the shutting down of such email addresses, the Company will use commercially reasonable efforts to ensure that any visitors to the Company's domain names that are related to the Business are redirected to the Buyer's domain name and that all emails related to the Business received on any of the Company's email addresses are forwarded or otherwise redirected to Buyer's email addresses.

**Section 5.07  Retention of Records.**  Buyer shall preserve all Books and Records in accordance with its respective document retention policies, *provided*, that such policies require the retention of such records for at least five (5) years following the Closing Date. After the Closing Date, where there is a legitimate business purpose, Buyer shall provide the Company or any of its partners, officers or affiliates with access, upon prior reasonable written request specifying the purpose therefore, during regular business hours, to the Books and Records, but, in each case, only to the extent relating to the Business, the Purchased Assets or Assumed Liabilities prior to the Closing, and the Company or any of its partners, officers or affiliates shall have the right to make copies of such books and records at their sole cost;

6539324v6

7

M&F000595

provided, however, that the foregoing right of access shall not be exercisable in such a manner as to interfere unreasonably with the normal operations and business of Buyer.

**Section 5.08  Certain Tax Matters.**  There will be no pro-rate of the taxes due with respect to the Purchased Assets for the period ending December 31, 2018.  Seller acknowledges that Buyer may have remaining inventory at the location as of January 1, 2019.  Seller agrees to pay the related property taxes for all remaining inventory at the location as of January 1, 2019.  Seller agrees to pay the related property taxes for all assets for the Property Tax Rendition that the Seller will file for all assets located 1001 Huser Blvd. in Schulenburg, TX as of January 1, 2019.

**Section 5.09  Further Assurances.**  Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder.

**Section 5.10  Insurance.**  For the twelve-month period following the Closing Date, the Company will keep in place an insurance policy providing materially the same insurance coverage the Company had immediately prior to Closing.

**Section 5.11  Georgia Boot Consent.**
Redacted

## ARTICLE VI
### INDEMNIFICATION

**Section 6.01  Survival.**  Subject to the limitations and other provisions of this Agreement, the representations and warranties contained herein shall survive the Closing and shall remain in full force and effect until the date that is one year from the Closing Date.

**Section 6.02  Indemnification By Seller.**  Subject to the other terms and conditions of this **ARTICLE VI**, Seller shall defend, indemnify and hold harmless Buyer, its affiliates and their respective stockholders, directors, officers and employees from and against all claims, judgments, damages, liabilities, settlements, losses, costs and expenses, including reasonable attorneys' fees and disbursements (collectively, "**Losses**"), arising from or relating to:

(a)    any inaccuracy in or breach of any of the representations or warranties of Seller contained in this Agreement;

(b)    any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Seller pursuant to this Agreement; or

(c)    any Excluded Asset or Excluded Liability.

8

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000596

**Section 6.03  Indemnification By Buyer.**  Subject to the other terms and conditions of this **ARTICLE VI**, Buyer shall defend, indemnify and hold harmless Seller, its affiliates and their respective stockholders, directors, officers and employees from and against all Losses arising from or relating to:

(a)  any inaccuracy in or breach of any of the representations or warranties of Buyer contained in this Agreement;

(b)  any breach or non-fulfillment of any covenant, agreement or obligation to be performed by Buyer pursuant to this Agreement; or

(c)  any Assumed Liability.

**Section 6.04  Certain Limitations.**  The party making a claim under this **Article VI** is referred to as the "**Indemnified Party**", and the party against whom such claims are asserted under this **Article VI** is referred to as the "**Indemnifying Party**". The indemnification provided for in **Section 6.02** and **Section 6.03** shall be subject to the following limitations:

(a)  The aggregate amount of all Losses for which an Indemnifying Party shall be liable pursuant to **Section 6.02** or **Section 6.03**, as the case may be, shall not exceed the Purchase Price (the "**Cap**"). Notwithstanding the foregoing, the Cap shall not be applicable to any Losses arising from fraud.

(b)  Payments by an Indemnifying Party pursuant to **Section 6.02** or **Section 6.03** in respect of any Loss shall be limited to the amount of any liability or damage that remains after deducting therefrom any insurance proceeds and any indemnity, contribution or other similar payment received or reasonably expected to be received by the Indemnified Party in respect of any such claim. The Indemnified Party shall use its commercially reasonable efforts to recover under insurance policies or indemnity, contribution or other similar agreements for any Losses prior to seeking indemnification under this Agreement.

(c)  Each Indemnified Party shall take, and cause its affiliates to take, all reasonable steps to mitigate any Loss upon becoming aware of any event or circumstance that would be reasonably expected to, or does, give rise thereto, including incurring costs only to the minimum extent necessary to remedy the breach that gives rise to such Loss.

**Section 6.05  Indemnification Procedures.**  Whenever any claim shall arise for indemnification hereunder, the Indemnified Party shall promptly provide written notice of such claim to the Indemnifying Party. In connection with any claim giving rise to indemnity hereunder resulting from or arising out of any action by a person or entity who is not a party to this Agreement, the Indemnifying Party, at its sole cost and expense and upon written notice to the Indemnified Party, may assume the defense of any such action with counsel reasonably satisfactory to the Indemnified Party. The Indemnified Party shall be entitled to participate in the defense of any such Action, with its counsel and at its own cost and expense. If the Indemnifying Party does not assume the defense of any such Action, the Indemnified Party may, but shall not be obligated to, defend against such Action in such manner as it may deem appropriate, including, but not limited to, settling such Action, after giving notice of it to the Indemnifying Party, on such terms as the Indemnified Party may deem appropriate and no action taken by the Indemnified Party in accordance with such defense and settlement shall relieve the Indemnifying Party of its indemnification obligations herein provided with respect to any damages resulting therefrom. The Indemnifying Party shall not settle any Action without the Indemnified Party's prior written consent (which consent shall not be unreasonably withheld or delayed). If the Indemnified Party has assumed the defense pursuant to this Section, it shall not agree to any settlement without the written consent of the Indemnifying Party (which consent shall not be unreasonably withheld or delayed).

