IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ROBERT BERG, | § | |
|        Plaintiff, | § | |
| | § | |
| | § | |
| vs. | § | Case No. 6:19-cv-418-JDK |
| M&F WESTERN PRODUCTS, INC., | § | |
|        Defendant. | § | |

**M&F WESTERN'S MOTION FOR SANCTIONS
AGAINST PLAINTIFF'S COUNSEL**

M&F Western seeks sanctions against Plaintiff's counsel Richard Liebowitz under Rule 11 and the Court's inherent powers for prosecuting Berg's copyright infringement claims on registration VA 1-159-548 ("Buckle Registration" or "Buckle Design") against M&F Western ("Buckle Claim").

# Executive Summary

**Since the beginning of the case, M&F Western has repeatedly told Mr. Liebowitz that his client's claims are without basis in fact or law because his client's Buckle Design was created and published seven years after M&F Western's.** Rather than removing the Buckle Claim when he filed the Amended Complaint, Mr. Liebowitz doubled down: adding entirely new facts that nonetheless do not address the fundamental failure of the claim.

To say that Mr. Liebowitz has a tenuous relationship with the ethical practice of law is too generous. He's been called a **"clear and present danger to the fair and efficient administration of justice"** and sanctioned repeatedly for the same kind of conduct at issue in this case: namely, filing a bogus claim and then pressing that claim to leverage a settlement all the while failing to comply with discovery obligations and urging an early mediation. His conduct in this case in maintaining the Buckle Claim demonstrates that he considers himself above the

MOTION FOR SANCTIONS--PAGE 1

148288002

rules. Sanctions are appropriate and necessary to deter this conduct as this case proceeds and to reimburse M&F Western for its efforts in litigating a frivolous claim.

M&F Western asks the Court to impose sanctions requiring Mr. Liebowitz to pay M&F Western's fees and costs for defending the Buckle Claim, to require Mr. Liebowitz to post a bond before being allowed to proceed with the remaining claims in the case (i.e., relating to designs of cross jewelry), and to impose such additional sanctions in the Court's discretion to deter Mr. Liebowitz's conduct as this case proceeds.

## Facts

The following timeline demonstrates that the Amended Complaint Mr. Liebowitz filed violated Rule 11, but was done to leverage a settlement of the Buckle Claim:

In 1995, Crumrine Manufacturing Jewelry, Inc. created a buckle design with a series of tapered beads at the four compass points ("1995 Crumrine Buckle"):



(Exhibit 1, M&F000003[1]). M&F Western is the owner of the 1995 Crumrine Buckle via a subsequent Asset Purchase Agreement.[2]

---

[1] This Exhibit was authenticated in the Declaration of J. Crumrine LaShelle in Support of M&F Westerns's Motion for Partial Summary Judgment. (Exhibit 2 at ¶ 10.) In her declaration, Ms. Crumrine LaShelle averred that she oversaw the creation of the Crumrine Buckle in 1995 when she worked at Crumrine Manufacturing Jewelers, Inc. (*Id.*)

[2] Ms. Crumrine LaShelle also averred that M&F Western subsequently acquired the intellectual property rights in the Crumrine Buckle design via an Asset Purchase Agreement (*Id.* at ¶¶ 5, 10-13 and Exhibit A thereto) and that the M&F Products accused of infringing in this case incorporate the same tapered-beads

In 2002, Berg allegedly created "a stylized and intricate design for an oval belt buckle ("Oval Buckle") and registered it with the U.S. Copyright Office under No. VA 1-159-548". (Exhibit 3, Dkt. 23, Amended Complaint at ¶ 13.) In his true and correct copy of the 548 Registration attached as Exhibit C to the Amended Complaint, Berg claimed a "date of creation" of 2002 and a "date of publication" of June 1, 2002. (*Id.* at Exhibit C.)

In 2002, Berg also allegedly created "a stylized and intricate design for a rectangular belt buckle ("Rectangular Buckle" and "Buckle Design" when combined with the Oval Buckle) and registered it with the U.S. Copyright Office under No. VA 1-159-548". (Exhibit 3, Dkt. 23, Amended Complaint at ¶ 13). In his "true and correct" copy of the 548 Registration, Berg claimed a "date of creation" of 2002 and a "date of publication" of June 1, 2002. (*Id.* at Exhibit C.)

