**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(TYLER DIVISION)**

---

ROBERT BERG,

                Plaintiff,

   - against -

M&F WESTERN PRODUCTS, INC.

            Defendant.

Docket No. 6:19-cv-00418-JDK

---

## PLAINTIFF'S COUNSEL'S OPPOSITION TO
## DEFENDANT'S MOTION FOR SANCTIONS

Richard Liebowitz, Esq., counsel for plaintiff Robert Berg (Plaintiff"), respectfully submits this memorandum of law in opposition to Defendant M&F Western Products, Inc. ("Defendant")'s motion for sanctions under Rule 11 and the Court's inherent powers for prosecuting Plaintiff's copyright infringement claims on registration VA 1-159-548 (the "548 Registration") against Defendant (the "Buckle Claim").

The thrust of Defendant's Rule 11 motion is that Mr. Liebowitz was presented with two pieces of documentary evidence before the filing and signing of the Amended Complaint on April 13, 2020 which purport to show that: (a) Defendant's predecessor-in-interest, Crumine, marketed a belt buckle design substantially similar to Plaintiff's design back in 1995; and (b) Defendant acquired the alleged 1995 design through a subsequent Asset Purchase Agreement in 2007.  Defendant argues that Mr. Liebowitz should be sanctioned under Fed.R.Civ. 11(b) for signing the Amended Complaint because Mr.

Liebowitz allegedly neglected to take the proffered evidence at face value and withdraw his client's Buckle Claim.

The first piece of evidence consisted of a highly suspect one-page screenshot "excerpt" from an alleged 25-year-old product catalog (the "Catalog Screenshot") [bate-stamped M&F00003].  To this day, Defendant has never presented any record evidence of the alleged 1995 catalog in its entirety (or even portions thereof); just the one-page screenshot which, as discussed further herein, plausibly could have been fabricated in response to Plaintiff's lawsuit.

The second piece of evidence consisted of an Asset Purchase Agreement which purported to transfer ownership of Crumine's alleged 1995 design to Defendant.  [bate-stamped M&F000612-630]  But this Agreement makes absolutely no mention of the alleged 1995 design.  Typically, where intellectual property assets are conveyed as part of an Asset Purchase Agreement, the transactional lawyers take care to identify the specific intellectual property assets which are subject to transfer.  But not here.  The Asset Purchase Agreement proffered to Mr. Liebowitz is entirely silent with respect to the alleged 1995 Crumrine design and instead only references intellectual property assets *in general.*

Moreover, there is no evidence on record that Crumine's alleged 1995 design was ever registered with the U.S. Copyright Office, lending further support to Mr. Liebowitz's position that such evidence was insufficient to warrant withdrawal of Plaintiff's Buckle Claim as of April 2020.

As further demonstrated below, neither piece of documentary evidence proffered by Defendant in advance of Mr. Liebowitz's signing of the Amended Complaint would have been sufficient to persuade a reasonable lawyer in Mr. Liebowitz's position to withdraw the

Plaintiff's claim relating to the 548 Registration, particularly given Plaintiff's background as a celebrated belt buckle designer (described in the Statement of Facts below).

At the time the Amended Complaint was filed on April 13, 2020, and as of the time the proposed Rule 11 motion was served on June 12, 2020, Mr. Liebowitz reasonably expected that Plaintiff would have the opportunity to properly examine the purported authenticity of the Catalog Screenshot through depositions of key witnesses, or on cross-examination at trial.

The fact that the Court ultimately granted partial summary judgment in favor of Defendant does not render Mr. Liebowitz's filing of the Amended Complaint without color, nor does it demonstrate bad faith.  *See Bus. Guides, Inc. v. Chromatic Commc'ns Enterprises, Inc.,* 498 U.S. 533, 534, 111 S. Ct. 922, 924, 112 L. Ed. 2d 1140 (1991) ("[Rule 11] sanctions are not designed to reallocate the burdens of litigation, since they are tied not to the litigation's outcome, but to the issue whether a specific filing was well founded; they shift only the cost of a discrete event rather than the litigation's entire cost").

