IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(TYLER DIVISION)

| | |
|---|---|
| ROBERT BERG,<br><br>                                Plaintiff,<br><br>  - against -<br><br>M&F WESTERN PRODUCTS, INC.<br><br>                                Defendant. | Docket No. 6:19-cv-00418-JDK |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
2D MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Plaintiff Robert Berg ("Plaintiff" or "Berg"), via counsel, respectfully submits this memorandum of law in opposition to Defendant M&F Western Products, Inc. ("Defendant")'s second motion for partial summary judgment on Plaintiff's remaining substantive claims.

     For the reasons more fully stated below, Defendant's motion should be denied because (a) Berg's designs are plainly original and subject to copyright protection, as already determined by a district court in the Southern District of Texas; and (b) Defendant's allegedly infringing works are strikingly similar to Berg's copyrighted Cross Designs, thereby obviating the need for proof of access. Even if the Court does not find striking similarity, the Court may conclude that Defendant had a reasonable opportunity to access Plaintiff's works given Berg's well-documented success in Texas during the 1990's and 2000's.

1

## PROCEDURAL BACKGROUND

- On September 14, 2019, Plaintiff filed his initial complaint against Defendant for copyright infringement. [Dkt. #1]

- On December 24, 2019, Defendant filed its answer. [Dkt. #3]

- On February 7, 2020, the Court entered a scheduling order which sets the fact discovery deadline as August 7, 2020 and a jury trial for January 19, 2021. [Dkt. #10] A revised scheduling order was entered on March 5, 2020 but the aforesaid fact discovery deadline and trial date remain the same [Dkt. #20]

- On April 13, 2020, Plaintiff filed his first amended complaint, alleging that Defendant infringed upon Plaintiff's jewelry designs, as registered in four separate copyright registrations. [Dkt. #23]

- On May 4, 2020, Defendant filed its answer to the amended complaint. [Dkt. # 24]

- On June 12, 2020, Defendant filed a motion for partial summary judgment to dispose of one of the copyrighted designs asserted by Plaintiff under Registration No. VA 1-159-548, with effective date of July 26, 2002 (the "548 Registration").

- On July 21, 2020, the Court granted Defendant's motion for partial summary judgment with respect to Plaintiff's designs registered as part of the 548 Registration. [Dkt. #37]

- On July 23, 2020, the Court extended the fact discovery deadline to September 21, 2020. [Dkt. # 39]

- On August 18, 2020, Defendant filed a second motion for partial summary judgment to dispose of Plaintiff's remaining claims asserted by Plaintiff.

## STATEMENT OF FACTS

Plaintiff Robert Berg, a native of Australia, is a professional jewelry designer who currently resides in Vietnam. Currently, Berg is unable to travel to the United States due to visa issues. [Amended Complaint, Dkt. #23 ("Am. Compl."), ¶ 5]

In the late 1970s, Berg was a rodeo performer and silversmith in Australia who began designing and selling western jewelry. [Am. Compl. ¶ 7] After an injury ended his rodeo career, Berg expanded his jewelry business. Although he focused on belt buckles, he also began to design, produce, and sell western- style rings, necklaces, bracelets, conchos, spurs, knives, and three-piece buckle sets. [Am. Compl. ¶ 8] In 1993, Berg moved to Bandera, Texas, to pursue the western jewelry market in the United States. Berg continued to design jewelry and buckles which have a distinctive "look" consisting of the following original elements: black background, the use of "tri-color" (red, green, and yellow) gold; a layer of scrollwork with a vine design, a layer of leaves, and a third layer of flowers; and, when edged, use of a raised silver edge with large tapered beads. Hand-cut and soldered scrollwork and lettering characterize Bob Berg designs. Berg initiated the technique of stacking tri-color gold to achieve a three-dimensional look in his buckles and jewelry. [Am. Compl. ¶ 9]

By 2000, Berg's jewelry designs had become well-known in the United States and Texas. For example, he was asked to design the trophy cup for the world championship professional bull riding competition. He also built championship buckles for prominent rodeo committees across the United States and supplied buckles to the champions of the Australian Pro Rodeo Association for over two decades. [Am. Compl. ¶ 10]

Between 2000 and 2003, Berg created original designs consisting of Western-styled jewelry and belt buckles that are the subject of this lawsuit (collectively the "Designs"). [Am.

