IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
(TYLER DIVISION)

|  |  |
|---|---|
| ROBERT BERG,<br><br>                              Plaintiff,<br><br>        - against -<br><br><br>M&F WESTERN PRODUCTS, INC.<br><br>                              Defendant. | Docket No. 6:19-cv-00418-JDK |

PLAINTIFF'S SUPPLEMENTAL RESPONSE IN FURTHER OPPOSITION TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Robert Berg (Plaintiff"), via counsel, respectfully submits this response in

further opposition to Defendant M&F Western Products, Inc. ("Defendant" or "M&F")'s second

motion for partial summary judgment [Dkt. #41] and in compliance with the Court's order, dated

November 1, 2020, which provides that Plaintiff may supplement his response to Defendant's

pending motion "to include relevant factual evidence discovered between the original filing and

the November 13, 2020 fact discovery deadline" but not to exceed ten pages [Dkt. #64] (the

"Order").

OVERVIEW

Subsequent to the Order, Plaintiff produced 3,269 pages of responsive documents

obtained from Plaintiff's former counsel, deposed three of M&F's fact witnesses and served Rule

26(e) supplemental responses to Defendant's first set of interrogatories.

Some of the relevant facts to have emerged from this discovery are as follows:

1)        During the 1990's and early 2000's, Berg was a well-known designer in the Western-style jewelry industry in Texas (the "Industry") who created custom, handmade designs for the "high end" or luxury market, priced out in the hundreds of dollars.  M&F and Crumrine, in contrast, marketed its designs to low-budget retail outlets for about $30 a piece and did not do any custom work.

2)        M&F's witnesses were familiar with Bob Berg and his work dating back for decades, and saw his designs at Industry trade shows.  M&F's Cary Kraft, who has worked as a contract designer for M&F for over twenty years, testified that he found Berg's works "interesting", that he respected him and wanted Berg to create his designs for him. However, M&F did not consider Berg a competitor because he occupied the high-end custom market whereas M&F distributed to lower-end retail outlets as "replenishment".

3)        Kraft conceded that although most Western-style jewelry designers use the same "common elements," each design is unique and bears a distinct look.  Kraft also acknowledged that he was himself once victim to infringement, that copying in the Industry is rampant and that copyright infringers should be prosecuted to the full extent of the law.

4)        M&F's Paul Eddins acknowledged that although there are standard common elements in Western-style jewelry, there are also unique and distinctive designs or arrangements that need to be evaluated on a "case-by-case" basis.

5)        Eddins testified that M&F has over 20,000 SKU items for sale and that it does not typically register copyrights to its designs because it would be "cumbersome."

6)        LaShelle has yet to produce an original copy of the 1995 Crumrine catalog, the key piece of evidence upon which the Court decided Defendant's first summary judgment motion.

## I.    SUMMARY OF ADDITIONAL DOCUMENTS PRODUCED

On October 8, 2020, Plaintiff submitted a sworn declaration to the Court indicating that Plaintiff's former counsel, Jackson Walker LLP, was in the process of transferring files to Plaintiff's counsel of record relating to the matter of *Berg v. Symons*, No. Civ.A 03-2683 (S.D. Texas, Hosuton Div.) and that Plaintiff would produce such documents to Defendant upon receipt. [Dkt. #53, ¶ 8]

On November 13, 2020, consistent with his representations to the Court, Plaintiff produced to Defendant an additional 3,219 pages of documents which were obtained from Jackson Walker.

Some of the key documents produced include:

• Photographs and other graphic representations of Berg's designs dating back to 1994.



• A Bob Berg Buckles Catalog showing his belt buckles priced at between $445.00 and $685.00, and cross pendants priced at between $99.00 and $245.00.



- A color version of Berg's cross pendent covered by the 671 Registration.

| Berg's Design (Original) | M&F Design (Kraft) | M&F Design (3-D Rope) |
| --- | --- | --- |
|  | | |

- Documents consisting of cease and desist letters showing that copyright infringement of Berg's designs was rampant in the 1990's and early 2000's (as it is now).

