IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ROBERT BERG, | § | |
| Plaintiff | § | |
| vs. | § | Case No. 6:19-cv-418-JDK |
| | § | |
| M&F WESTERN PRODUCTS, INC., | § | |
| Defendant. | § | |

## M&F WESTERN'S OMNIBUS MOTIONS IN LIMINE

Pursuant to Local Rule CV-7(a)(2), the Court's Scheduling Order (Dkt. 20), and the Federal Rules of Evidence, M&F Western moves the Court to grant M&F Western's Omnibus Motions in Limine (the "Motion") and exclude any reference to the issues below. M&F Western met and conferred with opposing counsel regarding its Motions in Limine on November 23-24, and Plaintiff has indicated that it opposes Motions in Limine Nos. 1-13 and 16-17 and that it does not oppose Motions in Limine Nos. 14-15.

1. **MIL No. 1: All References to Hugh Weaver's Participation as M&F Western's Expert Witness or His Withdrawal from the Case Should Be Excluded**

    M&F Western retained Hugh Weaver as its expert in this case, however, he withdrew and will not participate at the trial. M&F Western will not introduce his Expert Report at trial or otherwise rely on his testimony, thus, there is no probative value to any references to Mr. Weaver or his withdrawal from the case, and even if there were, any such value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and/or the risk of misleading the jury. Fed. R. Evid. 402, 403.

2. **MIL No. 2: All References to M&F Western Not Having Copyright Registrations in its Own Designs Should Be Excluded**

    Plaintiff has repeatedly and erroneously argued in this case that the fact that M&F Western does not own copyright registrations in the accused designs means that M&F Western did not have rights in its own designs. For example, Plaintiff made this erroneous argument in support of his response to M&F Western's Motion for Partial Summary Judgment regarding the Buckle Registration (Dkt. 30 at p. 11) as well as in his response to M&F Western's Motion for Partial Summary Judgment regarding the Cross Registrations (Dkt. 47 at p. 10). As the Court has already recognized, "[R]egistration is not a condition of copyright protection." (Dkt. 37 at p. 8 citing *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 891 (2019); *see*

17 U.S.C. §§ 102, 408(a); *Diamondback Indus., Inc. v. Repeat Precision, LLC*, No. 4:18-CV-902-A, 2019 WL 5842756, at *2 (N.D. Tex. Nov. 7, 2019) ("[C]opyright owner's exclusive rights vest at the time of the creation of the work . . . even if registration has not occurred."). Moreover, M&F Western's copyright status is completely irrelevant to the issue of whether its crosses were independently created.

Plaintiff should be precluded from questioning M&F Western's witnesses at trial regarding whether the accused designs were registered with the Copyright Office and from making any arguments suggesting that because M&F Western does not own federal copyright registrations covering the accused designs the designs infringe. Any such arguments are likely to confuse and mislead the jury and are incorrect as a matter of law and must be excluded. Fed. R. Evid. 402, 403; *see Broker Genius Inc. v. Gainor*, 810 F. App'x 27, 33 (2d Cir. 2020) (affirming district court's exclusion of evidence regarding rejected patent application on basis that its probative value was "almost nil" and it presented "significant danger of confusing the issues, misleading the jury, and causing undue delay").

3. **MIL No. 3: All References to the 3-D Asset Purchase Agreement Not Transferring Rights to M&F Western Should Be Excluded**

Plaintiff accuses the following design of infringing copyright VA 1-091-617: M&F Western acquired this design from 3-D Buckle Company L.P. ("3-D") pursuant to an Asset Purchase Agreement, as M&F Western has explained in its Cross MSJ and as supported by the declarations of Paul Eddins and Steve Dees. (Dkt. 41, Cross MSJ at n. 10; Dkt. 41-1 at Exhibit 6, Dees Decl. at ¶¶ 3-5 and Exhibit A thereto; Dkt. 41-1 at Exhibit 9, Eddins Aug. Decl. at ¶¶ 4-7.) In particular, the Asset Purchase Agreement explicitly states that M&F Western acquired the rights in all "copyrights, including all applications and registrations, and works of authorship, whether or not copyrightable" (Dkt. 41-1 at Exhibit 6, Dees Declaration at Exhibit A at Section 1.01(d)) and that "[t]he Intellectual Property Assets constitute all of the registered and unregistered intellectual property owned by the Company" (*id.* at Section 3.06(a)). The Court has already rejected Plaintiff's incorrect argument that in order to transfer rights in intellectual property via an asset purchase agreement, it is necessary to itemize those assets specifically in the agreement. (Dkt. 37 at pp. 8-9.)

