IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ROBERT BERG, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case No. 6:19-cv-00418-JDK |
| § | |
| M&F WESTERN PRODUCTS, INC., § | |
| § | |
| Defendant. § | |

**OPINION AND ORDER**

This is a copyright infringement case involving western jewelry designs. The Court previously determined that Defendant M&F Western Products, Inc. has not infringed Plaintiff's belt buckle designs and entered partial summary judgment in M&F Western's favor. Docket No. 37. M&F Western now moves for partial summary judgment regarding three cross pendant designs. Docket No. 41. For the reasons explained below, the Court **GRANTS** the motion.

**I. BACKGROUND**

Plaintiff Robert Berg and Defendant M&F Western have each been designing and selling western jewelry for decades. Docket No. 23 at ¶¶ 7–10; Docket No. 41, Ex. 9 at 1. Berg generally develops high-end, custom jewelry for individuals, while M&F Western primarily distributes lower-cost items to retail outlets. Docket No. 75, Ex. B at 44:21–24 & Ex. C at 97:17–23.

Central to this dispute are two copyright registrations of cross pendants designed by Berg. In 2000, "Berg created a stylized and intricate design of a cross

1

with angular corners . . . ." Docket No. 23 at ¶ 12.  This design was registered with the Copyright Office as Registration No. VA 1-091-617 ("the '617 design"). *Id.* When asked through an interrogatory what Berg considers protected by the '617 design copyright, Berg initially stated that "[t]he protected elements include the round beads tapered in size." Docket No. 41, Ex. 2 at 2.  Later, in opposing summary judgment, Berg broadened his answer:

> The protected elements include the combination, selection and arrangement of unique and distinctive jewelry designs consisting of black background, the use of "tri-color" (red, green, and yellow) gold; a layer of scrollwork with a vine design, a layer of leaves, and a third layer of flowers; and, when edged, use of a raised silver edge with three-to- five [sic] large tapered beads at the compass points.  Hand-cut and soldered scrollwork and lettering also characterize Bob Berg designs.  Berg also initiated the technique of stacking tri-color gold to achieve a three-dimensional look in his buckles and jewelry (collectively the "Bob Berg Look").

Docket No. 72 at 5; Docket No. 47 at 8–9.  Berg also produced a color image of the '617 design:



**Fig. 1: '617 Design**

Docket No. 72 at 4.[1]

---

[1] Berg presented this image in a supplemental filing opposing M&F Western's summary judgment motion.  Docket No. 72 at 4.  It differs from an image Berg provided in an earlier filing.  Docket No. 23, Ex. A at 2–3; *see also* Docket No. 76 at 3 (comparing images).  But, according to evidence submitted by Berg, the earlier image is not covered by the '617 copyright.  Docket No. 74, Ex. A.

2

In 2003, "Berg created a stylized and intricate design for a cross with linear corners . . . ." Docket No. 23 at ¶ 15. This design was registered with the Copyright Office as Registration No. VA 1-229-288 ("the '288 design"). *Id.* When asked in an interrogatory about the protected elements of the '288 design, Berg again initially claimed the tapered beads were the protected elements and then later broadened it to the "Bob Berg Look." Docket No. 41, Ex. 2 at 2; Docket No. 72 at 6. Berg also provided an image of the '288 design.



**Fig. 2: '288 Design**

Docket No. 23, Ex. A at 3.

After 2003, M&F Western, and others who later sold their intellectual property to M&F Western, created three different cross designs, each of which Berg now claims infringe his copyrights: (1) the "3-D Rope Design," which was created around 2006 and acquired by M&F Western in 2018; (2) "Kraft Design #32110," created "no later than 2015" by M&F Western; and (3) "Kraft Design #32120," which was created by M&F Western in 2016. Docket No. 41, Ex. 4 at 8–10. These designs are shown below:

3



**Fig. 3: Kraft Design #32120**     **Fig. 4: 3-D Rope Design**     **Fig. 5: Kraft Design #32110**

*Id.*, Ex. A at 2–3. Berg alleges that the 3-D Rope Design and Kraft Design #32120 infringe upon the '617 copyright. Docket No. 23 at ¶¶ 19–22 & Ex. A. He claims that Kraft Design #32110 infringes upon the '288 copyright. *Id.*