9

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000597

**Section 6.06  Tax Treatment of Indemnification Payments.** All indemnification payments made under this Agreement shall be treated by the parties as an adjustment to the Purchase Price for tax purposes, unless otherwise required by applicable law.

**Section 6.07  Exclusive Remedies.** The parties acknowledge and agree that their sole and exclusive remedy with respect to any and all claims (other than claims arising from fraud on the part of a party hereto in connection with the transactions contemplated by this Agreement) for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement, shall be pursuant to the indemnification provisions set forth in this **Article VI**. In furtherance of the foregoing, each party hereby waives, to the fullest extent permitted under applicable law, any and all rights, claims and causes of action for any breach of any representation, warranty, covenant, agreement or obligation set forth herein or otherwise relating to the subject matter of this Agreement it may have against the other parties hereto and their affiliates and each of their respective representatives arising under or based upon any applicable law, except pursuant to the indemnification provisions set forth in this **Article VI**. Nothing in this **Section 6.07** shall limit any person's right to seek and obtain any equitable relief to which any person shall be entitled pursuant to the Majority Partner Non-Compete or to seek any remedy on account of any fraud by any party hereto.

## ARTICLE VII
### MISCELLANEOUS

**Section 7.01  Expenses.** Except as otherwise expressly provided herein (including **Section 5.02** hereof), all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses. The parties represent to each other that no broker, finder or other agent is entitled to any fee or other compensation related to this Agreement or the transactions herein contemplated.

**Section 7.02  Notices.** All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by facsimile or e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this **Section 7.02**):

If to Seller:               Steve Dees
                            1003 Huser Blvd.
                            Schulenburg, TX 78956
                            Redacted

If to Buyer:                M & F Western Products, Inc.
                            Paul Eddins
                            PO Box 287
                            Sulphur Springs, TX 75483

10

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000598

E-mail:        Redacted

**Section 7.03  Headings.** The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 7.04  Severability.** If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**Section 7.05  No Other Representations and Warranties. THE PARTIES ACKNOWLEDGE AND AGREE, THAT EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES CONTAINED IN ARTICLE III (INCLUDING THE RELATED PORTIONS OF THE DISCLOSURE SCHEDULES), NEITHER SELLER NOR ANY OTHER PERSON HAS MADE OR MAKES, AND BUYER IS NOT RELYING ON, ANY OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY, EITHER WRITTEN OR ORAL, ON BEHALF OF SELLER, INCLUDING ANY REPRESENTATION OR WARRANTY AS TO THE ACCURACY OR COMPLETENESS OF ANY INFORMATION REGARDING THE BUSINESS AND THE PURCHASED ASSETS FURNISHED OR MADE AVAILABLE TO BUYER AND ITS REPRESENTATIVES IN ANY FORM IN EXPECTATION OF THE TRANSACTIONS CONTEMPLATED HEREBY, OR AS TO THE FUTURE REVENUE, PROFITABILITY OR SUCCESS OF THE BUSINESS, OR ANY REPRESENTATION OR WARRANTY ARISING FROM STATUTE OR OTHERWISE IN LAW, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATION OR WARRANTY AS TO: (i) THE QUALITY OR VALUE OF THE PURCHASED ASSETS; AND (ii) THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF ANY OF THE PURCHASED ASSETS, IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT BUYER SHALL BE DEEMED TO BE OBTAINING THE PURCHASED ASSETS IN THEIR PRESENT STATUS, CONDITION, AND STATE OF REPAIR, "AS IS" AND "WHERE IS," WITH ALL FAULTS OR DEFECTS (WHETHER KNOWN OR UNKNOWN, LATENT, DISCOVERABLE OR UNDISCOVERABLE), AND THAT BUYER HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS OF THE PURCHASED ASSETS AS BUYER DEEMS APPROPRIATE.**

**Section 7.06  Entire Agreement.** This Agreement, and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous representations, warranties, understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

**Section 7.07  Successors and Assigns.** This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns. Neither party may assign its rights or obligations hereunder without the prior written consent of the other party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

**Section 7.08  No Third-party Beneficiaries.** Except as provided in **ARTICLE VI**, this Agreement is for the sole benefit of the parties hereto and their respective successors and permitted

11

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000599

assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 7.09  Amendment and Modification.** This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

**Section 7.10  Interpretation.** For purposes of this Agreement, (a) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Agreement as a whole. Unless the context otherwise requires, references herein: (x) to Articles, Sections, Disclosure Schedules and Exhibits mean the Articles and Sections of, and Disclosure Schedules and Exhibits attached to, this Agreement; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The Disclosure Schedules and Exhibits referred to herein shall be construed with, and as an integral part of, this Agreement to the same extent as if they were set forth verbatim herein.

**Section 7.11  Waiver.** No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

**Section 7.12  Governing Law.** This Agreement and any claim, controversy or dispute and all other matters arising out of or relating to this Agreement or any of the other documents contemplated hereby or the transactions contemplated thereby, or the rights, duties or relationship of the parties hereto, shall be governed by and construed in accordance with the internal laws of the State of Texas without giving effect to any choice or conflict of law provision or rule (whether of the State of Texas or any other jurisdiction).

**Section 7.13  Submission to Jurisdiction.** Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby shall be exclusively brought in the state courts of the State of Texas.

**Section 7.14  Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

12

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000600

IN WITNESS WHEREOF, the parties hereto have caused this Asset Purchase Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**3-D Belt Company, L.P.**

By: 3-D Belt Company Management, L.L.C.,
    its general partner

By _____
Name: Steve Dees
Title: President

**M & F Western Products, Inc.**

By _____
Name: Paul Eddins
Title: CFO/Treasurer

[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000601

## Schedule 1.01(c)

Assumed Contracts

No assumed contracts.