On September 14, 2019, Mr. Liebowitz filed the Original Complaint. (Exhibit 4, Dkt. 1.) In it, he alleged that M&F Western copied Berg's designs after a December 2016 meeting at the NRF retail trade show. (*Id.* at ¶¶ 10-11.) Berg alleged that two of M&F Western's buckles infringed the Buckle Registration because they each had five tapered beads at the compass points ("Allegedly Infringing Products"):

| Plaintiff's Asserted Registration | Plaintiff's Asserted Design | M&F Western's Accused Product |
|---|---|---|
| COPY OF DEPOSIT VA 1-159-548 | | |

---

edging as the 1995 Crumrine Buckle design. (*Id.* at ¶ 12.)

MOTION FOR SANCTIONS--PAGE 3

148288002



(Exhibit 4, Dkt. 1 at ¶¶ 7-11 and Exhibit A thereto.)

On December 24, 2019, M&F Western timely answered, denying infringement.

On December 26, 2019, counsel for M&F Western sent Mr. Liebowitz a letter explaining that the Buckle Claim was baseless because the 1995 Crumrine Buckle preceded the date of creation in Berg's Buckle Registration by seven years. (Exhibit 5 at pp. 1 and 3-4.)



M&F Western also explained that tapered beads on the edge of a buckle were a common design feature and that Berg's prior case addressed the fact that Berg did not originate tapered beaded edging.[3] (Id. at p. 3.) M&F Western invited Mr. Liebowitz and his client to dismiss the Buckle

---

[3] In Mr. Berg's case against his ex-wife, the Court noted in its Opinion that "Hugh Weaver, an accomplished silversmith and engraver from Wyoming . . . . credibly testified at trial that he showed Berg design features that Berg later incorporated into his own belt buckle and jewelry designs, including the use of tapered raised beads on a raised edge." *Berg v. Symons*, 393 F. Supp. 2d 525, 532 (S.D. Tex. 2005) ("Berg was not the first to use a black background, more than one color gold, or vine and leaf scrollwork, or to place beads

**MOTION FOR SANCTIONS--PAGE 4**

148288002

Claim in light of this evidence. (*Id.* at p. 7.) After receiving the letter, Mr. Liebowitz failed to dismiss the claim and pushed forward with the Buckle Claim anyway.

On January 27, 2020, the Parties submitted the Joint Report to the Court in which they agreed to Mandatory Disclosures, which were due at the end of January. (Exhibit 6, Dkt. 5 at p. 2.) Mr. Liebowitz failed to comply with Mandatory Disclosures, producing no documents.

On February 7, 2020, during a hearing with the Court, Mr. Liebowitz pushed for an early mediation, and the Court ordered mediation in early March, premised in part on Berg personally attending.

On March 2, 2020, after learning that Berg would not appear personally at the mediation, M&F Western filed an Emergency Motion to Postpone Mediation to a Meaningful Time. (Dkt 14 at pp. 2-3.) Not until he filed his response to M&F Western's Emergency Motion, did Mr. Liebowitz finally acknowledge that Plaintiff "recognizes that he will need to amend his complaint regarding the timing of when Defendant began marketing and selling the infringing products . . . . The evidence at trial will show that Plaintiff created his original works before Defendant copied them and marketed them." (Exhibit 7, Dkt. 16 at p. 1.)

On April 13, 2020, Mr. Liebowitz filed the Amended Complaint. Berg did not drop his Buckle Claim; instead, he doubled down, maintaining that he created his Buckle Design in 2002 (Exhibit 3, Dkt. 23 at ¶¶ 13-14), but alleging an entirely new set of facts regarding M&F Western's alleged copying, now claiming that it supposedly occurred in 2004/2005. (*Id.* at ¶¶ 17-19). These new allegations fail to address M&F Western's evidence that its rights in the tapered bead design predate Berg's claimed "date of creation" and "date of publication" of the Buckle Design by seven years. With evidence in hand that the Allegedly Infringing Products originated in 1995, Mr. Liebowitz continued to claim that M&F Western copied Berg's design *after* Berg

---

on the edge of a buckle or piece of jewelry").

**MOTION FOR SANCTIONS--PAGE 5**

148288002

received his registration in 2002. There was no reference in the Amended Complaint to the 1995 Crumrine Buckle.

On June 12, 2020, M&F Western filed its Motion for Partial Summary Judgment on the Buckle Claim (Dkt. 27) on the basis that M&F Western's Crumrine Buckle predates the date of creation in Berg's Buckle Registration and, therefore, does not infringe as a matter of law.