For the reasons more fully stated below, Mr. Liebowitz respectfully requests that Defendant's sanctions motion should be denied in its entirety, that a bond should not be imposed as a condition to the disposition of Plaintiff's remaining claims, and that Mr. Liebowitz should be awarded his attorneys' fees for having to oppose this harassing motion. See Fed.R.Civ.P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.")

## PROCEDURAL BACKGROUND

• On September 14, 2019, Plaintiff filed his initial complaint against Defendant for copyright infringement. [Dkt. #1]

• On December 24, 2019, Defendant filed its answer. [Dkt. #3]

• On December 26, 2019, Defendant's counsel sent Mr. Liebowitz a letter alleging that that the Buckle Claim was baseless because the alleged 1995 Crumrine Buckle preceded the date of creation in Berg's Buckle Registration by seven years. (Exhibit 5 at pp. 1 and 3-4.)

• On February 7, 2020, the Court entered a scheduling order which sets the fact discovery deadline as August 7, 2020 and a jury trial for January 19, 2021. [Dkt. #10] A revised scheduling order was entered on March 5, 2020 but the aforesaid fact discovery deadline and trial date remained the same for purposes relevant here [Dkt. #20]

• On April 13, 2020, Plaintiff filed his first amended complaint, signed by Mr. Liebowitz [Dkt. #23]

• On May 4, 2020, Defendant filed its answer to the amended complaint.  [Dkt. # 24]

• On June 12, 2020, almost two months before the August 7 discovery deadline, Defendant filed an early motion for partial summary judgment to dispose of one of the copyrighted designs asserted by Plaintiff under Registration No. VA 1-159- 548, with effective date of July 26, 2002.

• On June 25, 2020, pursuant to Rule 11(c)(2), Defendant served Mr. Liebowitz with a copy of the present Rule 11 Motion. [Ex. 8 to Defendant's motion]

• On July 13, 2020, Mr. Liebowitz notified Defendant that he would not withdraw the claim relating to the 548 Registration because discovery had not been completed. [Ex. 9 to

Defendant's motion]

• On July 21, 2020, the Court granted partial summary judgment to Defendant on the Buckle Claim based on the 548 Registration [Dkt. #37]


## STATEMENT OF FACTS

Plaintiff Robert Berg, a native of Australia, is a professional jewelry designer who currently resides in Vietnam.  In the late 1970s, Berg was a rodeo performer and silversmith in Australia who began designing and selling western jewelry. [Am. Compl. ¶ 7] After an injury ended his rodeo career, Berg expanded his jewelry business. Although he focused on belt buckles, he also began to design, produce, and sell western- style rings, necklaces, bracelets, conchos, spurs, knives, and three-piece buckle sets. [Am. Compl. ¶ 8]

In 1993, Berg moved to Bandera, Texas, to pursue the western jewelry market in the United States.  Berg continued to design jewelry and buckles which have a distinctive "look" consisting of the following original elements: black background, the use of "tri-color" (red, green, and yellow) gold; a layer of scrollwork with a vine design, a layer of leaves, and a third layer of flowers; and, when edged, use of a raised silver edge with large tapered beads. Hand-cut and soldered scrollwork and lettering characterize Bob Berg designs. Berg initiated the technique of stacking tri-color gold to achieve a three dimensional look in his buckles and jewelry. [Am. Compl. ¶ 9]

By 2000, Berg's jewelry designs had become well-known in the United States and Texas.  For example, he was asked to design the trophy cup for the world championship professional bull riding competition.  He also built championship buckles for prominent rodeo committees across the United States and supplied buckles to the champions of the Australian

Pro Rodeo Association for over two decades. [Am. Compl. ¶ 10]

Between 2000 and 2003, Berg created original designs consisting of Western-styled jewelry and belt buckles that are the subject of this lawsuit (collectively the "Designs"). [Am. Compl. ¶ 11]  A true and correct copy of some of the Designs are attached as <u>Exhibit A</u> to the Amended Complaint [Dkt. #23-1]