3

Compl. ¶ 11] A true and correct copy of some of the Designs are attached as Exhibit A to the Amended Complaint [Dkt. #23-1]

In 2000, Berg created a stylized and intricate design of a cross with angular corners (the "Angular Cross") and registered it with the U.S. Copyright Office under No. VA 1-091-617, with effective date of June 12, 2000 (the "617 Registration"). A true and correct copy of the 617 Registration, as maintained by the U.S. Copyright Office's website, is attached to the Amended Complaint as Exhibit B.

In 2002, Berg created a stylized and intricate design for an oval belt buckle (the "Oval Buckle") and registered it with the U.S. Copyright Office under No. VA 1-159- 548, with effective date of July 26, 2002 (the "548 Registration"). [Am. Compl. ¶ 13] A true and correct copy of the 548 Registration, as maintained by the U.S. Copyright Office's website, is attached as Exhibit C to the Amended Complaint [Dkt. #23-3]

In 2002, Berg created a stylized and intricate design for a rectangular belt buckle (the "Rectangular Buckle") and registered it with the U.S. Copyright Office under No. VA 1-159-548, with effective date of July 26, 2002. [Am. Compl. ¶ 14; Dkt. #23-3] Berg is the author of the Designs and has at all times been the sole owner of all right, title and interest in and to the Designs, including the copyright thereto. [Am. Compl. ¶ 16]

In 2003, Berg created a stylized and intricate design for a cross with linear corners (the "Linear Cross") and registered it with the U.S. Copyright Office under No. VA 1-229-288, with effective date of August 29, 2003 (the "288 Registration"). A true and correct copy of the 288 Registration, as maintained by the U.S. Copyright Office's website, is attached as Exhibit D to the Amended Complaint. [The Linear Cross and the Angular Cross shall be collectively referred to herein as the "Cross Designs"]

In or about 2005, after Berg's works were registered, a third-party individual named Gary Ballenger gained access to Berg's copyrighted molds and then distributed them to Defendant's without Berg's knowledge or authorization. [Am. Compl. ¶ 18]

In 2005 or thereafter, M & F created their own products copying the Designs for their products and mass producing them. [Am. Compl. ¶ 18] Some examples are attached as Exhibit A to the Amended Complaint [Dkt. #23-1].

## **LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the court views the facts in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a proper motion for summary judgment is made, the nonmovant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At that moment, the court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if "the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor," the motion for summary judgment must be denied. *Id.*

**ARGUMENT**

**POINT I:   AS A MATTER OF LAW, PLAINTIFF'S COPYRIGHTED DESIGNS AND ARRANGEMENTS OF DISTINCTIVE ELEMENTS IN STYLIZED CROSSES ARE COPYRIGHTABLE**

Defendant argues that Plaintiff's asserted copyrights in the Cross Designs are not protectable under U.S. copyright law on grounds that (a) the elements of Berg's designs, including tapered beads, can never be subject to copyright protection because they are simple shapes; and (b) Defendant's experts and interested party witnesses claim that use of tapered beads on jewelry and belt buckles preceded the year 2000, the date of Berg's earliest registration in this case.

**A.   PLAINTIFF'S ARRANGEMENT AND LAYOUT OF COMMON DESIGN ELEMENTS ARE SUFFICIENTLY ORIGINAL TO WARRANT COPYRIGHT PROTECTION**

Defendant's first legal argument challenges the originality of Plaintiff's Cross Designs. Defendant contends that because the elements used by Plaintiff in the Cross Designs are "common," they must lack the requisite originality to qualify for copyright protection.

"The true touchstone of copyrightability is originality." *Compaq Computer Corp. v. Ergonome, Inc.,* 137 F. Supp. 2d 768, 772–73 (S.D. Tex. 2001) (citing *Kamar Intern., Inc. v. Russ Berrie and Co.,* 657 F.2d 1059, 1061 (9th Cir.1981) ("Originality is the indispensable prerequisite for copyrightability."). The Supreme Court has held that "the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be." *See Feist Publications, Inc. v. Rural Telephone Service Co., Inc.,* 499 U.S. 340, 345 (1991). The level of creativity necessary and sufficient for

copyrightability has historically been described as "very slight," "minimal," and "modest." *Thomas Wilson & Co. v. Irving J. Dorfman Co.,* 433 F.2d 409, 411 (2d Cir.1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1200, 28 L.Ed.2d 326 (1971); 1 M. NIMMER & D. NIMMER, NIMMER ON COPYRIGHT §§ 1.08[C] [1], 2.01[B][1] (1989).