## II.    SUMMARY OF PLAINTIFF'S RULE 26(e) SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES

On November 10, 2020 Plaintiff served verified supplemental responses to Defendant's first set of interrogatories pursuant to Fed.R.Civ.P. 26(e).  For purposes relevant to the pending

motion for summary judgment, Plaintiff's responses to Interrogatories Nos. 2 and 3 are as

follows:

> Interrogatory No. 2: *Please identify the basis for claiming copyright protection in Plaintiff's asserted cross design that is the subject of Copyright Registration VA 1-091-617 and is identified in Exhibit A to the Amended Complaint, including identifying the specific design elements that you claim are protected by copyright, the date you created the design, and the date you first published the design.*

**Answer to Interrogatory No. 2**: The protected elements include the combination,

selection and arrangement of unique and distinctive jewelry designs consisting of black

background, the use of "tri-color" (red, green, and yellow) gold; a layer of scrollwork

with a vine design, a layer of leaves, and a third layer of flowers; and, when edged, use

of a raised silver edge with three-to- five large tapered beads at the compass points.

Hand-cut and soldered scrollwork and lettering also characterize Bob Berg designs.

Berg also initiated the technique of stacking tri-color gold to achieve a three-

dimensional look in his buckles and jewelry (collectively the "Bob Berg Look").

Plaintiff created the Bob Berg Look in the late 1980's and began incorporating these

elements into his designs in or about 1992.

> Interrogatory No. 3: *Please identify the basis for claiming copyright protection in Plaintiff's cross design that is the subject of Copyright Registration VA 1-229-288 and is identified in Exhibit A to the Amended Complaint, including identifying the specific design elements that you claim are protected by copyright, the date you created the design, and the date you first published the design.*

**Answer to Interrogatory No. 3:** The protected elements include the combination,

selection and arrangement of unique and distinctive jewelry designs consisting of black

background, the use of "tri-color" (red, green, and yellow) gold; a layer of scrollwork

with a vine design, a layer of leaves, and a third layer of flowers; and, when edged, use of a raised silver edge with three-to- five large tapered beads at the compass points. Hand-cut and soldered scrollwork and lettering also characterize Bob Berg designs. Berg also initiated the technique of stacking tri-color gold to achieve a three-dimensional look in his buckles and jewelry (collectively the "Bob Berg Look"). Plaintiff created the Bob Berg Look in the late 1980's and began incorporating these elements into his designs in or about 1992.

III.    SUMMARY OF DEPOSITION TRANSCRIPTS

Pursuant to the Order, Plaintiff deposed three of M&F Western's fact witnesses for no more than three hours each witness.  Below please find a summary of the key testimony.

A.    Cary Kraft (Nov. 5, 2020)

• Kraft began working as an exclusive  contract designer for M&F in 2002.  [Kraft Tr. 18:9-19]

• Kraft looks at trade magazines and visits trade shows as inspiration to create his own designs.  [Kraft Tr. 31:10-32-5]

• Kraft has been visiting trade shows for over 30 years and testified that Berg "always had a booth there I believe" [Kraft Tr. 38:12-13] The first time Kraft saw Berg's designs at trade shows was either in the 1990's or early 2000's.  [Kraft Tr. 41:15-25]

• Kraft found Berg's designs "interesting", regarded Berg as a "contemporary" and testified that "I respect him."  Kraft also testified that Berg was an "over the top designer" who was "going after a high-end custom market." [Kraft Tr. 44:2-24]

- Kraft also testified that "the only thing I would have been interested in would be to work cooperatively" with Berg and to have Berg "create my designs, my models for me from my designs" [Kraft Tr. 54:8-15]

- When asked what made Kraft's designs unique, he testified that "they have subtle distinctions that are different.  But you know in general they have a general look that's fairly common." [Kraft Tr. 61:15-20]

- Kraft testified that his cross designs are "very similar to a lot of other crosses that's out there in the industry" but that his designs are created from his "own specific line art which is unique."  [Kraft Tr. 64:6-14] Kraft stated that he would use other designs as inspiration if he found them "attractive."  [Kraft Tr. 74:3-8]

- Kraft visited Gary Bellinger's factory in Mexico multiple times.  [Kraft Tr. 96:14-21]

- Kraft was himself a victim of copyright infringement and involved in a lawsuit.  When asked how the alleged infringer got a hold of his designs, he said that "You know it's just in the market.  It was basically if you wanted to get an M&F design, all you have to do is go to the store and buy one." [Kraft Tr. 113:19-114:6] When asked how he feels about being infringed, Kraft testified that "It doesn't feel good if you feel you have been knocked off or that your design has been adopted.  You know somebody makes something similar, that's one thing.  But if someone absolutely reproduces your piece, then that's a whole other story.  That's just – that's – that's really bad.  That's intolerable and, yes, that should be prosecuted, sop." [Kraft tr. 115:19-116:3]