The Court should preclude the Plaintiff from making any such argument before the jury because it is legally incorrect, is a waste of time, and any probative value (of which there is none) is substantially outweighed by the potential for confusing and misleading the jury to believe M&F Western did not acquire rights to the design and would be unfairly prejudicial to M&F Western. Fed. R. Evid. 402, 403.

**4. MIL No. 4: Any Reference to Willful Infringement by Defendants Should Be Excluded**

Plaintiff claims M&F Western's alleged infringement of his copyright was willful, yet he cannot show that M&F Western had any awareness of Berg's designs prior to this litigation. "To prove willful infringement, "the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Berg v. Symons*, 393 F. Supp. 2d 525, 539 (S.D. Tex. 2005) (quoting *Island Software & Comput. Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 263 (2d Cir. 2005)). Courts have excluded arguments of willful infringement where, as here, plaintiffs fail to show defendants were infringing intentionally. *See, e.g.*, *Havco Wood Prods., LLC v. Indus. Hardwood Prods., Inc.*, No. 10-CV-566-WMC, 2012 WL 12995536, at *2 (W.D. Wis. Oct. 16, 2012) (granting defendant's motion in limine to exclude argument that alleged infringement was willful and dismissing claim for same where plaintiff failed to show by clear and convincing evidence elements of willfulness). At their depositions, Mr. Kraft and Ms. LaShelle confirmed the statements in their respective declarations that they had no knowledge of Plaintiff's designs when the Kraft Crosses were created. (Dkt. 41-1 at Exhibit 11, Kraft Decl. Aug. 18, 2020 at ¶ 13; Larson Decl.[1] at Exhibit 1, Kraft Dep. at 102:19-104:8; 106:7-15; Dkt. 41-2 at Exhibit 13, LaShelle Decl. Aug. 18, 2020 at ¶ 23, Larson Decl. at Exhibit 2, LaShelle Dep. at 117:19-118:14; 119:7-14.) Plaintiff has provided no evidence to the contrary and has no factual basis for asserting willful infringement. Accordingly, any reference to defendant's alleged infringement being willful is improper, irrelevant, and highly prejudicial to M&F Western and should be excluded. Fed. R. Evid. 403.

---

[1] Certain exhibits are attached to the Declaration of K. Larson ("Larson Decl.") submitted herewith.

5. **MIL No. 5: Fuzzy or Blurry Images of the Berg Cross Designs Should Be Excluded**

Plaintiff has produced blurry images of the cross designs he is asserting against M&F Western. (Dkt. 23 at Exhibit A.) Neither the 617 Cross image nor the 288 Cross image shows Plaintiff's design clearly and the image of the 617 Cross is in black-and-white. Thus, the Court should find that these images are insufficient evidence from which a determination of copyrightability and/or infringement can be made and should preclude Plaintiff from relying on these images at trial because any probative value of such evidence would be substantially outweighed by a danger both of unfair prejudice to M&F Western because the jury cannot clearly assess infringement based on a side-by-side comparison with the blurry images. Fed. R. Evid. 403; *see Jane Envy, LLC v. Infinite Classic Inc.*, Nos. SA:14-CV-065-DAE; SA:14-CV-081-DAE; SA:14-CV-083-DAE, 2016 WL 797612, at *8 (W.D. Tex. Feb. 26, 2016) (denying plaintiff's motion for summary judgment of copyright infringement as to design for which plaintiff presented only a blurry image); *Tom Kelley Studios Inc. v. Int'l Collectors Soc'y Inc.*, No. 97 CIV. 0056 (WK), 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997) (granting motion for more definite statement in part because attachments to the pleading were too blurred to be useful).

6. **MIL No. 6: All References to Gary Ballinger Providing Stolen Molds to M&F Western Should Be Excluded**

Plaintiff alleged in his Amended Complaint, on information and belief, that in late 2004/early 2005 Gary Ballinger gained access to Plaintiff's molds and designs, including the designs at issue in the case, and gave them to M&F Western without Plaintiff's knowledge or authorization. (Dkt. 23, ¶¶ 17-18, 23.) Plaintiff has provided no evidence to support these allegations designed to prop-up his insufficient access claim. He should be precluded from arguing at trial that Mr. Ballinger stole Plaintiff's molds because such arguments, based on nothing more than wild speculation, are irrelevant, misleading for the jury, and prejudicial to M&F Western. Fed. R. Evid. 402-403.