In moving for partial summary judgment, M&F Western presented uncontroverted evidence from several jewelry designers who testified that cross pendants and the use of tapered beads, scrollwork, multiple metal colors, and other elements were already common in the industry when Berg designed his crosses. Indeed, Cary Kraft, designer of Kraft Designs #32120 and #32110, testified that his cross designs simply incorporated standard design elements, that he was unaware of Berg's '617 and '288 cross designs, and that he did not copy them. Docket No. 41, Ex. 11 at 6–9. Chad Gist, another jewelry designer and artist, similarly testified that tapered beads are "an Industry standard design element and have been for decades," along with "other stock or standard design elements includ[ing] flowers . . . , scrollwork, black enamel backgrounds, roping and use of multiple colors of metal in one design." Docket No. 41, Ex. 7 at 3–4. Jeanne Crumrine LaShelle, a jewelry

4

designer with more than fifty years of experience, likewise attested that beads on the ends of cross arms, scrollwork, flowers, multiple colors of metal, and roping were common design elements dating back decades. Docket No. 41, Ex. 13 at 1, 4–9.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A fact is material only if it will affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine only if the evidence could lead a reasonable jury to find for the nonmoving party. *See id.* In determining whether a genuine issue of material fact exists, the Court views all inferences drawn from the factual record in the light most favorable to the nonmoving party, here Berg. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

After the moving party has made an initial showing that there is no evidence to support the nonmoving party's claim, the nonmoving party must assert competent summary judgment evidence to create a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The nonmoving party must identify evidence in

the record and articulate how that evidence supports his claim. *Ragas*, 136 F.3d at 458. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

### III. ANALYSIS

"To prove copyright infringement, a plaintiff must show 'ownership of a valid copyright' and 'copying' by the defendant." *Batiste v. Lewis*, 976 F.3d 492, 501 (5th Cir. 2020) (quoting *Feist*, 499 U.S. at 361); *Bradford v. Nationwide Ins. Co. of Am.*, 797 F. App'x 874, 875 (5th Cir. 2020) (per curiam) ("A copyright infringement claim has two elements: '(1) ownership of the copyrighted material and (2) copying by the defendant.'") (quoting *Comput. Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 400 (5th Cir. 2000)).

M&F Western challenges both elements. First, M&F Western argues that the '617 and '288 copyrights are invalid as a matter of law because they are unoriginal insofar as they protect the use of elements that have long been standard within the western jewelry industry. Docket No. 41 at 10–11; Docket No. 50 at 2–3; Docket No. 76 at 4. M&F Western also argues that Berg has failed to present evidence of copying in this case. As explained below, the Court agrees that there is no evidence of copying and will enter partial summary judgment in M&F Western's favor on this basis.

### A.

"Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with applicable statutory formalities." *Batiste*, 976 F.3d at 501 (citing *Eng'g Dynamics, Inc. v. Structural Software, Inc.*,

6

26 F.3d 1335, 1340 (5th Cir. 1994)). "A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright." *Id.* (quoting *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004)); *see also* 17 U.S.C. § 410(c). The presumption of validity is rebuttable. *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995). "The burden on the defendant to rebut the presumption varies depending on the issue bearing on the validity of the copyright." *Rogers v. Better Bus. Bureau of Metro. Hous., Inc.*, 887 F. Supp. 2d 722, 728 (S.D. Tex. 2012) (quoting *Masquerade Novelty, Inc. v. Unique Indus.*, 912 F.2d 663, 668 (3d Cir. 1990). Here, M&F Western attempts to rebut the presumption of validity on two grounds.

*First*, M&F Western argues that Berg limited his copyright claim to the use of "tapered beads," that tapered beads are standard in the industry, and that Berg's designs are thus unoriginal. *See, e.g.*, Docket No. 41 at 10–15. To overcome the presumption of validity on this basis, M&F Western must show that Berg's designs lack even "some minimal degree of creativity." *Norma Ribbon*, 51 F.3d at 47; *see also Masquerade Novelty*, 912 F.2d at 668–69. "[A] work may be protected by copyright even though it is based on . . . something already in the public domain if the author, through his skill and effort, has contributed a distinguishable variation from the older works." *Norma Ribbon*, 51 F.3d at 47 (quoting *Donald v. Zack Meyer's T.V. Sales & Servs.*, 426 F.2d 1027, 1029 (5th Cir. 1970)). This is true, however, only where the "distinguishable variation" is "substantial and not merely trivial." *Id.*; *see also Emanation Inc. v. Zomba Recording Inc.*, 72 F. App'x 187, 191 (5th Cir. 2003) (per

7

curiam) (finding unoriginal combinations of popular Cajun phrases). *Cf. Berg v. Symons*, 393 F. Supp. 3d 525, 541 (S.D. Tex. 2005) ("[T]he originality necessary to support a copyright merely calls for independent creation, not novelty."). And being "of a higher quality" than its predecessors does not make a work original if there is nothing new in the design itself. *Norma Ribbon*, 51 F.3d at 47–48.