0539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000602

Schedule 1.01(d)

Intellectual Property Assets

| Mark | Design | Application No. | File Date | Registration No. | Registration Date |
|------|--------|-----------------|-----------|------------------|-------------------|
| 3D BELT COMPANY | | 87/626,551 | 2017-09-28 | | |
| OLD NO. 4 | | 87/626,536 | 2017-09-28 | | |
| RANAHAN WESTERN | | 87/455,137 | 2017-05-18 | | |
| RANAHAN WESTERN | | 87/455,129 | 2017-05-18 | | |
| RANAHAN WESTERN | | 87/455,112 | 2017-05-18 | | |
| ANGEL RANCH | | 86/733,055 | 2015-08-21 | 5,074,661 | 2016-11-01 |
| ANGEL RANCH | | 85/456,909 | 2011-10-26 | 4,161,253 | 2012-06-19 |
| ANGEL RANCH | | 77/979,662 | 2009-03-20 | 3,815,805 | 2010-07-06 |
| SILVER STRIKE | | 76/650,313 | 2005-11-15 | 3,188,567 | 2006-12-26 |
| DDD and Design |  | 76/565,747 | 2003-12-17 | 3,025,197 | 2005-12-13 |
| BADGER and Design |  | 76/650,341 | 2005-11-15 | 3,608,027 | 2009-04-21 |

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000603

| SENTRY and Design | SENTRI  | 74/704,085 | 1995-07-21 | 2,151,616 | 1998-04-21 |
|---|---|---|---|---|---|
| Copyright Title | Type of Work | Registration No. | Registration Date | Date of Creation | Date of Publication |
| BIXBY BUCKLE SET | Visual Material/Jewelry | VA0001290152 | 2004-11-24 | 2004 | 2004-11-10 |
| OAKDALE ROPE BUCKLE SET | Visual Material/Jewelry | VA0001290153 | 2004-11-24 | 2004 | 2004-11-10 |
| OAKDALE ROPE OVAL CONCHO | Visual Material/Jewelry | VA0001290148 | 2004-11-24 | 2004 | 2004-11-10 |
| OAKDALE ROPE ROUND CONCHO | Visual Material/Jewelry | VA0001290149 | 2004-11-24 | 2004 | 2004-11-10 |
| OKLAHOMA CONCHO | Visual Material/Jewelry | VA0001290150 | 2004-11-24 | 2004 | 2004-11-10 |
| VENICE CONCHO | Visual Material/Jewelry | VA0001290151 | 2004-11-24 | 2004 | 2004-11-10 |
| ROPE LEAF BUCKLE | Visual Material | VA0001382843 | 2006-10-02 | 2006 | 2006-07-10 |
| WHEATLEAF BUCKLE SET | Visual Material | VA0001382842 | 2006-10-02 | 2006 | 2006-05-10 |

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000604

**Schedule 1.01(k)**

Domain Names; Websites

Redacted

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000605

**Schedule 1.02**

Excluded Assets

For purposes of the Agreement, the term "Excluded Assets" shall mean the following items (each individually, and in the aggregate):

1.    The mobile phone numbers for all employees and partners of the Company

2.    The phone system used by the Company

3.    The aggregate amount of cash on hand and on deposit in U.S. domiciled accounts with any bank or other depository institution, cash equivalents and marketable securities of the Company

4.    All bank or other depository accounts and brokerage accounts owned by the Company, including the ones on the attached spreadsheet

5.    All credit card accounts and credit cards in the name of the Company and/or the partners of the Company

6.    All securities held by the Company at any financial institution or otherwise

7.    All contracts other than Assigned Contracts

8.    All books and records of the Company other than Books and Records

9.    All personnel and other records that the Company is prohibited from disclosing or transferring to third persons under applicable law and/or is required by applicable law to retain

10.   All insurance policies of the Company and all rights to claims and proceeds thereunder

11.   All tax assets (including any refunds and prepayments thereof), and any tax returns, work-papers, and other records related thereto

12.   All attorney-client privileges of the Company and all rights to claim such privileges; and all evidentiary and documentary privileges of Sellers and rights to claim such privileges to the extent relating to an Excluded Asset or an Excluded Liability or arising under or with respect to this Agreement or the other documents contemplated hereby or the transactions contemplated by this Agreement or the other documents contemplated hereby

13.   All rights to any action, suit or claim of any nature available to or being pursued by the Company, whether arising by way of counterclaim or otherwise, and any rights of setoff or defenses to any action, suit or claim of any nature, in each case, to the extent relating to an Excluded Asset or Excluded Liability, whether direct or indirect, choate or inchoate, known or unknown, absolute, contingent or non-contingent, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, and whether in contract, tort, strict liability or otherwise

14.   All rights under warranties, indemnities, representations, guarantees, and other similar rights against or given by third parties with respect to any Excluded Assets, and products sold or services provided to the Company to the extent affecting any Excluded Assets

15.   All assets, properties and rights held for use or used by the Company or any of its partners in connection with any activities other than the Business

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

16. One electronic and one paper copy of the Books and Records, including one electronic and one paper copy thereof prepared after completion of the final accounting for the period ending with the Closing, with the cost of any such paper copies to be the Company's expense

17. All personal data, communication files and other information of the partners of the Company whether in electronic or hard copy format

18. All of the assets on the attached spreadsheet

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000607

**Schedule 1.03**

Unfulfilled Customer Orders/Backorders

Open Sales Orders-14 page report attached dated 12/21/18 2:36pm
Backorders- 44 page report dated 12/21/18 2:36pm attached.

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000608

**Schedule 1.05**

Allocation of Purchase Price

Redacted

6539324v6

CONFIDENTIAL ATTORNEY EYES ONLY INFORMATION
SUBJECT TO PROTECTIVE ORDER

M&F000609

Schedule 3.05(a)

Customers

Redacted

6539324v6

M&F000610

**Schedule 3.05(c)**

Suppliers

Top Ten Suppliers

Redacted

6539324v6

# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

ROBERT BERG,                                §
          **Plaintiff**                    §
                                          §
                                          §
                                          §
**vs.**                                     §    Case No. 6:19-cv-418-JDK
                                          §
                                          §
M&F WESTERN PRODUCTS, INC.,                 §
          **Defendant.**

## DECLARATION OF CHAD GIST

I, Chad Gist, declare as follows:

1. I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth in this Declaration. I submit this Declaration in Support of M&F Western's Motion for Summary Judgment and for the purpose of authenticating documents that were provided by Gist Silversmiths, Inc. to M&F Western Products, Inc. during this litigation.