On June 25, 2020, pursuant to Rule 11(c)(2), M&F Western served Mr. Liebowitz with a copy of this Motion and the attached letter (<u>Exhibit 8</u>), inviting him once again to dismiss the Buckle Claim.[4] Mr. Liebowitz did not dismiss the Buckle Claim, hence M&F Western files this Motion.[5]

# Argument

**Rule 11 Sanctions may be rare, but they are appropriate here because Mr. Liebowitz has proceeded with the Buckle Claim despite evidence that the 1995 Crumrine Buckle was created seven years before Berg's claimed "date of creation" and "date of publication" in the Buckle Registration.** When a lawyer signs and files a pleading, that attorney certifies to having done an inquiry reasonable under the circumstances and that the filing:

---

[4] Rule 11(c)(2) requires in pertinent part that a "motion for sanctions [under this rule] . . . must be served under Rule 5, but it must not be filed or be presented to the court if the challenged . . . claim . . . is withdrawn or appropriately corrected within 21 days after service."

[5] Mr. Liebowitz responded to M&F Western's letter on July 13th claiming that the "proposed Rule 11 motion is premature because fact discovery in this matter has not been completed." (<u>Exhibit 9</u>.) Mr. Liebowitz did not agree to withdraw the Buckle Claim, nor did he provide any information explaining why he needs to wait until "[a]fter the close of fact discovery [before] Plaintiff will consider withdrawing his claim concerning the five tapered beads design. . . ." (*Id.*) As of the time of his response, he had noticed no depositions in this case and was in receipt of M&F Western's document productions. This was nothing more than an attempt to drag out the process until after the scheduled mediation, which was scheduled for the end of July (and was subsequently cancelled by the Court). This Motion is timely filed after the close of the safe harbor provision and is ripe for consideration. The Court has granted M&F Western's Motion for Partial Summary Judgment on the Buckle Claim (Dkt. 37.)

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Thus, Rule 11 places an affirmative duty on attorneys and litigants to make a reasonable investigation (under the circumstances) of the facts and law before signing and submitting any pleading, motion, or other paper. *Floyd v. City of Kenner, La.*, 351 F. App'x 890, 898 (5th Cir. 2009) ("Rule 11 requires that any factual statements be supported by evidence known to the pleader, or when specifically, so identified, 'will *likely* have evidentiary support' after discovery. There has to be more underlying a complaint than a hope that events happened in a certain way.") (citation omitted.) As discussed further below, sanctions are appropriate here, and Rule 11(c) permits the Court to impose sanctions "to deter repetition of the conduct". Indeed, the purpose of the rule is to "deter baseless filings in district court," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)*,* and "to spare innocent parties and overburdened courts from the filing of frivolous lawsuits," *Zuffante v. Stephens*, No. 3:13-CV-1146-B, 2013 WL 4829193, at *1 (N.D. Tex. Sept. 9, 2013) (quoting *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987) ). The sanction may include monetary sanctions, including an order directing payment to the movant of attorney's fees and other expenses resulting from the violation. Rule 11(c)(4). The sanction may also include nonmonetary directives.

The Court also has the power to impose sanctions pursuant to its inherent powers in order to address Mr. Liebowitz's bad-faith conduct in this case. *See Chambers v. NASCO, Inc.*, 501 U.S.

32, 50, (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power."); *Sarco Creek Ranch v. Greeson*. 167 F. Supp. 3d 835 (S.D. Tex. 2016); *Finlan v. Peavy,* 205 S.W.3d 647, 652-53 (Texas App. 2006) ("Inherent power to sanction exists to the extent necessary to deter, alleviate, and counteract bad-faith use of the judicial process, such as any significant interference with the traditional core functions of Texas courts."). To address Mr. Liebowitz's bad faith conduct, additional sanctions in the form of a bond are appropriate should he continue the case relating to the cross jewelry claims as discussed further below. *Ehm v. Amtrak Bd. of Directors*, 780 F.2d 516, 517 (5th Cir. 1986) (district court has an inherent power to require a security for costs when warranted by the circumstances of the case prior to the disposition on the merits of a claim).