In 2002, Berg created a stylized and intricate design for an oval belt buckle (the "Oval Buckle") and registered it with the U.S. Copyright Office under No. VA 1-159- 548, with effective date of July 26, 2002 (the "548 Registration").  [Am. Compl. ¶ 13]  A true and correct copy of the 548 Registration, as maintained by the U.S. Copyright Office's website, is attached as <u>Exhibit C</u> to the Amended Complaint [Dkt. #23-3]

In 2002, Berg created a stylized and intricate design for a rectangular belt buckle (the "Rectangular Buckle") and registered it with the U.S. Copyright Office under No. VA 1-159- 548, with effective date of July 26, 2002.  [Am. Compl. ¶ 14; Dkt. #23-3] Berg is the author of the Designs and has at all times been the sole owner of all right, title and interest in and to the Designs, including the copyright thereto. [Am. Compl. ¶ 16]

In or about 2005, after Berg's works were registered, a third-party individual named Gary Ballenger gained access to Berg's copyrighted molds and then distributed them to Defendant's without Berg's knowledge or authorization. [Am. Compl. ¶ 18]

In 2005 or thereafter, M & F created their own products copying the Designs for their products and mass producing them. [Am. Compl. ¶ 18]  Some examples are attached hereto as Exhibit A to the Amended Complaint [Dkt. #23-1].

## LEGAL STANDARD

The goal of Rule 11 is to "impose a duty to base claims upon factually and legally supportable grounds and to punish litigants and lawyers who unreasonably pursue frivolous suits." *FDIC v. Calhoun,* 34 F.3d 1291, 1296 (5th Cir.1994). In assessing a litigant's conduct, the court considers whether the lawyer's certification that he has complied with Rule 11(b) is objectively reasonable under the circumstances and whether the filing was submitted for an improper purpose. *Id.; Whitehead v. Food Max of Miss., Inc.,* 332 F.3d 796, 802-03 (5th Cir.2003).

The party moving for sanctions bears the burden to overcome the presumption that pleadings are filed in good faith. *Tompkins v. Cyr,* 202 F.3d 770, 788 (5th Cir.2000). When pre-filing conduct is in issue, the Fifth Circuit has identified various factors that may be considered in determining whether an attorney made a reasonable inquiry into the law or the facts, including: (1) the time available for investigation; (2) the extent to which the attorney relied on his client for factual support; (3) the feasibility of conducting a pre-filing investigation; (4) whether the attorney accepted the case from another attorney; (5) the extent development of the facts underlying the claim requires additional discovery; (6) the complexity of the factual and legal issues involved; (7) the plausibility of the legal view espoused; and (8) the litigant's *pro se* status. *Thomas v. Cap. Sec. Servs.,* 836 F.2d 866, 875—76 (5th Cir.1988) (en banc); *see Childs v. State Farm Mut. Auto. Ins. Co.,* 29 F.3d 1018, 1026 (5th Cir.1994).

These factors are non-exclusive and "the determination of whether a reasonable inquiry has been made will, of course, be dependent upon the particular facts" of each case. *Thomas,* 836 F.2d at 875. The district court must adhere to the Fifth Circuit's well established "snapshot rule," which "ensures that Rule 11 liability is assessed only for a violation existing at the moment of

filing." *Marlin v. Moody Nat'l Bank,* 533 F.3d 374, 380 (5th Cir.2008) (quoting *Skidmore Energy, Inc. v. KPMG,* 455 F.3d 564, 570 (5th Cir.2006)); *see also Thomas,* 836 F.2d at 874 ("Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken-when the signature is placed on the document.").

A district court has " 'broad discretion to impose sanctions that are reasonably tailored to further the objectives of Rule 11.' " *Matter of Dragoo,* 186 F.3d 614, 616 (5th Cir.1999) (quoting *Am. Airlines, Inc. v. Allied Pilots Ass'n,* 968 F.2d 523, 533 (5th Cir.1992)). However, a court should impose " 'the least severe sanction that is adequate to fulfill this purpose.' " *Id.* (quoting *Am. Airlines,* 968 F.2d at 533).