"[O]riginality may be found in taking the commonplace and making it into a new combination or arrangement." *United States v. Hamilton,* 583 F.2d 448, 451 (9th Cir.1978). Component parts "neither original to the plaintiff nor copyrightable" may, in combination, create a "separate entity [that] is both original and copyrightable." *Apple Barrel Prods., Inc. v. Beard,* 730 F.2d 384, 388 (5th Cir.1984); *see also Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir.1994) (finding that a combination of unprotectable elements may qualify for copyright protection).

Even simple shapes, when selected or combined in a distinctive manner, may be subject to copyright protection. *See, e,.g, Atari Games Corp. v. Oman*, 888 F.2d 878, 883–84 (D.C. Cir. 1989) ("we note that simple shapes, when selected or combined in a distinctive manner indicating some ingenuity, have been accorded copyright protection both by the Register and in court"); *Tennessee Fabricating Co. v. Moultrie Mfg. Co.*, 421 F.2d 279, 282 (5th Cir.) (holding that filigree pattern of intercepting straight and arc lines "possessed at least the minimal degree of creativity required for a copyright"), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1819, 26 L.Ed.2d 91 (1970); *Reader's Digest Assoc., Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 806 (D.C.Cir.1987) (the particular layout in a magazine's cover is entitled to copyright protection as a graphic work even when none of the individual elements are themselves protectible; where plaintiff "has combined and arranged common forms to create a unique graphic design and layout[,]" "the distinctive arrangement and layout . . . is entitled to protection as a graphic

7

work."); *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,* 490 F.2d 1092, 1094 (2d Cir.1974) (concluding that fabric design consisting of strip of crescents with scalloping or ribbons and rows of semicircles "constitutes modest but sufficient originality so as to support the copyright"); *Concord Fabrics, Inc. v. Marcus Bros. Textile Corp.,* 409 F.2d 1315, 1316 (2d Cir.1969) (treating as subject to copyright protection fabric design consisting of a circle within a square within a circle); *In Design v. Lynch Knitting Mills, Inc.,* 689 F.Supp. 176, 178–79 (S.D.N.Y.) (upholding copyright of rhomboid pattern on a sweater), *aff'd,* 863 F.2d 45 (2d Cir.1988); *Blehm v. Jacobs*, 702 F.3d 1193, 1202 (10th Cir. 2012) (holding that a sweater designer can have copyright protection over an original way of using squirrels as a design element in conjunction with fall colors, stripes, and panels, even though those elements individually constitute ideas in the public domain).

Here, Plaintiff claims originality to the distinctive "Bob Berg look", which a district court in the Southern District of Texas has already determined to be original and subject to copyright protection. *See Berg v. Symons*, 393 F. Supp. 2d 525, 532 (S.D. Tex. 2005). The "Bob Berg look" includes the arrangement and layout of a raised silver edge with large tapered beads, black background, the use of "tri-color" (red, green, and yellow) gold; a layer of scrollwork with a vine design, a layer of leaves, and a third layer of flowers.

> Berg testified that in addition to copyrights of specific designs, his jewelry and buckles have a distinctive "look" that consists of the following elements: black background, the use of "tri-color" (red, green, and yellow) gold; a layer of scrollwork with a vine design, a layer of leaves, and a third layer of flowers; and, when edged, use of a raised silver edge with large tapered beads. Berg testified that the presence of a colored stone in the middle of the flowers is not a distinctive element of his work. He also agreed that not all his pieces use an edge. Berg was not the first to use a black background, more than one color gold, or vine and leaf scrollwork, or to place beads on the edge of a buckle or piece of jewelry. Berg contended, however, that the combination of these pieces was distinctive and had become uniquely associated with the "Bob Berg look."

8

*Berg v. Symons*, 393 F. Supp. 2d 525, 532 (S.D. Tex. 2005).

Here, as was the case in *Berg v. Symons*, Plaintiff has used the Bob Berg look in conjunction with stylized crosses, which are unique to Berg's designs. Accordingly, Defendant is collaterally estopped from arguing that Berg's designs are not sufficiently original to qualify for copyright protection as a matter of law. The issue has already been decided.