### B.     Paul Eddins (Nov. 4, 2020)

- M&F Western does not produce custom designs, but is a "replenishment company: which sells items over a long period of time. [Eddins Tr. 26:4-12] M& F Western has "over twenty thousands SKUs" in its line. [Eddins Tr. 28:20-25]

7

- Eddins is familiar with Gary Bellinger, communicates with him about this case, and visited his factory in the mid 90's.  [Eddins Tr. 36:6-12; 38:12-16]

- Eddins believes that "[t]here's lots of things in the industry that everybody does, like graduated beaded edges, black enamel, multicolored gold, various western shapes and scrollwork. These are all standard items in the industry that everybody uses a similar type of item." [Eddins Tr. 42:13-20]  However, he concedes that a single element, such as a type of leaf, could be "unique and different" on a design. [Eddins Tr. 43:2-5]

- Eddins also acknowledges that, despite the common elements used in the Industry, "most of [M&F Western's] items would be unique and they have certain elements to them that would be different" and that, for example, they "may have their own scrollwork that looks different than everybody else's scrollwork, the shape maybe slightly different" and that there are "[m]any different types of flowers, many arrangements for flowers."  [Eddins Tr. 44:19-45:10]  The "engraving" may also render a work distinctive. [Eddins Tr. 55:14-16] Eddins also testified that any distinctions between designs should be viewed "on a case by case basis." [Eddins 49:12-]

- Eddins testified that, with limited exception, M&F Western does not register its designs with the Copyright Office because "it would be cumbersome if we tried to register every one of them. [Eddins Tr. 62:18-23]

- Kraft created the M&F cross item no. 32110 in the year 2015 [Eddins Tr. 73:1025]

- Eddins admits that M&F's asset purchase agreement with 3D Belt Company, dated in December 2018, does not list the specific intellectual property assets acquired by M&F, but only generically refers to intellectual property.  [Eddins Tr. 85:25-86:19]

• Eddins was likely familiar with Berg's designs in the 90's or 2000's because the "industry is relatively small." [Eddins Tr. 92:12-20] However, he later qualified this by stating "Maybe in the 2000's, I don't know. [Eddins Tr. 96:9-10]

• Eddins testifies that M&F's business model is different from Berg who does custom rather than western retail. [Eddins Tr. 97:17-23]

### C.    Jeanne La Shelle (Nov. 6, 2020)

• LaShelle admitted that she had seen Berg's designs before  [LaShelle Tr. 27:12-13]; that she had possibly seen Berg's display booth at trade shows. [LaShelle Tr. 28:4-7]; and she correctly believed (though was not sure) that Berg had arrived in Texas in 1993.  [LaShelle Tr. 33:9-14]  Specifically, LaShelle saw Berg's large trophy design, which is depicted on RM_0921 (shown on page 3), which includes a 1994 belt buckle design. [LaShelle Tr. 27:14-20]

• LaShelle knew that Berg "was competing mostly in the trophy business where he was making a high-end buckle for rodeos." [LaShelle Tr. 33:23-24]  In contrast, Crumrine's jewelry was in the "thirty-dollar range." [LaShelle Tr. 35:2-3]

• LaShelle testified that "[a]ll of the elements that were on buckles were ones that were, generally, used in the marketplace by everybody" but that Berg's designs were more expensive or "high-end" because "he was a hand fabricator." [LaShelle Tr. 37:17-23]

• LaShelle did not create her own declaration submitted in support of Defendants' summary judgment.  [LaShelle Tr. 106:16-18]

• LaShelle has yet to produce an original copy of the 1995 Crumrine catalog, the key piece of evidence upon which the Court decided Defendant's first summary judgment motion.  [LaShelle Tr. 107:16-108:18]

In sum, Plaintiff respectfully requests leave of Court to file the relevant deposition transcript pages, as well as key documents produced subsequent to the Order as part of declarations.

Dated: November 17, 2020
       Valley Stream, NY                               Respectfully submitted:

                                        **/s/richardliebowitz/**
                                        Richard Liebowitz
                                        LIEBOWITZ LAW FIRM, PLLC
                                        11 Sunrise Plaza, Suite 305
                                        Valley Stream, NY 11580
                                        516-233-1660
                                        RL@LiebowitzLawFirm.com

                                        *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Richard Liebowitz, hereby certify that a true and correct copy of the foregoing was served on all counsel of record via CM/ECF on November 17, 2020.

/s/richardliebowitz/
Richard Liebowitz