7. **MIL No. 7: Plaintiff should be precluded from referencing or introducing documents from the *Berg v. Symons* Case**

Plaintiff sued his ex-wife, Joann Symons, for copyright and trade dress infringement. *Berg v. Symons*, 393 F. Supp. 2d 525, 530 (S.D. Tex. 2005). She conceded that she copied certain designs (but argued she was

the co-owner of the designs); the Court held that she had infringed certain copyrights based on her concession. *Id.* at 530–31. The Court also held that Berg failed to establish protectable trade dress in his "Bob Berg Look." *Id.* The issues determined in the *Berg v. Symons* case are distinct from the issues in this case, and M&F Western was not involved in that case. Nonetheless, Plaintiff argues (incorrectly) that the *Symons* Court determined the "Bob Berg look" "to be original and subject to copyright protection" (Dkt. 47, Response to Cross MSJ at p. 8), and that M&F Western is "collaterally estopped from arguing that Berg's designs are not sufficiently original to qualify for copyright protection as a matter of law. The issue has already been decided." (*Id.* at pp. 8-9.) Plaintiff should be precluded from making such arguments at trial. As M&F Western explained in its Reply in Support of the Cross MSJ, Plaintiff is wrong. Collateral estoppel does not apply as a matter of law. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009). And, in any event, the court in *Berg v. Symons* did not address the specific designs at issue in this case.

Plaintiff should also be precluded from introducing any findings or discussion from the *Symons* case on whether Berg's designs were well-known in the marketplace. Plaintiff has argued that Judge Rosenthal provided a "fairly comprehensive factual history of Berg's impact on the U.S. -based buckle industry in the mid-1990s and early 2000s" and that she described how his business became "successful" (Dkt. 47, Response to Cross MSJ at pp. 13-14), and Plaintiff purported to rely on these "findings" to support an argument that "Berg's designs were widely disseminated and popular in Texas during the 1990's and 2000's" thus "a reasonable jury could conclude that Defendant (and its alleged predecessors-in-interest) . . . had a reasonable opportunity to view Berg's designs and expropriate them." (*Id.* at p. 14.) Plaintiff has produced no evidence that *the designs at issue in this case* were widely available in the marketplace at any point in time. (And the Cross Registrations claim creation and publication dates in 2000 and 2003, respectively, not the 1990s.) Plaintiff should be precluded from referencing the findings in the *Symons* case because they are: (1) not specific to the designs in this case; and (2) not binding on M&F Western. Further, permitting Plaintiff to introduce findings from the *Symons* case would lead to juror confusion. Indeed, the jurors may mistakenly believe that Judge Rosenthal's findings are entitled to deference because of her role as a federal judge. Fed. R. Evid. 402, 403.

M&F WESTERN'S MOTIONS IN LIMINE --PAGE 5

150143175.7

Moreover, Plaintiff should be precluded from relying on his belated production of over 3,000 documents from the *Berg v. Symons* case ("*Symons* Documents"). Fed. R. Civ. P. 26 (a party cannot use evidence at trial it failed to disclose unless it shows late disclosure was "substantially justified and harmless" under Fed. R. Civ. P. 37(c)(1)); *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, No. 2:13-CV-1113-JRG-RSP, 2015 WL 11027038, at *1 (E.D. Tex. Oct. 13, 2015) (granting motion in limine to exclude references to documents belatedly produced after the close of discovery).

First, Plaintiff's failure to timely disclose the *Symons* Documents was plainly not substantially justified. Plaintiff has had these documents in his possession, custody, and control within the meaning of Fed.R.Civ.P. 34 for over 15 years. Plaintiff made no effort until after the Court granted M&F Western's Motion to Compel in pertinent part to obtain these documents from former counsel and has provided no credible justification for his failure to obtain them at the outset of the case, as was his obligation. Second, Plaintiff's failure is not harmless. To the contrary, M&F Western will be substantially prejudiced should Plaintiff be allowed to rely on these documents at trial. Fed. R. Evid. 403; *Promethean*, 2015 WL 11027038, at *2 (finding plaintiff would be prejudiced by late disclosure of documents because it was "deprived of the opportunity to meaningfully seek discovery . . . about the subject matter of [the] document or the circumstances of its creation" or seek review by its expert). Accordingly, the Court should preclude Berg from relying on the *Symons* Documents at trial.