*Second*, M&F Western argues that, even if the registrations more broadly cover the "Bob Berg Look," such a generalized "look and feel" constitutes an uncopyrightable idea rather than a copyrightable expression of an idea.[2] *See, e.g.*, Docket No. 50 at 2. To overcome the presumption of validity on this basis, M&F Western must show either that Berg "knowingly fail[ed] 'to advise the Copyright Office of facts which might have led to the rejection of a registration application,'" *Lenert v. Duck Head Apparel Co.*, 99 F.3d 1136, 1996 WL 595691, at *3 (5th Cir. 1996) (unpublished) (quoting *Masquerade Novelty*, 912 F.2d at 667), or "that the Copyright Office erroneously applied the copyright laws in registering [Berg's] articles," *Masquerade Novelty*, 912 F.2d at 669. Although copyright protection generally exists for all "original works of authorship fixed in any tangible medium of expression . . .

---

[2] The parties hotly dispute which elements of Berg's two cross designs are protected by the '617 and '288 copyrights. M&F Western contends that Berg limited what he can claim as protected by the copyrights in verified interrogatory responses dated June 15. Docket No. 41 at 10–15; *Id.*, Ex. 2. Based on those responses, M&F Western asserts that "Berg does not claim a unique combination of elements in his design, rather he claims only that the tapered beads are his protectable design element." *Id.* at 11. Berg denied that limitation, stating in his response to the summary judgment motion that M&F Western construed his interrogatory responses too narrowly and that the copyrights protect the "Bob Berg Look," which includes "the arrangement and layout of a raised silver edge with large tapered beads, black background, the use of 'tri-color' (red, green, and yellow) gold; a layer of scrollwork with a vine design, a layer of leaves, and a third layer of flowers." Docket No. 47 at 6–10. After the Court extended the discovery deadline and allowed the parties to supplement their briefing, Berg amended his interrogatory responses to clarify that the copyrights cover the "Bob Berg Look." Docket No. 72 at 5.

8

from which they can be perceived, reproduced, or otherwise communicated," protection does not "extend to any *idea*, . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102; *Mason v. Montgomery Data, Inc.*, 967 F.2d 135, 138 (5th Cir. 1992) (emphasis in original) (quoting 17 U.S.C. § 102(b)). And when an idea can only be expressed in one way, the expression is not protected. *Mason*, 967 F.2d at 138 (citing *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir. 1971)). This is because protecting the sole possible expression of an idea "would confer a monopoly of the 'idea' upon the copyright owner free of the conditions and limitations imposed by the patent law." *Kalpakian*, 446 F.2d at 742 (finding a jewelry design unprotectable because the underlying idea could only be expressed in ways covered by the copyright).

The Court need not resolve this dispute about copyright validity today because Berg's claims fail for another reason—there is no evidence of copying by M&F Western. *See, e.g., Armour v. Knowles*, Civ. No. H-05-2407, 2006 WL 2713787, at *2 (S.D. Tex. Sept. 21, 2006) (granting summary judgment for lack of access after assuming copyrightability and factual copying), *aff'd* 512 F.3d 147 (5th Cir. 2007); *Peel & Co. v. The Rug Mkt.*, 238 F.3d 391, 394–95 & n.10 (5th Cir. 2001) (analyzing whether summary judgment was proper after the copyrightability prong was waived); *Parker v. Dufresne*, 781 F. Supp. 2d 379, 386 (W.D. La. 2011) (granting summary judgment for lack of similarity, "even assuming Parker owns a copyright in the selection and arrangement" of standard elements).

9

## B.

To establish copying, a plaintiff must prove both "factual copying" and "actionable copying." *Batiste*, 976 F.3d at 502 (citing *Lee*, 379 F.3d at 141–42, 157). Factual copying "requires proof that the defendant 'actually used the copyrighted material to create his own work.'" *Id.* Without direct evidence of copying, factual copying can be inferred from "(1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity." *Id.* (quoting *Positive Black Talk, Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 368 (5th Cir. 2004)). Probative similarity is shown by "'any similarities between the two works,' even as to unprotectable elements, 'that, in the normal course of events, would not be expected to arise independently.'" *Id.* If there is no proof of access, the plaintiff can still show factual copying by demonstrating that the works are "strikingly similar." *Id.* (citing *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 113 (5th Cir. 1978)). Once a plaintiff demonstrates factual copying, it must then establish "that the copying is legally actionable by showing 'that the allegedly infringing work is substantially similar to protectable elements of the infringed work.'" *Id.* (quoting *Lee*, 379 F.3d at 142).