2. I am currently employed by Gist Silversmiths, Inc. in Placerville, California. Gist Silversmiths was founded in 1967, by my father, Gary Gist, and is widely recognized as one of the top trophy buckle companies in the United States. We design and manufacture our buckles in the United States. At the time the company was incorporated, it was called Gist, Inc. It also uses the trade Gist Silversmiths. Any references to Gist Silversmiths, herein encompass references to Gist, Inc. as well.

3. I started engraving when I was 11 years old (31 years ago), and first started working at Gist Silversmiths shortly thereafter as an engraver. In the year 2000 I became the Art

PAGE 1

148932037.1



Director for the company and am still working in that position. I am responsible for overseeing the work of our designers as well as designing buckles and jewelry for our major clients. Through my work as an engraver and as the Art Director at Gist Silversmiths, I am very familiar with and knowledgeable about the Western buckle and jewelry industry ("Industry"). I have personally designed and engraved thousands of buckles during my career and have overseen the work of others creating such designs from more than 20 years.

4. In addition, in light of my work for Gist Silversmiths, I am knowledgeable and familiar with the corporate records of Gist Silversmiths and am familiar with its products and catalogs. Gist Silversmiths maintains a copy of historic catalogs and images showing products that it has created, marketed and sold relating to its buckle designs.

5. I was contacted by Paul Eddins of M&F Western Products, Inc., who explained that this lawsuit was pending against M&F Western Products for alleged copyright infringement. In particular, I understand that Mr. Berg claims he owns the copyright in the buckle designs below:



**Plaintiff's Asserted Registration**

**VA 1-159-548**

PAGE 2

148932037.1

*CG*



6.  Use of tapered beads along the edge (or in other locations) on a buckle is very common in the Industry and has been for decades. Gist Silversmiths has used tapered beads in its buckle designs dating back to at least as early as 1985.

7.  I understand that the Court has already decided the belt buckle claim in favor of M&F Western, but that there are also claims pending relating to tapered beads on the end of a cross as shown below:

| Plaintiff's Asserted Registration VA 1-091-617 | Plaintiff's Asserted Registration VA 1-229-288 |
|---|---|
|  |  |

8.  In my more than 30 years in the Industry, I am personally familiar with many designs on a variety of different items, from buckles to various jewelry items, that include a series of tapered beads as a design element. Whether there are three beads used, or five, or seven, tapered beads (whether on a buckle, a cross, an earring or a bolo tie) are an Industry

**PAGE 3**

148932037.1

CG

standard design element and have been for many decades. As discussed below, Gist itself has used different numbers of tapered beads in different designs throughout the years. Other stock or standard Industry design elements include flowers (as well as flowers with gems in the center), scrollwork, black enamel backgrounds, roping and use of multiple colors of metal in one design (e.g., silver and gold, or black and silver and gold, etc.).

9.   Mr. Eddins requested that I provide him with examples of Gist Silversmiths's buckles and other designs incorporating a tapered-bead design.

10. I searched for historic catalogs and photographs showing Gist designs incorporating a tapered-bead design and provided to Mr. Eddins the documents attached hereto as **Exhibit A**, which I understand were labeled and produced by M&F Western as M&F000734-752. In particular, I am personally familiar with the designs depicted in these documents and, if called to testify, can and will attest that these are authentic Gist Silversmiths designs that were commissioned as trophy buckles or offered for sale to the general public. The documents are as follows:

   a) **Exhibit A1**: M&F000734-0735 is a true and correct copy of an email exchange I had with Mr. Eddins on June 5, 2020 in which I provided him with an image showing a vintage Gist Champion Team Roper Rodeo Trophy Buckle from 1985. The photograph in the email reflects a true and correct copy of a screenscreen shot I obtained from <worthpoint.com> depicting the 1985 Gist Buckle, which incorporates tapered-beads along the edges of the buckle in four locations, as shown below. I am personally familiar with this buckle style and it was a popular style of Gist Silversmiths in the 1980s. This buckle also incorporates other standard design elements used in the

**PAGE 4**

CG

industry, such as scrollwork, a flower, roping (i.e., around the edge of the buckle), and multiple colors of metal.

VINTAGE GIST
CHAMPION TEAM
ROPER RODEO TROPHY
BUCKLE



b) **Exhibit A2**: M&F00736 is a true and correct copy of a screenshot showing images of various Gist Buckle designs, most of which incorporate tapered-beads along the edges of the buckles.

c) **Exhibit A3**: M&F000737 is a true and correct copy of a photograph showing a Gist Silversmiths design from the 1996 World Show, ACHA Champion Rider incorporating a series of three tapered beads in four locations on the buckle's edge. This buckle also incorporates scrollwork, roping, flowers (with a central gem), and two colors of metal (silver and gold).

d) **Exhibit A4**: M&F000738 is a true and correct copy of a photograph showing a Gist Silversmiths design from the 1994 California Open ACTRA (State Champion) incorporating a series of five tapered beads in the four compass points on the buckle's edge. This buckle also incorporates scrollwork, flowers (with a central gem), and two colors of metal (silver and gold) and a black background around the outer edge.