Since the beginning of the case, M&F Western has repeatedly told Plaintiff and his counsel that it owns rights in the 1995 Crumrine Buckle, which uses the same tapered-bead design as the Allegedly Infringing Products. Hence, M&F Western is not liable for "copying" Plaintiff's design that was created seven years *after* the 1995 Crumrine Buckle (rather M&F Western has continued to use its own design). But, armed with this knowledge[6], Plaintiff did not withdraw his claim regarding the Buckle Registration, instead he filed an Amended Complaint. The Amended Complaint alleges that Berg created the Buckle Design in 2002 (Exhibit 3, Dkt. 23 at ¶¶ 13-14) and adds new allegations that M&F Western copied the Asserted Buckle Design *after* 2002 (i.e., supposedly now sometime in 2004 or 2005, *see id.* at ¶¶17-19); in other words,

---

[6] And with the knowledge that in Mr. Berg's prior case, the court specifically noted that Mr. Berg did not originate tapered beaded edging on a buckle and Mr. Berg stipulated at trial that "he was not asserting copyright protection for the tapered beaded edge design contained in the drawings" of the registrations at issue. *Berg*, 393 F. Supp. 2d at 533 ("Berg was not the first to use a black background, more than one color gold, or vine and leaf scrollwork, or to place beads on the edge of a buckle or piece of jewelry").

**MOTION FOR SANCTIONS--PAGE 8**

148288002

Berg persisted with his bogus infringement claim and Mr. Liebowitz signed off on the amended pleading.

In signing and submitting the Amended Complaint, Mr. Liebowitz violated Rule 11(b) because he cannot show that: "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery" (11(b)(3)); that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" (11(b)(2)); and that "it is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" (11(b)(1)). Indeed, as is consistent with Mr. Liebowitz's typical practice, he has maintained this bogus claim precisely to harass M&F Western and needlessly increase the cost of this case.

Mr. Liebowitz's approach in this case is entirely consistent with Mr. Liebowitz's practice in other cases before federal courts throughout the country.[7] He has been sanctioned previously for "failing to investigate the evidentiary basis for a Complaint" as he should be here. *Rock v. Enfants Riches Deprimes, LLC*, 17-cv-2618 (ALC), 2020 WL 468904, at *4 (S.D.N.Y Jan. 29, 2020) ("Mr. Liebowitz actively stonewalled discovery requests" … "This conduct—of failing to investigate the evidentiary basis for a Complaint, of stonewalling discovery, of misleading the

---

[7] Since being admitted to practice law in 2015, he has filed thousands of cases, earning the reputation of a "copyright troll." *Sands v. Bauer Media Group USA, LLC*, 17-cv-9215 (LAK) 2019 WL 4464672, at *1 (S.D.N.Y. Sept. 18, 2019) ("Another judge of this Court has referred to Mr. Liebowitz as a 'copyright troll' - one who . . . plays a numbers game in which it targets hundreds or thousands of defendants seeking quick settlements priced just low enough that it is less expensive for the defendant to pay the troll rather than defend the claim.") (citing *McDermott v. Monday Monday, LLC*, No. 17-cv-9230 (DLC), 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018)). Courts are well aware of his practice of filing lawsuits in order to leverage a quick settlement and of his dubious tactics to achieve such settlements. *See, e.g.*, *McDermott v. Monday Monday, LLC*, 17cv9230 (DLC), 2018 WL 5312903, at *2 (S.D.N.Y. Oct. 26, 2018) ("In the over 700 cases Mr. Liebowitz has filed since 2016, over 500 of those have been voluntarily dismissed, settled, or otherwise disposed of before any merits-based litigation").

**MOTION FOR SANCTIONS--PAGE 9**

148288002

Court, and of making meritless arguments—undoubtedly demonstrates bad faith.") And courts have recognized that his practices present: "**[A] clear and present danger to the fair and efficient administration of justice**"—a stunning rebuke of a lawyer's professional character, but one that Mr. Liebowitz has earned. *Mondragon v. Nosrak LLC,* No. 19-cv-01437-CMA-NRN, 2020 WL 2395641, at *1 (D. Colo. May 11, 2020) (ordering that steps should be taken promptly by appropriate disciplinary authorities to suspend his ability to file new cases unless and until he has demonstrated he has appropriate systems in place to assure regular compliance with court rules and rules of professional conduct.") (emphasis added).