## ARGUMENT

As demonstrated below, by signing the Amended Complaint and discounting the scant evidence proffered by Defendant in support of its claim that it acquired a similar 1995 design, Mr. Liebowitz was entitled to:

(a) rely on Plaintiff's celebrated history of designing and producing highly acclaimed belt buckle designs that garnered awards and widespread recognition in the United States (and Texas in particular) throughout the 1990's and 2000s;

(b) credit the validity of Plaintiff's valid copyright registrations while take note of Defendant's corresponding lack of *any* copyright registrations for similar designs;

(c) reasonably anticipate that Plaintiff would have the opportunity to depose Defendant's key witnesses to challenge the authenticity of the highly suspect evidence proffered by Defendant, consisting of a single screenshot that plausibly could have been

fabricated in response to this lawsuit and an Asset Purchase Agreement which makes no

*specific* reference to the design which Defendant purportedly acquired from Crumine.

**POINT I:     MR. LIEBOWITZ HAD REASONABLE GROUNDS TO CONTEST THE
                AUTHENTICITY OF THE ONE-PAGE SCREENSHOT PRODUCED
                BY DEFENDANT IN SUPPORT OF ITS ALLEGED 1995 DESIGN**

**A.      Before Filing the Amended Complaint In April 2020, a Reasonable Attorney in
          Mr. Liebowitz's Position Would Have Questioned the Authenticity of the
          Defendant's Evidence of an Earlier 1995 Buckle Design**

Defendant argues that Mr. Liebowitz should be sanctioned under Rule 11(b) because

he signed an Amended Complaint which refused to withdraw Plaintiff's claim relating to the

548 Registration.  Defendant asserts that Mr. Liebowitz should have withdrawn the claim

after being presented with "clear evidence" [Dkt. #42, p. 13 of 15] of an alleged 1995 design

consisting of nothing more than a one-page screenshot "excerpt" from an alleged 25-year-

old product catalog, as shown below (the "Catalog Screenshot") [bate-stamped M&F00003]:



From December 26, 2019, when defense counsel transmitted a letter to Mr.

Liebowitz attaching the Catalog Screenshot [See Dkt #42-1, Exhibit 5] through April 13,

2020 when the Amended Complaint was filed, this one-page graphic was the <u>only</u>

documentary evidence Defendant proffered to Mr. Liebowitz in support of its claim that its predecessor-in-interest, Crumine, marketed a design back in 1995 which preceded Plaintiff's 2002 copyright registration.

But no reasonable attorney in Mr. Liebowitz's position, armed with a valid 2002 copyright registration owned by a client with a highly acclaimed background as a belt buckle designer, would have withdrawn a colorable claim based on the above single-page, two-dimensional composite screenshot, purportedly extracted from an alleged 1995 Crumrine product catalog that is *still* not in record evidence.  [Kraft Declr. ¶ 11; LaShelle Decl. ¶ 10 (referring only to one-page excerpt, but failing to produce evidence of the actual catalog from which the Catalog Screenshot was allegedly extracted).]

 If the Catalog Screenshot had been created in 1995, which was before the era of on-line shopping, then it necessarily would have been part of a *hard copy* catalog containing dozens, if not hundreds of pages. It is highly suspect that Defendant refused to produce a hard copy version of the purported 1995 catalog in its entirety and instead relied on a single composite screenshot that readily could have been fabricated in a Photoshop-type program in response to Plaintiff's lawsuit.  Even if Defendant did not have an actual hard copy of the entire catalog, it would presumably have a copy of the entire catalog in digital form (otherwise, the origins of the Catalog Screenshot are highly suspect and subject to challenge).