Relying on Plaintiff's initial responses to Defendant's first set of interrogatories, Defendant argues that "Berg does not claim a unique combination of elements in his design, rather he claims only that the tapered beads are his protectable design element." [Dkt. #41, p. 11 of 18] Defendant misconstrues Plaintiff's answers to Defendant's interrogatories. Such answers implicitly include the arrangement and layout of the round tapered beads because they refer to the "size" of the beads, as well as the "clusters" and number of beads used in conjunction with the Cross Designs protected by the 617 and 288 Registrations. [Dkt. #41-1, p. 11 of 189][1]

Defendant's reliance on *Berg v. Symons*, 393 F.Supp. 2d. 525, 532 (S.D. Tex. 2005) to claim that tapered beads are not protectable is unavailing. Berg is not here claiming that he was the first to place beads on the edge of any piece of jewelry. But his unique

---

[1] Moreover, fact discovery does not conclude until September 21, 2020. Plaintiff may amend or supplement his interrogatories pursuant to Rule 26(e) of the Federal Rules of Civil Procedure at any point before September 21, 2020 to correct any alleged deficiencies in his responses. Defendant could have waited until after the conclusion of fact discovery to file its motion for partial summary judgment, as is the case in 99.9% of other cases in federal court. However, in order to handicap Plaintiff's opposition by stonewalling depositions, Defendant elected to prematurely file a partial summary judgment motion before the conclusion of fact discovery.

9

arrangement and layout of beads in conjunction with the Cross Designs, along with the other elements cited above, is unique to Berg and therefore meets the minimum threshold of originality necessary to warrant copyright protection.

**B.      The Alleged Fact That Certain Design Elements Were Used Prior to Berg's Registrations Does Not Render his Protected Works Lacking of Originality**

Defendant next argues that "numerous individuals from the Industry have attested to using tapered beads before the Cross Registrations." (citing Hugh Weaver, Chad Gist of Gist Silversmiths, Inc., LaShelle Crumrine formerly of Crumrine Manufacturing Jewelry Inc. and Defendant's Cary Kraft). [Dkt. # 41, pp. 12-14 of 18]

As a threshold matter, Defendant has failed to present any evidence that Weaver, Gist, Crumrine, 3-D Belt or Defendant ever registered their alleged designs with the U.S. Copyright Office.  Indeed, Weaver, Gist, M&F and 3-D Belt did not apply for copyright registration in *any* jewelry design of *any* kind until the year 2004 or later, several years after Berg registered the Cross Designs.

As for Crumrine, it has only ever registered four designs during the course of its long existence.  The Court should presume that none of Crumrine's registered designs featured a Cross Design with clustered tapered beads.  Had such registered design existed, defense counsel would have certainly brought it to the Court's attention.

| Copyright Owner | # of Copyright Registrations | Registration Date Range | Cite |
|---|---|---|---|
| **Hugh Weaver** | 3 | 2006-2008 | Liebowitz Declr., Ex. A |
| **Gist Silversmiths** | 9 | 2009-2015 | Liebowitz Declr., Ex. B |
| **Crumrine Manufacturing Jewelers, Inc**. | 4 | 1978-1998 | Liebowitz Declr. Ex. C |

| | | | |
|---|---|---|---|
| **M&F Western** | 14 | 2008-2014 | Liebowitz Declr. Ex. D |
| **3-D Belt Company, Inc.** | 8 | 2004-2006 | Liebowitz Declr. Ex. E |

Therefore, the self-serving declarations by Defendant and Berg's third-party competitors that they may have used tapered bead designs on their jewelry at some point prior to 2000 should be taken with a grain of salt.  None of these third party competitors registered such alleged designs until 2004 or later, raising questions as to whether they just didn't rip off Berg's designs, given the widespread popularity of Berg's work.

Moreover, Defendant has not cited any caselaw holding that use of common design elements somehow forecloses the copyrightability of the Cross Designs. As set forth in Point I.A., *supra*, simple or common shapes may claim copyright protection where they are arranged and coordinated in a unique way. *Tennessee Fabricating Co.* 421 F.2d at 282; *Atari Games Corp.*, 888 F.2d at 883–84.

For the reasons set forth above, the Court may determine as a matter of law that the Cross Designs are subject to copyright protection.  If the Court determines that such matters cannot be determined as a matter of law, then the issue should be reserved for trial.

**POINT II:**  **AS A MATTER OF LAW, M&F WESTERN'S INFRINGING DESIGNS ARE "STRIKINGLY SIMILAR" TO BERG'S CROSS DESIGNS**

Defendant claims that Plaintiff has failed to meet his burden of showing actionable copying because he has not provided evidence of access. Defendant also claims that the "3-D Rope Design predated M&F Western's acquisition of 3-D." [Dkt. # 41, p. 16 of 18]  As illustrated below, Defendant's arguments should be rejected.