**8.   MIL No. 8: Plaintiff should be precluded from discussing the Bob Berg "Look and Feel"**

Plaintiff should be precluded from suggesting to the jury that his "Bob Berg Look" is protected under copyright law because it is not, as a matter of law. As M&F Western has explained, copyright law does not protect an unspecified, generalized "look." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994) (holding copyright protection does not extend to the "look and feel of a computer" graphical user interface: "As we recognized long ago in the case of competing jeweled bee pins, similarities derived from the use of common ideas cannot be protected; otherwise, the first to come up with an idea will conquer the market.") (quoting *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)). Plaintiff has confused copyright law with trade dress law, and he has not asserted a trade dress claim in this matter. Thus,

allowing him to argue that the "Bob Berg Look," or the "look and feel" of his jewelry generally, is protected by copyright law would be legally incorrect, confusing and misleading to the jury, and prejudicial to M&F Western. Fed. R. Evid. 402,403. Plaintiff is required to show specific protectable creative elements that were copied by M&F. Any hand-wavy reliance on the general impression of the jewelry and similarity of stock elements will mislead and prejudice the jury.

9. **MIL No. 9: References to Plaintiff's Designs Having Been "Widely Disseminated" in the Marketplace Should Be Excluded**

As a threshold matter, the Fifth Circuit has not adopted the "widely disseminated" theory of infringement under which a plaintiff may rely on circumstantial evidence to prove access to copyrighted works by showing either a chain of events linking the plaintiff's work and the defendant's access, or that the plaintiff's work has been "widely disseminated." *See Sanders-El v. Wencewicz*, 987 F.2d 483, 484 (8th Cir. 1993) ("It is the duty of the court and of its officers, the counsel of the parties, to prevent the jury from the consideration of extraneous issues, of irrelevant evidence, and of erroneous views of the law [. . .]") (citations omitted). Plaintiff has conceded that the Fifth Circuit has not adopted the widely disseminated theory in his Response to the Cross MSJ. (Dkt. 47 at p. 14.); *Guzman v. Hacienda Records & Recording Studio, Inc*., 808 F.3d 1031, 1037 n.5 (5th Cir. 2015). Moreover, Plaintiff has produced no documents in the case showing that the designs at issue were available on the marketplace (let alone widely disseminated). Thus, the Court should preclude Plaintiff from arguing that his works were widely disseminated; any such evidence is legally inadequate under Fifth Circuit law, and therefore not relevant. Fed. R. Evid. 401; *see United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981) (To be relevant, evidence must help the jury determine that a fact of consequence to the case—i.e. a fact probative of the hypothesis governing the case or a matter that is in issue under the substantive law of the case— is more or less probable.); *Riley v. Cont'l Gen. Tire, Inc*., No. 1:00-CV-369 TH, 2002 WL 34357197, at *1 (E.D. Tex. Feb. 28, 2002) (excluding evidence that defendant withheld documents, as this was not a "fact of consequence" to any of plaintiffs' causes of action). Further, any probative value of such evidence would be substantially outweighed by a danger both of misleading the jury (i.e., to believe such evidence can be used in place of proof of access to the designs at issue) and of unfair prejudice to M&F Western. Fed. R. Evid. 403.

**10. MIL No. 10: All References to M&F Western's Overall Revenues, Profits or Wealth Should Be Excluded**

M&F Western is a successful business and has been in operation for more than 50 years. Plaintiff should not be permitted to reference M&F Western's overall revenues, profit or wealth because any such references are not germane to the copyright infringement issues the jury must decide. Fed. R. Evid. 402. Further, to the extent that damages must be decided, M&F Western's overall revenues, profit or wealth are also not germane to deciding damages. *Id.* Rather actual damages, if any, must be tied to the specific alleged infringing items in question. Thus, Plaintiff should be precluded from referencing M&F Western's overall revenues, profits or wealth because any probative value of the evidence is substantially outweighed by the danger of jury confusion and unfair prejudice to M&F Western. Fed. R. Evid. 403.