Here, M&F Western argues that Berg cannot prove factual copying because there is no evidence M&F Western had access to his cross designs and because its crosses are not "strikingly similar" to Berg's. In response, Berg fails to raise a genuine dispute of fact to survive summary judgment on this ground.

10

1.

To prove access, Berg must "present evidence that is '*significantly probative* of a *reasonable opportunity* for access.'" *Id.* at 503 (emphasis in original) (quoting *Armour v. Knowles*, 512 F.3d 147, 53 (5th Cir. 2007) (per curiam)). "A 'bare possibility' of access isn't enough, nor is a theory of access 'based on speculation and conjecture.'" *Id.* But "a work's widespread dissemination in a relevant market in which the defendant took part [may be] sufficient to show a 'reasonable opportunity for access.'" *Id.* (citing *Peel*, 238 F.3d at 395); *see Peel*, 238 F.3d at 395 (The "broad sale and display—in showrooms, trade shows and catalogs—of" a specific work can adequately "raise a genuine issue of material fact as to whether [a defendant] had access to the design.").

M&F Western argues that Berg has shown no evidence of either direct access or a reasonable opportunity for access to his cross designs. Rather, M&F Western employees testified that they were unaware of Berg's crosses at the time they created their designs and thus could not have copied Berg. Docket No. 41, Ex. 11 at 6 & Ex. 13 at 16. Berg responds with evidence that many of his products have been displayed in showrooms, tradeshows, and catalogs, and that the M&F Western designers were generally aware of him and his jewelry. Docket No. 72 at 3–4, 6–7 & 9. But Berg presents no evidence that the '617 or '288 cross designs specifically were displayed in any of those media—or enjoyed widespread dissemination in any other forum. Nor does Berg present evidence that the cross designs in particular were so commercially successful that they must have been widely disseminated in the relevant market. *See*

11

*Batiste*, 976 F.3d at 503. Instead, Berg cites evidence of his own commercial success as a designer worldwide. Docket No. 47 at 3, 11, 13–14.

Berg alternatively relies on a speculative chain of events in attempting to show access. *See Batiste*, 976 F.3d at 503–04 (discussing "chain-of-events theory" for demonstrating access). In his complaint, Berg alleges that Gary Bellinger, a manufacturer who knew Berg's ex-wife, had access to Berg's molds and designs and gave them to M&F Western without authorization. Docket No. 23 at ¶ 17. But Berg provides no evidence to support these allegations. Instead, Berg presents evidence that (1) the M&F Western designers know and have visited Bellinger at his manufacturing facility, Docket No. 75, Ex. B at 96:14–21 & Ex. C at 30:22–38:23; and (2) M&F Western purchased leather belts from Bellinger, *id.*, Ex. C at 32:15–33:17. There is no evidence linking M&F Western and Bellinger to the specific cross designs at issue here. Taken in the light most favorable to Berg, this evidence at best supports only the kind of speculative and conjecture-based theory of access the Fifth Circuit has rejected. *Batiste*, 976 F.3d at 503.

**2.**

Without evidence of access, Berg must show that M&F Western's cross designs are so "strikingly similar" to the '617 and '288 designs that "coincidence, independent creation, or prior common source" are precluded explanations. *Guzman v. Hacienda Records & Recording Studio, Inc.*, 808 F.3d 1031, 1039 (5th Cir. 2015); *see also Batiste*, 976 F.3d at 504; *Ferguson*, 584 F.2d at 113. "This requires that the 'similarities . . . appear in a sufficiently unique or complex context.'" *Guzman*, 808

F.3d at 1039. This is particularly important in media that "build[s] on or repeat[s] a basic theme." *Id.*

Berg's only evidence to prove striking similarity is side-by-side image comparisons and his own conclusion that M&F Western could not have independently designed its crosses. Docket No. 47 at 12–13. "Such conclusions are not probative evidence in a summary judgment proceeding." *Ferguson*, 584 F.2d at 113. And, as M&F Western shows, a side-by-side comparison of the crosses at issue here demonstrates a *lack* of similarity in the designs beyond the use of standard western elements. *See* Docket No. 76, Ex. 1 at 68:15–70:11 & Ex. 2 at 100:09–105:06; Docket No. 41, Ex. 4 at 5–7. *Cf. Ferguson*, 584 F.2d at 114.