PAGE 5

CG

e) **Exhibit A5**: M&F000739 is a true and correct copy of two photographs showing Gist Silversmiths designs. The top image in the photograph shows a 1996 buckle with beads around the edge, as well as scrollwork, flowers, and two colors of metal (silver and gold) and a black background around the outer edge. The bottom image in the photograph shows a 1996 design from the 100th Annual Cheyenne Frontier days incorporating a series of three tapered beads in four locations on the buckle's edge. This buckle also incorporates scrollwork, flowers (with a central gem) and additional flowers with no gems, and two colors of metal (silver and gold), and roping along the edges.

f) **Exhibit A6**: M&F000740 is a true and correct copy of a photograph showing a Gist Silversmiths design from the 1996 Cheyenne Frontier Days showing the use of a series of three tapered-beads on the buckle in two locations as well as on the belt loop in two locations. This buckle also incorporates flowers with a central gem and multiple colors of metal (silver and gold).

g) **Exhibit A7**: M&F000741 is a true and correct copy of a photograph showing a Gist Silversmiths design from 1994 (P.F. Truly Cool Yearling Futurity Champion) incorporating a series of three tapered-beads in four locations on the buckle's edge. This buckle also incorporates scrollwork, a flower with a central gem, other flowers without gems in the center, and multiple colors of metal (silver and gold).

h) **Exhibit A8**: M&F000742 is a true and correct copy of a photograph showing a Gist Silversmiths design from 1999 (Stanley Cup Champions Dallas Stars) incorporating a series of five tapered beads in four locations on the buckle's edge. This buckle also incorporates flowers and scrollwork.

**PAGE 6**

i) **Exhibit A9**: M&F000743 is a true and correct copy of a photograph showing the front cover of a 1987 Gist Silversmiths catalog depicting a buckle design in the upper right-hand corner from 1986 (Lazy E Arena - Champion Timed Event of the World) incorporating a series of eleven tapered beads along the time and bottom of the buckle's edge.

j) **Exhibit A10**: M&F000744 is a true and correct copy of a photograph showing a Gist Silversmiths design from 1993 (Gold Country Rodeo - All Around Champion Awarded by Gist) incorporating a series of five tapered beads at the four compass points of the buckle's edge.

k) **Exhibit A11**: M&F000745 is a true and correct copy of a photograph showing a Gist Silversmiths design from 1998 (Houston Livestock Show & Rodeo) incorporating a series of five tapered-beads at the four compass points of the buckle's edge. This buckle also incorporates a flower and scrollwork as well as multiple colors of metal.

l) **Exhibit A12**: M&F000746 is a true and correct copy of a photograph showing a Gist Silversmiths design from 1998 (All Around Champion Rodeo Houston Livestock Show & Rodeo) incorporating a series of five tapered-beads at the four compass points of the buckle's edge. This buckle also incorporates flowers with a central gem, scrollwork, and multiple colors of metal.

m) **Exhibit A13**: M&F000747 is a true and correct copy of a photograph showing a Gist Silversmiths design from 1996 (Lazy E Arena Champion Timed Event of the World) incorporating a series of thirteen tapered beads along the top and bottom of the buckle's edge.

**PAGE 7**

148932037.1

CG

n) **Exhibit A14**: M&F000748 is a true and correct copy of a photograph showing a Gist Silversmiths design from 1997 (ID Reserve Champion Sharen Camarillo - Look for the Star in You!) incorporating a series of five tapered beads at the four compass points of the buckle's edge. This buckle also incorporates flowers with central gems, scrollwork, and multiple colors of metal.

o) **Exhibit A15**: M&F000749-752 is a true and correct copy of the Gist Silversmiths Custom Buckles catalog from 1998 showing a variety of Gist Silversmiths designs incorporating a series of tapered-beads along the buckle edges. Other industry standard design elements are also included in these buckles, such as flowers, scrollwork and multiple colors of metal.

11. The Gist designs shown in **Exhibit A** are a non-exhaustive sample of the Gist Silversmiths designs that incorporated tapered-beads as a design element throughout the past four decades. Use of tapered-beads in western buckle design is ubiquitous. I am personally familiar with tapered beads used on a variety of western industry products in addition to buckles, including jewelry, dating back at least as early as the 1990s.

12. In addition, as seen in the Gist designs discussed above, other design elements are used throughout our designs that are standard in the Industry, including scrollwork, flowers (with and without a central gem), roping, and more than one color of metal used in the same design.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Signed on this 17th day of August 2020, at Placerville, California.

By: _____

Chad Gist

PAGE 8

# EXHIBIT A

# EXHIBIT A1

From: Chad Gist <chad@gistsilversmiths.com>
Sent: Friday, June 5, 2020 11:53 AM
To: Paul Eddins <paule@mfwestern.com>
Subject: Re: pictures

Paul, I also remembered this buckle I saw online that pre-dates Bob's business with a 1985 date. This was a popular style of ours in the 80s.  https://www.worthpoint.com/worthopedia/vintage-gist-champion-team-roper-rodeo-trophy



# VINTAGE GIST CHAMPION TEAM ROPER RODEO TROPHY BUCKLE



 

## PRICING & HISTORY



Sent from my iPhone

On Jun 5, 2020, at 7:56 AM, Paul Eddins <paule@mfwestern.com> wrote:

Chad, thanks so much.

From: Chad Gist <chad@gistsilversmiths.com>
Sent: Friday, June 5, 2020 9:40 AM
To: Paul Eddins <paule@mfwestern.com>
Subject: Re: pictures

Good morning Paul, congrats on the nuptials today! Please review images in the attached dropbox folder, along with a PDF of scans from a couple of our catalogs. Again, the key image is the one of the 1986 buckle on the cover of the 1987 catalog, that was long before Bob even came to the US! All of these pre-date the 2000s copyright, so this should hopefully put that issue to rest. I can't find anything on the crosses at this time.

https://www.dropbox.com/sh/sbe6mckeadcmvru/AAAX6ar-GRZOVbsqhQJRmmOeOa?dl=0

On Jun 4, 2020, at 8:11 AM, Paul Eddins <paule@mfwestern.com> wrote:

Chad,

Thank you for the help.  My lawyer is trying to do another disclosure.   It would help if I could get the pictures of old buckles/jewelry by this Friday.

Please call with any questions at 903 348 2716.

Hope you have a wonderful weekend.   I am getting married tomorrow.

Thanks again.
Paul

M&F000734

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

This email has been scanned for spam and viruses by Proofpoint Essentials. Click here to report this email as spam.

M&F000735

# EXHIBIT A2

6/8/2020                                      Tapered Bead Gist Buckles - Dropbox

                                                                     **Download** ▾   

## Tapered Bead Gist Buckles

Sorted by name                                                                                              ☰



ACHA_WS1996.jpg


ACTRAStateChamp1994.jpg



CFD_1996_002.tif


CFD_1996_003.tif


Congress1994PFTruly.jpg


DallasStars1999004.jpg


Gist Catalog Images.pdf


GoldCountryRodeo_199... C4c.jpg


HLSR_1998Champion.jpg


HLSR_1998GoldBkl.jpg


LazyEArena_1996Champ.jpg


SharonCamarillo1997IDRC.jpg

M&F000736

# EXHIBIT A3



M&F000737

# EXHIBIT A4



M&F000738

# EXHIBIT A5





M&F000739

# EXHIBIT A6



M&F000740

# EXHIBIT A7



M&F000741

# EXHIBIT A8



M&F000742

# EXHIBIT A9



# Gist inc.

**Official Sponsor of:**
NFSR
PRCA
NCHA
NHSRA

## PROUD DESIGNERS OF THE 1987 AWARDS.







**Generous Discounts To Fairs, Clubs & Associations.**

## LET US DESIGN YOUR LOGO!

"We Carry a Wide Variety of Custom & Trophy Buckles"

**Call or Write:**
GIST, INC.     5000 E. 2ND ST., UNIT 'E'     BENICIA, CA 94510     707/745-4400

M&F000743

# EXHIBIT A10



M&F000744

# EXHIBIT A11



M&F000745

# EXHIBIT A12



M&F000746

# EXHIBIT A13



M&F000747

# EXHIBIT A14



M&F000748

# EXHIBIT A15



M&F000749



41-E6BFI | 4¾" X 3⅝" EMBOSSED EDGE

*Logos can be included in your design. We can discuss the graphic options available for your artwork and quote art charges accordingly.*

42-WB6 | 4⅞" X 4"

43-AB5 | 4¾" X 3¾"

15

M&F000750



*Starting with prec... metals of sterling and gold; each piece is crafted one at a time and may take a little longer but it guarantees the buyer the finest quality.*

47-E6BI | 4¾" X 3¾" EMBOSSED EDGE

48-AB5-SP | 4½" X 4"

49-HRB7I | 4¾" X 3⅜"

17

M&F000751



*A unique blend of sterling, 10K and 14K gold, and precious gemstones.*

**56-E6** | 4⅝" X 3½"
FLASH CUT
LARGE
BEAD

**57-WB6** | 4⅞" X 4"
FLASH CUT
LARGE BEAD

**58-E5** | 4⅜" X 3⅛"
FLASH CUT
LARGE BEAD

**59-E6B** | 4¾" X 3⅜"
V CUT BEAD

19

M&F000752

# EXHIBIT 8

Please see Dkt. 27-2:

June 10, 2020 -

*Declaration of P. Eddins in Support of Defendant's Motion for Partial Summary Judgment*

# EXHIBIT 9

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ROBERT BERG,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| | | |
| **vs.** | § | **Case No. 6:19-cv-418-JDK** |
| | § | |
| | § | |
| **M&F WESTERN PRODUCTS, INC.,** | | |
| **Defendant.** | | |

## DECLARATION OF PAUL EDDINS

I, Paul Eddins, declare as follows:

1.  I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth in this Declaration. I have previously submitted a declaration, dated June 10, 2020 ("June Declaration"), in this matter in support of M&F Western's Motion for Partial Summary Judgment and I incorporate that declaration herein by reference.

2.  I am currently employed by M&F Western Products, Inc. in the position of Chief Financial Officer in Sulphur Springs, Texas. I have worked at M&F Western since 1993 with various duties, including accounting, finance, human resources and managing other business matters. In my position at M&F Western, and as part of my duties at M&F Western throughout the years, I have become intimately familiar with M&F Western's business and the Western wear industry, including Western-style jewelry and belt buckles. I am also knowledgeable regarding M&F Western's acquisitions of other businesses through the years.

3.  I submit this Declaration in support of M&F Western's Motion for Partial Summary Judgment regarding Plaintiff's claims of copyright infringement pertaining to Copyright Registration Nos. VA 1-091-617 and VA 1-229-288 ("the Cross Registrations").

4.  In 2018, M&F Western acquired 3-D Belt Company, L.P. as well as the intellectual property in its designs through an Asset Purchase Agreement. A true and correct copy of that agreement is attached as <u>Exhibit A</u> to Mr. Dees's Declaration submitted in support of M&F Western's Motion for Partial Summary Judgment. While some of the details of the agreement are confidential and have thus been redacted for the purposes of the submission into the public record, the fact that 3-D sold its business and intellectual property rights to M&F Western is not confidential.

5.  M&F Western continues to use 3-D Belt Company as a trade name and sells a line of products under this name.

6.  M&F Western acquired the rights in all "copyrights, including all applications and registrations, and works of authorship, whether or not copyrightable" pursuant to the Asset Purchase Agreement. <u>Exhibit A</u> to the Dees Declaration at Section 1.01(d). Section 3.06 of the Agreement also covers intellectual property and states "The Intellectual Property Assets constitute all of the registered and unregistered intellectual property owned by the Company." The assets acquired include the cross design below, which Plaintiff has accused of infringement in this matter:



This item is sold as M&F Western item DN121 and has been available through our catalogs and online since January 2019. Additionally, this item was included in 3-D catalog's published before our purchase of 3-D Belt Company.

<small>PAGE 2</small>

7.  According to the records of 3-D Belt Company that M&F Western obtained in connection with the Asset Purchase Agreement, this 3-D Cross Design was created at some time prior to August 1, 2006.

8.  In my June 10th Declaration in Support of M&F Western's Motion for Partial Summary Judgment pertaining to Mr. Berg's buckle registrations, I explained that M&F Western acquired the intellectual property in designs created by Crumrine Manufacturing Jewelers, Inc. via an Asset Purchase Agreement in 2007. Among the designs acquired pursuant to the Asset Purchase Agreement, M&F Western acquired the rights to the Crumrine designs referenced in Ms. Crumrine LaShelle's August 18, 2020 Declaration, including the designs referenced at ¶¶ 13-19.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Signed on this ___18th___ day of August 2020, at Sulphur Springs, Texas.

by: _____

Paul Eddins

# EXHIBIT 10

# Please see Dkt. 27-3:

# June 9, 2020 -

# *Declaration of C. Kraft in Support of Defendant's Motion for Partial Summary Judgment* and Exhibits thereto

# EXHIBIT 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ROBERT BERG,** | § | |
| **Plaintiff** | § | |
| | § | |
| | § | |
| **vs.** | § | **Case No. 6:19-cv-418-JDK** |
| | § | |
| | § | |
| **M&F WESTERN PRODUCTS, INC.,** | | |
| **Defendant.** | | |

### <u>DECLARATION OF CARY KRAFT</u>

I, Cary Kraft, declare as follows:

1. I am over the age of 18. If called as a witness, I could and would testify competently to the matters set forth in this Declaration. I have previously submitted a declaration, dated June 9, 2020 (June Declaration), in this matter in support of M&F Western's Motion for Partial Summary Judgment and I incorporate that declaration herein by reference.

2. I submit this Declaration in support of M&F Western's Motion for Partial Summary Judgment regarding Plaintiff's claims of copyright infringement pertaining to Copyright Registration Nos. VA 1-091-617 and VA 1-229-288 (Cross Registrations).

3. As discussed in my June Declaration, I am currently employed by M&F Western Products, Inc. in the position of designer in Trubuco Canyon, California. I have worked at M&F Western since 2002 in this position. As discussed in my June Declaration, I have been a jewelry designer for more than 45 years and won the 1977 American Designer Award for Western Belts presented by Leather Industries of America Award. I am knowledgeable about the

**PAGE 1**

matters discussed herein. If called as a witness, I could and would testify competently to the matters set forth in this Declaration.

4.  In addition to my work history discussed in my June Declaration, and as noted there, prior to working for M&F Western, I was employed by Leegin Creative Leather Goods from 1991 to 2002 where I was a jewelry designer. I discuss some tapered-bead designs I made while employed by Leegin below.

5.  I have read Plaintiff's Amended Complaint and understand that the Plaintiff accuses three M&F Western crosses of infringing his copyright in the Cross Registrations. In particular, I understand that the accused products are as shown below:

| M&F Western Design 32110 | M&F Western Design 32120 | M&F Western Design Acquired from 3-D Buckle (DN121) |
|---|---|---|
|  |  |  |

6.  I also understand that Plaintiff claims copyright protection in tapered beads as shown below in his cross registrations (the "Cross Registrations") and that he does not accuse the remaining aspects of M&F Western's designs of infringing his copyright (i.e., the cross shapes themselves, or other design elements, including, for example, the scrollwork, the flower, or the coloring):

PAGE 2

| Plaintiff's Asserted Registration VA 1-091-617 | Plaintiff's Asserted Registration VA 1-229-288 |
|---|---|
|  |  |

7. I also understand that Plaintiff's Copyright Registration for the VA 1-091-617 cross design claims a creation date of 2000 and a publication date of January 31, 2000. I understand that Plaintiff is asserting this registration against M&F Western's 32120 Design and DN121. The DN121 cross is a design acquired from 3-D Belt Company as explained in the Declaration of Paul Eddins submitted in connection with M&F Western's motion; as I was not involved in that design, I do not address it further in this declaration.

8. I also understand that Plaintiff's Copyright Registration for the VA 1-229-288 cross design claims a creation date of 2003 and a publication date of June 1, 2003. I understand that the Plaintiff is asserting this registration against M&F Western's 32110 Design. Collectively, the cross designs in the VA 1-091-617 and VA 1-229-288 Registrations are referred to herein as "the Berg Cross Designs".

9. As I attested in my June Declaration, tapered beads are very common as a design element in the Western buckle and jewelry industry (Industry) and have been used by many different designers and various companies throughout the years dating back for decades, to well before the earliest date of creation and publication claimed in the Berg Cross Designs, i.e., in the

**PAGE 3**

VA 1-091-617 registration. Designers have used tapered beads in a variety of numbers (e.g. a series of three beads, five beads, seven beads etc.) according to the particular design dating back for decades.

10. I am personally aware of the use of tapered beads as a standard design element in the Industry used in a variety of designs dating back at least to the early 1990s. I am personally aware of, among others, the Crumrine designs incorporating tapered beads that pre-date Berg's designs, such as in the 1995 Crumrine Buckle discussed in my June Declaration.

11. In addition, I was able to locate old catalogs from when I was employed by Leegin. In particular, Leegin had a product line called Brighton Out West. I located examples of designs of mine from 1996 using a series of three-tapered beads on concho belt buckles as shown below. True and correct copies of photographs from the 1996 Leegin Brighton Out West Spring catalog featuring my designs are attached hereto as **Exhibit 1** (labeled M&F001292-93). True and correct copies of photographs from the 1996 Leegin Brighton Out West Fall catalog featuring my designs are attached hereto as **Exhibit 1A** (labeled M&F0001294-1295). I am personally familiar with these catalogs and these designs as I was employed by Leegin at the time the catalogs were published (and I created the designs).

*[Images from Leegin 1996 catalogs follow on next page]*

PAGE 4



12. Like tapered beads, cross designs are also very common in the Industry. I have designed a variety of crosses through the years and, of course, crosses date back through the centuries. Sometimes crosses are incorporated into a buckle design, as was the case of the M&F Barrel Buckle I designed, which was accused of infringement in this case, and is discussed in my June Declaration. As shown below, this design incorporates a cross design set on a woven

**PAGE 5**

background design along with the tapered-bead design along the compass points on the edges of the buckle:



**M&F Western Barrel Buckle**

13. Both the M&F Western Crosses (32110 and 32120) accused of infringement in this case are designs that I created on behalf of M&F Western. I understand that Mr. Berg accuses the 32120 Cross of infringing his 617 Cross Registration, and that he accuses the 32110 Cross of infringing his 288 registration. I was not aware of Mr. Berg's designs asserted in this case at the time I designed these crosses and only learned of his Cross Registrations after this lawsuit was filed. I did not copy his designs. As an award-winning designer, I develop my own designs and have done so for decades, ever since I started designing.



| M&F Western Design 32110 | M&F Western Design 32120 |
|---|---|

**PAGE 6**

14. The smaller size cross pendant 32120, which is in M&F Western's Twister line, began its M&F Western history as a component part of an oval belt buckle design that I created, which was sold in M&F Western's 2010 catalog as item 37678:



This buckle incorporates a standard cross shape with a series of three tapered beads on the ends of the arms of the cross as well as other Industry standard design elements, including flowers, scrollwork, a black background and tapered beads along the edges of the buckle. This was a common look at the time. A true and correct copy of a photo of buckle design #37678 is attached hereto as **Exhibit 2** (labeled M&F000002).

15. The M&F Cross item 32120 I designed was based off the above buckle as is clear in this side-by-side comparison:

| Cross included in Buckle #37678 | Cross 32120 |
|---|---|
|  |  |

**PAGE 7**

16. Thus, the cross pendant also uses a standard cross shape and Industry standard design elements, including a flower, scrollwork, and a series of three tapered beads on the ends of the arms of the cross. In other words, the cross -overlay part was cut out from the buckle and modified to become a separate part that could be utilized as an ornament or as a pendant for a necklace. It was first offered for sale as a pendant for a necklace in M&F Western's 2016 catalog. A true and correct copy of an excerpt from that catalog showing the 32120 M&F Western Cross (labeled M&F F000020) is attached hereto as **<u>Exhibit 3</u>**.

17. Regarding the larger M&F Western cross item 32110, this is an original cross design that I created a number of years ago. It would have started with a rough sketch that was later developed into vector line art for the purpose of creating a CNC brass part. For this design, I have located the Corel draw vector graphic artwork and I have vector files that date from July 01, 2015, so I know it was created at least as of that date and likely even earlier that year. A true and correct copy of the vector file showing my design labeled M&F000019 is attached hereto as **<u>Exhibit 4</u>**. A true and correct copy of a photograph of item 32110 (labeled M&F000118) is attached hereto as **<u>Exhibit 4A.</u>**

18. I also created an Art Cam Jewelsmith PDF file from my vector graphics that allows me to make a three-dimensional image that can be rotated in any direction 360 degrees as a means of showing the thickness and various levels of height and shapes desired to any silversmith or interested party. A true and correct copy of a print out of the PDF files (labeled M&F000111, M&F000112, and M&F000115) is attached hereto as **<u>Exhibit 5</u>**.

19. The PDF file for the 32110 Cross and the original vector graphics that I created were provided to M&F Western silversmith/designer, Jeanne Crumrine and her husband Gregg, so they could use my vector art to create a brass or copper three-dimensional shaped pendant.

20. Both the 32110 and the 32120 cross designs above incorporate tapered beads at the ends of the arms of the cross. I chose to use tapered beads in these cross designs for the same reason I used flowers, scrollwork and the black background: namely, all of these elements are standard in the Industry. Use of tapered beads has been common in many products throu gh the years and adding tapered beads to these cross designs was simply another example drawing on prior M&F Western and Crumrine designs, like the 1995 Crumrine Buckle, that used tapered beads. As noted above, I also used tapered beads in my own designs prior to working for M&F Western, as shown, for example in the Leegin designs.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Signed on this 18 day of August 2020, at Trubuco, California.

By: _Cary Kraft_
Cary Kraft

# EXHIBIT 1

# COVER



# P 2




# PAGE 3



# BACK PAGE



M&F001292



## Amarillo

Natural shrunken glove leather, bordered with oil tan trim and accented with heart concho and bolo tips.

92025

## Silver Bouquet Concho/Braid

5/8" Antique silver plated floral conchos strung on a tubular woven braid.

**Black 92203**
**Cognac 92206**

## Durango

Natural shrunken glove leather accented with oil tan leather trim and boot-stitch details.

**Black 02033**
**Brown 02035**

## Cowgirl's Choice

1" Lariat with engraved heart buckle and accented with matching tips and ornaments.

**Black 92103**
**Brown 92107**

Brighton Out West

### Leegin Creative Leather
14022 Nelson Avenue • City of Industry, California 91746
1 • 800 • 235-8748

Bulk Rate
U.S. Postage
**PAID**
Permit No. 4417

M&F001293

# EXHIBIT 1A



M&F001294



M&F001295

# EXHIBIT 2



37670
3-3/4" x 2-3/4"
$20.00

37674
4" x 3"
$20.00

37676
3-3/4" x 2-3/4"
$20.00

37386
3-1/4" x 2-1/4"
$15.00

37678
4" x 3"
$20.00

37682
3-3/4" x 3"
$15.00

37680
4" x 3"
$15.00

37672
3-1/2" x 2-3/4"
$15.00

37686
3-1/2" x 2-1/4"
$25.00

37688
3-1/2" x 2-3/4"
$20.00

37684
3-3/4" x 2-3/4"
$30.00

*All Prices Retail*

37252
3-1/2" x 2-3/4"
$25.00

37254
3-1/2" x 2-3/4"
$25.00

February 2010

© 2010 M&F Western Products Inc./Nocona Belt Co.

11

M&F000002

# EXHIBIT 3



M&F000020

# EXHIBIT 4

Modified:        Wednesday, July 01, 2015, 5:34:44 PM



M&F000019

# EXHIBIT 4A

© 2016 M&F Western Products Inc./Nocona Belt Co./Crumrine Buckle Co.

M&F000118

# EXHIBIT 5



Jump ring to be sized and attached at KRY



## Cary Chunky Cross

Cross w/o ring H 50.8 x W 39.42 mm (2.00 x 1.55 inch)

Overall thickness w/ beads ~ 6.35 mm (.25″)

M&F000111



M&F000112



engraved
3 mm thick flat
with
bright cut edge

M&F000115

# EXHIBIT 12

# Please see Dkt. 27-4:

# June 10, 2020 –

# *Declaration of J. Crumrine LaShelle in Support of Defendant's Motion for Partial Summary Judgment* and Exhibits thereto