He has been sanctioned for deliberately taking actions for the primary (if not sole) purpose of making litigation more costly to defendants, which he has done here. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 339 (S.D.N.Y. 2019) ("In addition to the utter lack of merit to [Liebowitz's client's] motion to disqualify, the Court concludes that the motion was made vexatiously and in bad faith."); *Terry v. Masterpiece Adver. Design*, 17 Civ. 8240 (NRB), 2018 WL 3104091, at *2 (S.D.N.Y. June 21, 2018) (admonishing Mr. Liebowitz for repeating arguments that "ha[ve] no basis in law"). He has also been repeatedly sanctioned for making misrepresentations to the Court. *Steeger v. JMS Cleaning Servs., LLC*, 17cv8013(DLC), 2018 WL 1363497, at *3 (S.D.N.Y. Mar. 15, 2018) (imposing sanction of $2,000 on Mr. Liebowitz personally and requiring him to attend four CLE credit hours in ethics and professionalism); *Rock*, 2020 WL 468904; *Berger v. Imagina Consulting, Inc.*, No. 18-CV-08956 (CS), 2019 WL 6695047 (S.D.N.Y Nov. 1, 2019) (discussing Mr. Liebowitz's misrepresentations to the court, finding him in contempt).

While he commonly claims his actions are simply "oversights", even that defense has run its course. *Steeger v. JMS Cleaning Servs., LLC*, No. 17-CV-8013 (DLC), 2018 WL 1136113, *3 (S.D.N.Y. Feb 28, 2018) ("Mr. Liebowitz's claim that his failure to serve JMS Cleaning Services, LLC with the Notice of Pretrial Conference was 'inadvertent' and an 'honest mistake' is

unpersuasive given his prior practice before this Court and in this district."); *Chevrestt v. Barstool Sports, Inc.*, No. 20-CV-1949 (VEC), 2020 WL 2301210, at *4 (S.D.N.Y. May, 8, 2020) (imposing monetary sanctions and requiring Mr. Liebowitz to attend an approved law firm management course: "[A]lthough Mr. Liebowtiz characterizes his violations as mere 'oversights' or 'infractions', given the frequency of such behavior, the Court highly doubts that they continue to occur in good faith.").

His antics are such that "**there is a growing body of law . . . devoted to the question of whether and when to impose sanctions on Mr. Liebowitz alone**". *Rice v. NBCUniversal, LLC*, 19-CV-447 (JMF), 2019 WL 30000808, at *1 (S.D.N.Y. July 10, 2019). In fact, there are so many times where Liebowitz was sanctioned, that the only reasonable conclusion to draw is that this is his "style." *Wisser v. Vox Media, Inc.*, No. 19 Civ. 1445 (LGS), 2020 WL 1547381, at *6 (S.D.N.Y. April 1, 2020) ("Mr. Liebowitz's history of similar discovery misconduct in this District, provide clear evidence of a course of conduct taken in bad faith pursuant to which sanctions under § 1927 and the Court's inherent powers are appropriate.").

"Liebowitz may be an example of the worst kind of lawyering." *Ward v. Consequence Holdings, Inc.*, No. 3:18-CV-1734-NJR, 2020 WL 2219070, at *3 (S.D. Ill. May 7, 2020). And that has caused judges in numerous cases to require Mr. Liebowitz to post a bond in order to proceed with the case.[8] *See*, *e.g.*, *Lee v. W Architecture and Landscape Architecture, LLC*, 18 CV 05820 (PKC) (CLP), 2019 WL 2272757 (E.D.N.Y. May 28, 2019) (granting defendant's motion for $10,000 cost bond, citing in part Mr. Liebowitz's failure to timely file motion papers and history

---

[8] M&F Western requests that the Court require Mr. Liebowitz to post a bond in order to proceed further with this case. Should the Court grant M&F Western's request that it dismiss the Buckle Claim with prejudice, Mr. Berg's claims pertaining to the jewelry cross designs will remain in the case. Thus, it is appropriate to require Mr. Liebowitz to post a bond before the case may proceed as to the cross claims, as those claims were also brought to leverage a settlement. The Court has authority to require a bond pursuant to its inherent authority. *Ehm*, 780 F.2d at 517 (district court has an inherent power to require a security for costs when warranted by the circumstances of the case prior to the disposition on the merits of a claim).

**MOTION FOR SANCTIONS--PAGE 11**

148288002

of failing to follow court orders in other cases); *Reynolds v. Hearst Comm'ns, Inc.*, 17cv6720(DLC), 2018 WL 1229840, at *4 (S.D.N.Y. Mar. 5, 2018) (finding that Mr. Liebowitz had failed to comply with court orders, "as he has in other lawsuits" and ordering the plaintiff to post a bond of $10,000); *Leibowitz v. Galore Media, Inc.*, 18 Civ. 2626 (RA)(HBP), 2018 WL 4519208, at *4 (S.D.N.Y. Sept. 20, 2018) (denying motion for reconsideration of order requiring $10,000 cost bond citing "history of non-compliance with court orders in similar actions"); *Cruz v. Am. Broad. Cos., Inc.*, 17-cv-8794 (LAK), 2017 WL 5665657, at *1 (S.D.N.Y. Nov. 17, 2017) (finding on the face of the complaint "serious questions as to the merits of plaintiff's claim" and ordering Mr. Liebowitz's client to show cause why an order should not be entered requiring security for costs as a condition of proceeding further).

And numerous judges have moved beyond mere monetary sanctions. In Colorado, he was ordered to associate with an experienced Colorado attorney and to file a sanctions order issued against him with the cover sheet titled "NOTICE OF ATTORNEY SANCTION" in any new case filed in the District of Colorado. *Mondragon*, 2020 WL 2395641, at *1. He has been reported to disciplinary boards, ordered to attend management training, and even required to show cause why he should not be incarcerated for failure to comply with court orders. *Id.*; *Berger v. Imagina Consulting, Inc.*, No. 18-CV-08956, 2019 WL 6695047, at *3-4 (S.D.N.Y. Nov. 1, 2019) (declaring Mr. Liebowitz in contempt of court for failure to comply with court orders, imposing a $500 per diem fine until he complies with court's orders and requiring that he appear to show cause why he should not be incarcerated).

The facts discussed above regarding Mr. Liebowitz's actions in this case are consistent with Mr. Liebowitz's practice in numerous past cases: he continues to flout the rules (procedural and ethical) with impunity in order to pursue his client's claims to leverage a settlement. By maintaining the Buckle Claim—in spite of clear evidence that the claim is baseless—Mr.

Liebowitz has increased the cost of the litigation to M&F Western's prejudice and relief should be granted.

## Requested Relief

**The Court should take decisive action.** M&F Western requests that the Court: (1) dismiss with prejudice Plaintiff's copyright infringement claim relating to the Buckle Registration and the accused M&F Western buckles[9], (2) award M&F Western its attorney's fees and costs incurred in preparing the present Motion and for defending against and/or trying to settle Plaintiff's meritless copyright infringement claims regarding the Buckle Registration; (3) require Mr. Liebowitz to post a bond in order to proceed with this case; and (4) impose other sanctions in the Court's discretion to deter Mr. Liebowitz from engaging in similar conduct in the future. Should the Court grant this Motion, M&F Western will provide the Court with a detailed accounting, supported by time records and other documentation, of its costs and fees. M&F Western requests that it be given a period of ten (10) days after granting of this Motion to prepare and submit such documentation.

## Conclusion

Mr. Liebowitz was provided with clear evidence that the tapered bead design used in Allegedly Infringing Products preceded Berg's registration by 7 years, but he kept at it using the worst parts of litigation to extract a settlement while often times misleading the Court and M&F Western. This is exactly the type of conduct Rule 11 and the Court's inherent authority are designed to address.

---

[9] Subsequent to M&F Western's service of this Motion on Mr. Liebowitz pursuant to Rule 11(c)(2), the Court granted M&F Western's Motion for Partial Summary Judgment on the Buckle Claim. (Dkt. 37.) Thus, this request has been addressed.

Dated:  August 20, 2020

Respectfully submitted,

By: _____

John R. Hardin
Texas Bar No. 24012784
JohnHardin@perkinscoie.com
PERKINS COIE LLP
500 N. Akard St. Suite 3300
Dallas, Texas 75201
Phone: 214-965-7700
Facsimile: 214-965-7799

Judith B. Jennison
Washington State Bar No. 36463
JJennison@perkinscoie.com
Kirstin E. Larson
Washington State Bar No. 31272
KLarson@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: 206-359-8000
Fax: 206-359-9000

*Attorneys for Defendant M & F Western Products, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 20, 2020, the foregoing was filed with the Court's electronic filing system, which served a copy on all counsel of record.

                                                  _____
                                                  Kirstin E. Larson