Indeed, at the time the Amended Complaint was filed, a cursory review of the Catalog Screenshot raised more questions than it answered about its authenticity.  Since the Catalog Screenshot had to have been extracted from a hard copy catalog, why didn't it depict frays on the lateral edge of the image?  Also, the graphic elements that are

superimposed over the underlying photograph of the design, particularly the "95 Fall Release" and "Crumrine" graphics, appear to be an afterthought rather than the product of a stylized layout that one would expect from a polished hard copy catalog.

Also, on the second page of Defendant's memorandum of law in support of sanctions, Defendant super-imposed five (5) red arrows over the Catalog Screenshot during the pendency of this lawsuit, ostensibly to show the Court which visual elements to emphasize. [Dkt. #42, p. 2] So there can be no dispute that the Catalog Screenshot is subject to modification through a computer program, particularly modification through super-imposition of graphic elements (which are the only elements which establish the date of the purported catalog excerpt).

But given that Defendant modified such key evidence through use of a photo-editing program *during the pendency of this action*, then it was certainly plausible at the time the Amended Complaint was filed that the Catalog Screenshot constituted nothing more than a wholesale fabrication via computer imaging, or was otherwise extracted from a more recent catalog dated sometime after 2002.

Finally, at the time the Amended Complaint was filed on April 13, 2020, Mr. Liebowitz reasonably expected that Plaintiff would have the opportunity to properly examine the purported authenticity of the Catalog Screenshot through depositions of key witnesses, or on cross-examination at trial.  As a result of the scant documentary evidence proffered by Defendant prior to the filing of the Amended Complaint on April 13, 2020, Mr. Liebowitz should not be sanctioned for signing the Amended Complaint.

**B.**     **Even After Defendant Filed its Summary Judgment Motion, Mr. Liebowitz Was Justified in Challenging the Authenticity of the Catalog Screenshot**

Although Defendant's Rule 11 motion is directed to Mr. Liebowitz's signing of the Amended Complaint in April 2020, it has also asked the Court to invoke its inherent power to sanction Mr. Liebowitz for alleged bad faith conduct.  Accordingly, it should be emphasized that Mr. Liebowitz's opposition to summary judgment was objectively reasonable on the same grounds as his filing of the Amended Complaint.

Defendant's evidence in support of summary judgment motion was based on interested declarations made by Defendant's longtime employees which, from Mr. Liebowitz's and Plaintiff's good faith perspective, raised further questions concerning the authenticity of the Catalog Screenshot.

Defendant claimed that the one-page Catalog Screenshot was authenticated on partial summary judgment by a declaration of an interested witness / longtime employee of Defendant, Jeanne Crumrine LaShelle. Given that the Court granted early summary judgment on the Buckle Claim before Plaintiff was afforded the opportunity to conduct the deposition of LaShelle, it remains plausible that the Catalog Screenshot was not created in 1995.

Indeed, LaShelle claims that the Catalog Screenshot was "an excerpt from the [fall 1995] catalog" and that she is "familiar with that catalog."  [LaShelle Declr. ¶ 10]  But then where is the catalog?  There is no hard evidence on record that such catalog exists because Defendant did not produce any catalog.  LaShelle also claims that she has a "2002 catalog." [LaShelle Declr. ¶ 11]  But once again, there is no documentary evidence on record that such catalog exists.

**POINT II:     MR. LIEBOWITZ HAD REASONABLE GROUNDS TO CONTEST
WHETHER DEFENDANT ACQUIRED THE ALLEGED CRUMRINE
BUCKLE BY WAY OF AN ASSET PURCHASE AGREEMENT THAT
FAILED TO SPECIFICALLY IDENTIFY THE WORKS AT ISSUE**

Defendant also claims that Mr. Liebowitz should have withdrawn the Buckle Claim after examining the Asset Purchase Agreement which, according to Defendant, purported to transfer ownership of the alleged Crumine design to Defendant.  [bate-stamped M&F000612-630] But the Asset Purchase Agreement, which Mr. Liebowit carefully examined, makes absolutely no mention of the alleged 1995 Crumrine Design.

Typically, where intellectual property assets are conveyed as part of an Asset Purchase Agreement, the transactional lawyers take care to identify the specific intellectual property assets which are subject to transfer.  But not here.  The Asset Purchase Agreement proffered to Mr. Liebowitz prior to the signing of the Amended Complaint is entirely silent with respect to the alleged 1995 Crumrine Design and instead only references intellectual property assets *in general.*

Moreover, Defendant presented no evidence to Mr. Liebowitz that the alleged 1995 design was ever registered with the U.S. Copyright office, lending further support to Mr. Liebowitz's good faith belief that the Asset Purchase Agreement, standing alone, was insufficient to establish the transfer of any copyright ownership to the alleged 1995 design. Mr. Liebowitz therefore harbored a reasonable belief, which would have been shared by any attorney in his position, that Defendant's acquisition of the alleged 1995 design transfer by way of an Asset Purchase Agreement, which failed to even identify such design, was properly subject to challenge through the discovery process.  Mr. Liebowitz did not act in bad faith by signing plaintiff's Amended Complaint, nor can his client's claim be deemed objectively unreasonable given that the evidence proffered by Defendant is so paper thin.

The fact that the Court found such pieces of evidence to be sufficient to establish Defendant's defense on a pre-discovery summary judgment motion does not render Plaintiff's Amended Complaint objectively unreasonable or improperly motivated, nor does it show that Mr. Liebowitz acted in bad faith by pressing his client's claim. The discovery process is designed to uncover flaws in the defenses and to contest whatever evidence is proffered in support of such defenses.

**POINT III:   GIVEN PLAINTIFF'S HISTORY OF CREATING WORLD-RENOWN BUCKLE DESIGNS, MR. LIEBOWITZ HAD REASONABLE GROUNDS TO ALLEGE INFRINGEMENT**

Mr. Liebowitz also avers that, based on his pre-filing investigation of Bob Berg and the previous lawsuit in which he was involved which details Mr. Berg's prior accolades in the field of belt buckle design, Mr. Liebowitz acted reasonably in asserting infringement claims on Mr. Berg's behalf.

Indeed, given the widespread popularity of Mr. Berg's designs in the United States during the 1990's and 2000's (and even in Australia during the 1980's), it is perfectly reasonable for Mr. Liebowitz to presume in good faith that many designers knocked off Mr. Berg's creations to capitalize on Mr. Berg's success.  Accordingly, it was plausible at the pleading stage that Defendant, as a manufacturer of similar belt buckle designs, expropriated Mr. Berg's designs to exploit Mr. Berg's success.

Finally, the notion that Mr. Berg's previous lawsuit did not emphasize the design elements at issue in this case does not foreclose Plaintiff's claims here nor render them objectively unreasonable.  The former lawsuit pitted Mr. Berg against his ex-wife, not against a competing manufacturer.

**POINT IV:    THE COURT SHOULD AWARD MR. LIEBOWITZ HIS FEES FOR HAVING TO OPPOSE DEFENDANT'S HARASSING MOTION**

Mr. Liebowitz respectfully requests that Defendant's sanctions motion should be denied in its entirety, that a bond should not be imposed as a condition to the disposition of Plaintiff's remaining claims, and that Mr. Liebowitz should be awarded his attorneys' fees for having to oppose this harassing motion. See Fed.R.Civ.P. 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.")

**CONCLUSION**

Based on the foregoing, Mr. Liebowitz respectfully request that Defendant's motion for sanctions should be DENIED in its entirety and this case should be allowed to proceed on the merits.  Further, the Court should award Mr. Liebowitz his attorneys' fees for defending against Defendant's frivolous motion, which is harassing and not well-founded.

Dated:  September 3, 2020
          Valley Stream, NY

/s/richardliebowitz/
Richard Liebowitz
LIEBOWITZ LAW FIRM, PLLC
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
516-233-1660
RL@LiebowitzLawFirm.com

*Attorneys for Plaintiff*