11

"In order to establish copyright infringement, a plaintiff must prove (1) his ownership of the copyright and (2) "copying" by the defendant or person who composed the defendant's work." *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978). "Since there is seldom direct evidence of 'copying,' the plaintiff generally proves this element by showing that the person who composed the defendant's work had access to the copyrighted work and that the defendant's work is substantially similar to the plaintiff's." *Id.*; *see also Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 394–95 (5th Cir. 2001) ("To determine access, the court considers whether the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work.")

However, "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access." *Ferguson*, 584 F.2d at 113 (citing *Donald v. Zack Meyer's T. V. Sales & Service*, 426 F.2d 1027 (5th Cir. 1970), Cert. denied, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971)).

Here, Plaintiff alleges three separate infringements of the Cross Designs as shown below.

| M&F WESTERN PRODUCTS INC. | COPYRIGHT | VA |
|---|---|---|
| | | COPY OF DEPOSIT VA 1-091-617 |

  
  

A side-by-side comparison of Berg's works (on the right) to M&F's infringing works (on the left) shows that they are *strikingly similar* as a matter of law. M&F's designs could not have been independently created, as Defendant claims.

Even if the Court finds that the designs are not strikingly similar, M&F had a reasonable opportunity to view Berg's works. Defendant has consistently cited the case of *Berg v. Symons*, 393 F.Supp. 2d. 525 (S.D. Tex. 2005), where Plaintiff served as plaintiff against his ex-wife. There, Judge Rosenthal provided a fairly comprehensive factual history of Berg's impact on the U.S.-based belt buckle industry in the mid-1990's and early 2000's.

13

> In 1993, Berg and Symons moved to Bandera, Texas, to pursue the western jewelry market in the United States. Symons helped run the office, which was located next to the couple's house. They advertised and sold the jewelry and buckles using the names "Bob Berg Silverdales" and "Bob Berg Buckles." They hired independent contractors to sell the jewelry and buckles at trade shows and rodeos. Although some sales were made on the Internet, the couple primarily marketed the jewelry and buckles through direct sales at shows held in conjunction with rodeos and through contracts with rodeo associations.

*Berg*, 393 F. Supp. 2d at 532. Judge Rosenthal also described how Berg's business became "successful" in the mid-1990's and early 2000's.

> The Berg–Symons jewelry business was successful. In 2000, Berg designed the trophy cup for the world championship professional bull riding competition. In an advertisement displaying the trophy cup, Berg and his work were described as follows:
>
> A distinctive craftsman of Western buckles and jewelry, Australian native Bob Berg has separated his art from others in the Western market with his revolutionary techniques and singular designs. Cowboy, artist, and entrepreneur, Berg, who hangs his hat in Bandera, Texas, was asked to create an updated version of the Bud Light Cup trophy to honor PBR world champions in the coming years. Knowledge, experience and artistic energy inspired Berg's work on both the new cup and the 2000 world championship buckle

*Berg*, 393 F. Supp. 2d at 532–33.

Plainly, given that Berg's designs were widely disseminated and popular in Texas during the 1990's and 2000's, a reasonable jury could conclude that Defendant (and its alleged predecessors-in-interest), who market themselves as purveyors in Berg's industry, had a reasonable opportunity to view Berg's designs and expropriate them. *See Art Attacks Ink, LLC v. MGA Entm't Inc.,* 581 F.3d 1138, 1143–44 (9th Cir.2009) ("[C]ircumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated."); *but see Guzman v. Hacienda Records & Recording Studio, Inc.,* 808 F.3d 1031, 1038 (5th Cir.

2015) (declining to adopt the 9th Circuit's "widely disseminated" theory based on the facts before it, but not rejecting such theory).

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that Defendant's motion for partial summary judgment be DENIED in its entirety.

Dated: September 8, 2020
       Valley Stream, NY

                                         **/s/richardliebowitz/**
                                         Richard Liebowitz
                                         LIEBOWITZ LAW FIRM, PLLC
                                         11 Sunrise Plaza, Suite 305
                                         Valley Stream, NY 11580
                                         516-233-1660
                                         RL@LiebowitzLawFirm.com

                                         *Attorneys for Plaintiff Robert Berg*