**11. MIL No. 11: Plaintiff Should Be Precluded from Testifying Remotely from Vietnam**

Plaintiff has known since before he filed suit against M&F Western, and months before the coronavirus outbreak began in 2020, that he had been denied entry to the United States. Indeed, he had already received an email and letter from the U.S. Consulate at Ho Chi Minh City denying his visa application as of August 2019 (a month before he filed this lawsuit against M&F Western). (Larson Decl. at Exhibit 3.) He refused to make himself available for deposition outside of Vietnam, and M&F Western was not able to proceed with his deposition while he was in Vietnam telephonically or via videoconference because doing so would have been a violation of international law. (Dkt. 60 at pp. 3-8.) He also refused to travel to neighboring jurisdictions where it would have been possible to conduct his deposition legally (e.g., Thailand or Hong Kong). M&F Western briefed the issues regarding Plaintiff's deposition fully for the Court in its Emergency Motion (Dkt. 60.), and the Court demurred because the Court held that M&F Western did not move the Court for particular relief.

M&F Western now moves the Court to preclude Plaintiff from testifying remotely at trial. M&F Western notes that, while it understands concerns regarding COVID-19, *COVID-19 is not the reason that Berg cannot travel to the United States* and never has been the reason. His visa issues are the reason. Thus, he should not be permitted to use COVID-19 as his excuse for failing to appear at trial in the United States when he has known all along that he could not enter the United States because his visa application had been denied

even before he filed suit. While courts have some discretion to determine whether and when to permit a witness to testify remotely in cases, in this case, the witness in question is the Plaintiff who chose to bring suit in the United States despite knowing that he would not be allowed entry into the United States to testify; thus, he understood the risks of proceeding with the case where he knew he could not appear when he filed it. Courts have denied requests to permit remote testimony in cases where it was known that the testimony in question would be needed and the remote location and unavailability at trial was not unexpected.[2] *See Avalanche Equip., LLC v. Williams-S. Co.*, No. 13-CV-2827-BNB-MJW, 2014 WL 12676225, at *2 (D. Colo. Oct. 28, 2014) (remote testimony of witnesses not permitted—concluding that good cause did not exist for remote testimony where witness testimony was expected, their distant location was not a surprise, and there was no reason why they were not deposed); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 2014 WL 358866, at *4 (D. Colo. Jan. 31, 2014) (holding that inconvenience to the witnesses is not sufficient to justify remote testimony, "especially ... where [the movant] was aware of their location in advance of trial and was not surprised by 'unexpected reasons' for their unavailability").

Remote testimony is particularly improper where, as here, the remote witness is also a party to the action. *See, e.g.*, *Edwards v. Logan*, 38 F. Supp. 2d 463, 467 (W.D. Va. 1999); ("[Remote testimony] may be particularly detrimental where it is a party to the case who is participating by video conferencing, since personal impression may be a crucial factor in persuasion."). Further, administering an oath or affirmation presents complicated questions of sovereignty, such as where the oath is to be administered; which laws of perjury would apply; and which country could hold a witness in contempt. This is particularly so, where here, the witness has demonstrated credibility issues.

Further, permitting Plaintiff to testify remotely from Vietnam (which is not party to the Hague Evidence Convention) would be a violation of international law absent compliance with appropriate process.[3] *See Ji v.*

---

[2] Indeed, his visa application was refused despite the fact that he explained in the application that he needed a visa because he intended to file lawsuits in the United States. (Larson Decl. at <u>Exhibit 3</u>.)

[3] If a witness is in a foreign country not party to the Hague Convention, a letter rogatory must be sent from the Court in the United States to the court in the country where the witness is located requesting the witness's evidence. *See* U.S. Embassy & Consulate in Vietnam, Taking Evidence Abroad, https://vn.usembassy.gov/u-s-citizen-services/local-

*Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130, at *10 (E.D.N.Y. Mar. 31, 2019), *appeal dismissed*, *Ji v. Jling Inc.*, 799 F. App'x 88 (2d Cir. 2020) (striking plaintiff's testimony finding that testifying via video while located in mainland China violated Chinese Law). The court addressed a similar situation in *Hong Chang Fruit & Vegetable Prods. Corp. v. Am. Ever-Best Corp.*, where the court held that the trial court did not abuse its discretion in refusing to allow plaintiff's principal witness—who was unable to enter the United States because of issues with his immigration status— to testify by contemporaneous video transmission from China:

> Allowing witnesses in a foreign country to present testimony in this manner raises complex issues of international law concerning the administration and enforcement of oaths, the rules of evidence, and the right to confront witnesses. . . The trial court in this case was understandably reticent to allow plaintiffs' witnesses to testify in this manner absent an express statutory grant of authority. Plaintiffs provided the trial court with no such authority.

No. B201774, 2009 WL 1067964, at *34 (Cal. Ct. App. Apr. 22, 2009) (unpublished) (finding plaintiff was unable to enter the United States because of issues with his immigration status and noting that it appeared plaintiff may never be able to return and holding denial of a continuance was not an abuse of discretion: "Plaintiffs contend the denial of their request for a continuance deprived them of their due process right to a fair trial; however, the granting of such a request would have impinged upon defendants' right to timely resolution of a lawsuit that had been pending against them for nearly a year"); *In re Nada R.*, 89 Cal. App. 4th 1166, 1176, 108 Cal. Rptr. 2d 493, 501 (2001), as modified (June 8, 2001) (court did not abuse its discretion in denying respondent's request to testify telephonically from Saudi Arabia). Because Plaintiff's case hinges on Berg's testimony regarding the Cross Registrations, M&F Western moves for preclusion and an Order dismissing the case.

---

resources-of-u-s-citizens/taking-of-evidence-abroad/ (last visited Nov. 19, 2020); Martin Davies, *Bypassing the Hague Evidence Convention: Private International Law Implications of the Use of Video and Audio Conferencing Technology in Transnational Litigation*, 55 Am. J. Comp. L. 205, 207 (2007). Because foreign, remote testimony implicates international law and jurisdictional autonomy, plaintiff cannot merely elect to voluntarily waive requirements to appear in person. *See Hong Chang*, 2009 WL 1067964, at *4.

M&F WESTERN'S MOTIONS IN LIMINE --PAGE 10

150143175.7

**12. MIL No. 12: Plaintiff Should Be Precluded from Introducing Copyright Registrations and Deposit Materials that Have Not Been Certified by the Copyright Office**

Plaintiff should be precluded from introducing or relying on copyright registrations and deposit materials regarding the Cross Designs that have not been certified by the U.S. Copyright Office. The Copyright Act expressly states that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made[.]" 17 U.S.C. § 411(a). Deposit materials are central to the registration requirement, and without presenting a valid copy a plaintiff cannot meet his or her burden to show that the registration requirements have been satisfied. *See Geoscan, Inc. of Tex. v. Geotrace Techs., Inc*., 226 F.3d 387, 393 (5th Cir. 2000) (computer software owner could not sue for copyright infringement where it failed to deposit complete copy of original source code with the Copyright Office).

Plaintiff has not obtained certified copies of the registrations that allegedly correspond to the Cross Designs at issue, despite the Copyright Office's well-established means of obtaining certified copies of its records, including certificates of registration. *See* 17 U.S.C. § 706(b). Public records are authenticated by obtaining a certified copy from the custodian of the record. *See* Fed. R. Evid. 1005 ("The proponent may use a copy to prove the content of an official record — or of a document that was recorded or filed in a public office as authorized by law — if these conditions are met: the record or document is otherwise admissible; and the copy is certified as correct in accordance with Rule 902(4) or is testified to be correct by a witness who has compared it with the original. If no such copy can be obtained by reasonable diligence, then the proponent may use other evidence to prove the content."*); see also Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 146 (5th Cir. 2004) (plaintiff's evidence was insufficient to support copyright infringement claim where plaintiff failed to attach source code, preventing the fact finder from undertaking necessary "side-by-side comparison . . . between the original and the copy"); *Alaska Stock, LLC v. Pearson Educ.,* Inc., 975 F. Supp. 2d 1027, 1039 (D. Alaska 2013) (finding plaintiff's certificates alone failed to provide a meaningful description of the images on which to assess copyright claims).

Further, the documents that Plaintiff has produced relating to the deposit materials that allegedly reflect the designs at issue are not certified. Indeed, Plaintiff submitted a declaration in support of his Supplemental Response to the Cross MSJ (Dkt. 74) in which he attached as Exhibit A (Dkt. 74-1) color images of "Examples of Bob Berg Jewelry covered by U.S. Coypright Reg. No. VA 1-091-617," but these color images do not appear to have been obtained from the Copyright Office, are not certified and are not proper evidence. He should be precluded from relying on such images at trial. Other courts have found non-certified copies of registration certificates and deposit materials insufficient and incompetent evidence of validity and the Court should make the same finding here and exclude the non-certified copies. *See Jane Envy, LLC v. Infinite Classic Inc.*, No. SA:14-CV-065-DAE, 2016 WL 5373035, at *8 (W.D. Tex. Sept. 26, 2016) (declining to consider evidence of defendant's alleged copyrights that consisted of "unauthenticated screen shots of various webpages"). Because Plaintiff has failed to satisfy a threshold requirement to bringing a copyright claim—i.e. proof of deposit—his uncertified materials are not relevant and should excluded. *See* Fed. R. Evid. 402; *Geoscan*, 226 F.3d at 393.

### 13. MIL No. 13: All References to Unrelated Litigations, Settlements, or Copyright Licenses Should Be Excluded

Plaintiff should be precluded from questioning witnesses, making arguments or alluding to unrelated litigations, settlements or copyright licenses. Plaintiff's counsel devoted substantial time at the depositions of Mr. Kraft and Ms. LaShelle to questioning the witnesses about prior cases they were involved in before they worked for M&F Western. In Mr. Kraft's deposition, he was questioned at length regarding a copyright infringement action brought by a former employer, Leegin Creative Leather Goods ("Leegin"), against a third party. The Leegin case did not involve the Plaintiff's designs, nor did it involve M&F Western, and it is therefore entirely irrelevant to the matters in this lawsuit. (Larson Decl. at Exhibit 1, Kraft Dep. at 107:3-19.) Similarly, Plaintiff's counsel devoted substantial time at Ms. LaShelle's deposition to questioning her regarding a dispute between Crumrine Manufacturing Jewelers, Inc. and Montana Silversmiths ("Montana"), which was resolved amicably and did not involve a lawsuit, regarding patent infringement allegations. (Larson Decl. at Exhibit 2, LaShelle Dep. at 118:15-25.) He also questioned her at length regarding a dispute with her brother relating to Crumrine designs. Neither the Montana dispute nor the suit with Ms. LaShelle's brother involved

the Plaintiff's designs at issue in this case, nor was M&F Western involved. As such, none of these disputes is germane to the issues before the Court and any arguable probative value is substantially outweighed by the danger of wasting of time, confusing the issues, and unfair prejudice to M&F Western. Fed. R. Evid. 402, 403.

**14. [UNOPPOSED] MIL No. 14: Any Reference to the Parties' Discovery Disputes or the Court's Rulings Relating to those Disputes Should Be Excluded**

The Parties have each filed motions relating to discovery disputes in this case. Any references to the disputes or the Court's rulings relating to the disputes should be excluded as their probative value, if any, is substantially outweighed by the risk of confusing the issues, misleading the jury, wasting time on issues previously decided and prejudice. Fed. R. Evid. 403. Plaintiff does not oppose this motion.

**15. [UNOPPOSED] MIL No. 15: Any Reference to Correspondence, Discussions, Statements, Disagreements, Or Negotiations Between Counsel Should Be Excluded**

Similarly, the Court should preclude any reference to correspondence, discussions, statements, disagreements, or negotiations between counsel in this case, which are not relevant to the jury's assessment of infringement. Any reference to such topics should be excluded as their probative value, if any, is substantially outweighed by the risk of confusing the issues, misleading the jury, wasting time on issues previously decided and prejudice. Fed. R. Evid. 403. Plaintiff does not oppose this motion.

**16. MIL No. 16: Plaintiff Should Be Precluded from Offering Ms. Compton as an Expert Witness**

Plaintiff identified Monique Compton (well after the Court's deadline) as an expert witness and disclosed that she will testify "that the copyright elements claimed by Plaintiff in the applicable registrations were unique to Plaintiff at the time of the registration" and that "the use of a series of tapered beads in a design . . . originated with Plaintiff" and "only became 'common design elements used ubiquitously in the western jewelry design industry' after Plaintiff's belt buckles became wildly popular in the marketplace." (Larson Decl. at Exhibit 4.) In addition, Plaintiff disclosed that Ms. Compton will also testify that M&F Western's "products which have been accused of infringement are substantially similar to Plaintiff's copyrighted designs." (*Id*.)

M&F Western has reviewed Ms. Compton's Facebook profile (Larson Decl. at Exhibit 5) and it is apparent that she has no specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact at issue in the case. In particular, she does not have longstanding experience in the Western

buckle and jewelry industry that would put her in a position to assist the trier of fact with understanding when certain design elements that are popular in the industry originated or who originated them. (*Id.*) Indeed, it appears from her FaceBook profile she was only in junior high or high school at the time the Plaintiff claims he created the Cross Designs, and she has only worked for the Plaintiff (apparently as his National Sales Director) since February 2019. Prior to working for the Plaintiff, she was an owner/trainer at MJC Equine Services. In short, she has no specialized knowledge or expertise that qualifies her to provide an opinion, let alone an expert opinion, on the ultimate issue of infringement in this case. Fed. R. Evid. 602, 702. Any suggestion by Plaintiff that she is an "expert" would be misleading to the jury and prejudicial to M&F Western. Fed. R. Evid. 403, 702. *Malik & Sons, LLC v. Circle K Stores, Inc.*, No. CV 15-6938, 2017 WL 367662, at *3 (E.D. La. Jan. 25, 2017) ("Under [Rule 701 of the] Federal Rules of Evidence, speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible." (citing *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993); *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 199 (5th Cir. 2016) ("An expert witness's testimony should be excluded if . . . the witness is not qualified to testify in a particular field or on a given subject.") (internal quotation marks omitted); *Hilderbrand v. Levi Strauss & Co.*, No. 3:09CV243-DPJ-FKB, 2011 WL 2946717, at *2–3 (S.D. Miss. July 21, 2011) (speculative testimony not admissible).

**17. MIL No. 17: Plaintiff's Superseding Interrogatory Answers of November 10th Should Be Excluded**

In his sworn interrogatory answers provided in June 2020, Plaintiff swore that the *only* specific design elements he claimed were protected by copyright were tapered beads. (Larson Decl. at <u>Exhibit 6</u> Answers to Interrogatories 2-3.) On November 10th, long after fact discovery closed, he changed his theory of infringement in supplemental sworn interrogatory answers. (Dkt. 75-1 at <u>Exhibit A</u>, Berg's Superseding Answers Nos. 2-3.) He now claims protection in his "Bob Berg Look." Plaintiff should be precluded from changing his theory of infringement at the eleventh hour and claiming protection in additional design elements he did not previously disclose because this would be prejudicial to M&F Western. This situation was entirely avoidable. Plaintiff's supplemental answers are not based on any new evidence; to the contrary, as the designer of the Cross Designs,

he was in the unique position since the inception of the case to know and explain the specific design elements in which he claimed protection. The Court should preclude Plaintiff from relying on this new theory of infringement at trial because he failed to comply with discovery requirements and should not be awarded for this gamesmanship, preventing M&F Western from preparing a defense to these new allegations. Fed R. Evid. 403; *see Squyres v. Heico Cos.*, 782 F.3d 224, 238–39 (5th Cir. 2015) (granting leave to amend to permit a party to assert new legal theories after the close of discovery may be unduly prejudicial where opposing party has no opportunity to explore the factual basis of the late-pled theory during discovery); *Wade v. Cycle Mart, L.P.*, No. A-14-CV-00427-ML, 2015 WL 4404876, at *4 (W.D. Tex. July 17, 2015) (denying party's request to introduce new legal theories after close of discovery and dispositive motions filed, finding party failed to establish good cause and granting motion would unfairly prejudice opposing party).

For the reason set forth, M&F Western respectfully requests that the Court issue an order granting its Motions in Limine.

Dated: November 24, 2020                     Respectfully submitted,

                                              By:    */s/ Kirstin E. Larson*

John R. Hardin
Texas Bar No. 24012784
JohnHardin@perkinscoie.com
PERKINS COIE LLP
500 N. Akard St. Suite 3300
Dallas, Texas 75201
Phone: 214-965-7700
Facsimile: 214-965-7799

Judith B. Jennison
Washington State Bar No. 36463
JJennison@perkinscoie.com
Kirstin E. Larson
Washington State Bar No. 31272
KLarson@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel: 206-359-8000
Fax: 206-359-9000

***Attorneys for M&F Western***

**CERTIFICATE OF CONFERENCE**

Counsel for M&F Western complied with the Meet and Confer Requirement in Local Rule CV-7(h). On November 23, 2020, Kirstin E. Larson conducted a personal telephone conference with Plaintiff's attorneys, Richard Liebowitz and James Freeman, regarding the Motions and the parties further conferred on November 24, 2020. Plaintiff opposes the motions as indicated, leaving open issues for the Court to resolve.

                                              By:    */s/ Kirstin E. Larson*
                                                       Kirstin E. Larson

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 24, 2020, I caused copies of the foregoing document to be served via email on the counsel of record in this matter.

/Kirstin E. Larson/
Kirstin E. Larson