First, the differences in Berg's '617 design and M&F Western's Kraft Design #32120 are obvious:



**Fig. 6: Side-by-Side Comparison of '617 Design & Kraft Design #32120**

The shape, color, and direction of the scrollwork are different; the flower at the center of the '617 design is smaller, less pronounced, and of a different color than the flower

13

in the #32120 design; the raised silver edge on the '617 cross is thinner; and the general shapes of the crosses themselves are also different. While the two crosses use similar elements, the elements themselves and their arrangement in the two designs are sufficiently dissimilar that no reasonable jury could find striking similarity. *See Guzman*, 808 F.3d at 1039; *see also Batiste*, 976 F.3d at 505 ("After carefully listening to each of [plaintiff's] songs and the defendants' song that allegedly infringes it, we conclude that the songs 'are in no way similar enough' for a reasonable jury to find striking similarity."); *Ferguson*, 584 F.2d at 114 ("The evidence presented clearly does not raise a question of fact as to whether the two [designs] were so strikingly similar as to preclude the possibility of independent creation.").

The differences between the '617 design with the 3-D Rope Design are likewise obvious:



**Fig. 7: Side-by-Side Comparison of '617 Design & 3-D Rope Design**

The scrollwork appears entirely different in shape, color, thickness, and direction. In the 3-D Rope Design, moreover, the scrollwork originates from a silver circle surrounding the flower, not from the flower itself as in the '617 design. *See* Fig. 7.

14

Further, the 3-D Rope flower is circumscribed by a "silver lariat" not present in the '617 design and is of a different shape and color with a different stone in the center. *See* Docket No. 41, Ex. 4 at 5. The angles and proportions of the two crosses themselves are also dissimilar. *See* Fig. 7. Thus, like the #32120 cross, 3-D Rope Design is "in no way similar enough" to the '617 design that a jury could reasonably conclude they are strikingly similar. *Batiste*, 976 F.3d at 505.

Finally, a comparison of the '288 design with Kraft Design #32110 shows numerous differences:



**Fig. 8: Side-by-Side Comparison of
'288 Design & Kraft Design #32110**

Although the image of the '288 design provided by Berg is blurry, the shapes of the two crosses are noticeably different, the scrollwork follows different paths, and the angles of the cross arms of the two designs are dissimilar. *See* Fig. 8. As a result, no reasonable jury examining these two images could conclude they are so strikingly similar as to preclude independent creation, prior common source, and coincidence. *See Batiste*, 976 F.3d at 505.

\* \* \*

15

In sum, Berg failed "to raise a genuine dispute as to either a combination of access and probative similarity or, absent proof of access, striking similarity." *Id.* at 502. Berg presented no evidence of direct access or a reasonable opportunity of access, and he failed to raise a genuine dispute about whether M&F Western's crosses are so strikingly similar to his designs that they must have been copied. Accordingly, Berg's remaining copyright claims fail as a matter of law, and M&F Western's motion is **GRANTED**.

## IV.

M&F Western has also filed a Motion to Strike Plaintiff's Superseding Answers and Plaintiff's Declaration. Docket No. 77. In the motion, M&F Western asks the Court not to consider Berg's new interrogatory responses regarding the protected elements of the '617 and '288 copyrights or documents from Berg's prior lawsuit, including the new image of the '617 cross design.

Based on the Court's analysis above, M&F Western's motion is moot because Berg's remaining copyright claims fail as a matter of law either way. If the Court were to strike the new responses and image, Berg's claims would still fail for lack of evidence of actual copying. Berg's amended interrogatory responses do not address copying (either access or similarity). *See* Docket No. 72 at 5–6. And analyzing the original, blurry image of the '617 design, rather than the new image, would not change the Court's conclusion that the M&F Western cross designs are in no way similar enough to the '617 design for a reasonable jury to find striking similarity. *See Batiste*, 976 F.3d at 505.

16

Accordingly, the Court **DENIES** as moot M&F Western's Motion to Strike (Docket No. 77).

**V.**

Based on the foregoing, the Court **GRANTS** Defendant's Motion for Partial Summary Judgment (Docket No. 41) and **DENIES** as moot Defendant's Motion to Strike Plaintiff's Superseding Answers and Plaintiff's Declaration (Docket No. 77).

So **ORDERED** and **SIGNED** this **29th** day of **December, 2020.**

*[signature]*
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE