IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ROBERT BERG, | § |
| Plaintiff, | § |
| v. | § Case No. 6:19-cv-00418-JDK |
| M&F WESTERN PRODUCTS, INC., | § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Attorneys' Fees and Costs (Docket No. 101). The Court previously granted Defendant's motions for summary judgment (Docket Nos. 37 & 95). Shortly thereafter, the Court orally denied Defendant's motion for sanctions without prejudice to re-asserting it with a motion for fees and costs pursuant to 17 U.S.C. § 505 in one consolidated motion. Defendant re-asserted those claims in the present motion, seeking $483,808.20 in fees and costs from Plaintiff Robert Berg and his counsel Richard Liebowitz. Docket No. 101. For the following reasons, the Court **GRANTS** Defendant's motion.

I.

Plaintiff Berg and Defendant M&F Western both design and sell western jewelry. Docket No. 95 at 1. Here, Berg sued M&F Western for copyright infringement, alleging that M&F Western was infringing certain of his designs for cross pendants and belt buckles. Docket No. 1. M&F Western first sought summary judgment on the belt-buckle infringement claims because the allegedly infringing

1

designs predated the creation of Berg's copyrighted designs. Docket No. 27. The Court granted partial summary judgment regarding the belt buckles in July 2020. Docket No. 37.

A month later, M&F Western moved for summary judgment on the cross-pendant-infringement claims. Docket No. 41. M&F Western argued that Berg's cross-pendant designs were not copyrightable and that "Berg ha[d] not produced a shred of credible evidence demonstrating th[at] M&F Western copied Berg's designs." *Id.* at 1–2. The Court granted partial summary judgment regarding the cross pendants in December 2020 after receiving supplementary briefing. Docket No. 95.

M&F Western also sought sanctions against Berg's counsel, Richard Liebowitz. M&F Western argued that it had "repeatedly told Mr. Liebowitz that his client's claims [we]re without basis in fact or law because his client's Buckle Design was created and published seven years after M&F Western's." Docket No. 42 at 1. And "[r]ather than removing the Buckle Claim when he filed the Amended Complaint, Mr. Liebowitz . . . add[ed] entirely new facts that nonetheless do not address the fundamental failure of the claim." *Id.* The Court denied this motion without prejudice in January 2021 and allowed M&F Western to re-assert the arguments in a motion for attorneys' fees and costs, which is now all that remains before the Court.

M&F Western argues that it is entitled to reasonable fees and costs totaling $483,808.20, both from Berg as the prevailing party in a copyright action and from Liebowitz as a result of his litigation misconduct. Docket No. 101. Berg responds by arguing that granting fees and costs would not further the purposes of the Copyright

2

Act and that his claims were objectively reasonable and properly motivated. Docket No. 103. Alternatively, Berg argues that M&F Western's fee total "is grossly excessive and should be reduced by 50%." *Id.* at 15. Liebowitz, in opposing sanctions, argues that he was justified in ignoring factual evidence provided by M&F Western and that Rule 11 should not be used "as a form of compensation to Defendant under a fee-shifting theory." Docket No. 45 at 9–11; Docket No. 105 at 3–4.

The Court will first address the cost request under 17 U.S.C. § 505, and then analyze the request for sanctions.

## II.

### A.

The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Peter v. Nantkwest, Inc.*, 140 S. Ct. 365, 370 (2019) (internal quotations omitted) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)). Parties seeking to rebut the American Rule presumption must specify the statute, rule, or other grounds that entitle them to an award. FED. R. CIV. P. 54(d)(2)(B). M&F Western claims entitlement to fees as the prevailing party in a copyright action.

Under 17 U.S.C. § 505, "the court in its discretion may allow the recovery of full costs by or against any party. . . . [T]he court may also award a reasonable attorney's fee to the prevailing party as part of the costs." Section 505 fee awards are discretionary, but they are "the rule rather than the exception and should be awarded routinely." *Positive Black Talk, Inc. v. Cash Money Recs., Inc.*, 394 F.3d 357, 381–82

3

(5th Cir. 2004), *abrogated on other grounds*, *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

Notwithstanding the Fifth Circuit's direction to award them routinely, fee awards are not automatic. *Virgin Recs. Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008) (per curiam). In exercising its discretion, courts consider several non-exclusive factors: frivolousness, motivation, objective unreasonableness, and the need to either compensate or deter. *Id.* (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)). The balancing of these *Fogerty* factors must further the purposes of the Copyright Act: "encouraging and rewarding authors' creations while also enabling others to build on that work." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016).

The parties do not dispute that M&F Western is the prevailing party here. The Court thus turns now to the *Fogerty* factors.

*First*, the Court considers the frivolousness and objective reasonableness of Berg's copyright claims. A key function of copyright law's fee-shifting provision is encouraging people to litigate strong positions, either as a plaintiff or defendant, and discouraging people from commencing or settling nuisance suits. *Id.* at 1986–87. While all elements must be considered, this consideration may be given special weight. *Id.* at 1988.

On the buckle claims, M&F Western's supposedly infringing design was marketed nearly a decade before Berg's creation and publication of his copyrighted designs, and Berg's only answer to this fact was unsupported speculation that M&F

4

Western's evidence "easily could have been fabricated . . . using a simple digital editing program."[1] Docket No. 37 at 5–9. These claims were clearly frivolous and objectively unreasonable because it is impossible for M&F Western's design to be a copy of something that did not yet exist when it was created. *Id.* at 7.

On the cross-pendant claims, Berg argued that three of M&F Western's designs infringed two of Berg's designs. The Court found that Berg did not provide sufficient evidence that M&F Western had access to Berg's specific designs and that the works were not similar enough to make up for that lack of access. Docket No. 95 at 16. The Court's grant of summary judgment does not necessarily mean that the claim was frivolous or objectively unreasonable. *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 794 (S.D. Tex. 2009) (citing *Positive Black Talk*, 394 F.3d at 382 n.23). There is a difference between a meritless claim and a frivolous claim. *Id.* But "[a] claim is more likely to be found frivolous or objectively unreasonable [] when the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work [is] obvious." *Id.* And the Court explicitly found that the differences between the accused M&F designs and Berg's designs were "obvious." Docket No. 95 at 13–14. For the one design where the Court did not describe the differences as "obvious," the designs were "noticeably different" despite the low-resolution images Berg provided. *Id.* at 15. Moreover, Berg could not provide more than a "speculative and conjecture-

---

[1] Berg also argued that M&F Western never acquired the intellectual property rights for the earlier buckle. The Court found that the right to the earlier buckle was transferred to M&F Western as a matter of law, but regardless of ownership, this earlier buckle's availability to M&F Western undermines any tentative theory that the supposedly infringing designs were copied from Berg's designs.

5

based theory of access." *Id.* at 12. Thus, the cross-pendant claims were likewise frivolous and objectively unreasonable.

*Second*, the Court considers Berg's motivation in bringing his copyright claims. Infringement claims brought to protect copyrights have proper motivation, whereas suits brought with "malevolent intent" do not. *Virgin Recs.*, 512 F.3d at 726. Specifically, litigation meant to interfere with another party's business, cause the other party to incur needless legal expenses, or extract settlement is improper. *Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17-cv-546, 2020 WL 896674, at *6 (E.D. Tex. Feb. 25, 2020), *appeal filed sub nom.*, *Virtual Chart Sols. I, Inc. v. Surgical Notes, Inc.*, No. 20-40155 (5th Cir. 2020).

Berg's motivation appears to have been mixed. On the one hand, Berg—while discussing this lawsuit on Facebook—admonished "those thinking of copying copyri[ghted] designs" to forego thievery and "respect others works." Docket No. 26, Ex. H at 49. He further stated that it was "not only for [his] company but for all future artists in [A]merica." *Id.* at 47.

But on the other hand, Berg's conduct strongly implies improper motivation. Berg identified twenty-seven other western-wear companies "lined up for litigation" and was actively sending demand letters that used this case to feign leverage. Docket No. 26, Exs. G & H. Specifically, Berg was claiming that other parties should settle his claims against them because M&F Western was facing $1,500,000 in damages for ten infringing designs in this case. *See, e.g.*, Docket No. 26, Ex. G at 41. This posturing colors all of Berg's actions here and strongly suggests that he was more

6

motivated to maximize the number of infringement claims for leverage in extracting settlements—both from M&F Western and other western-wear companies—than he was motivated to protect his intellectual property. *Compare, e.g.*, Docket No. 72 at 4 *and* Docket No. 74, Ex. A at 7, *with* Docket No. 23, Ex. A (changing the supposedly infringed-upon cross pendant mid-briefing without explanation); Docket No. 72 at 4–6, *with* Docket No. 41, Ex. 2 (changing the theory of copyrightability mid-briefing after being notified of potential insufficiency); Docket No. 23 at ¶ 17, *with* Docket No. 1 at ¶¶ 10–11 (changing the theory of access after being notified of factual impossibility). Berg's motive in this case seems improper, especially when considering that his copyright claims were frivolous and objectively unreasonable.

*Third*, the Court considers the need to compensate M&F Western for defending itself and to deter Berg and similar plaintiffs. "Compensation helps to ensure that all litigants have equal access to the courts to vindicate their statutory rights." *Cynthia Hunt Prods., Ltd. v. Evolution of Fitness Hous., Inc.*, Civ. No. H-07-0170, 2007 WL 3047220, at *2 (S.D. Tex. Oct. 18, 2007) (quoting *Quinto v. Legal Times of Wash., Inc.*, 511 F. Supp. 579, 581 (D.D.C. 1981)). It also prevents copyright law from going unenforced where there is no economic incentive to defend (or pursue) a claim through expensive litigation. *Id.* Awarding fees to a successful defendant may also deter future litigants from pursuing "overaggressive assertions of copyright claims." *Kirtsaeng*, 136 S. Ct. at 1989.

As noted above, M&F Western successfully defended itself against meritless claims that were aggressively pursued by Berg and his counsel in spite of undisputed

evidence to the contrary. Awarding fees to M&F Western will ensure that future litigants in the company's position seek to defend their rights. It will also force Berg—who has claimed to have more than two dozen similar lawsuits ready to go, Docket No. 26, Ex. H at 47—and future litigants to think carefully about the merits of their claims before filing another suit. Accordingly, a particular need for deterrence and compensation exists here.

* * *

After considering the *Fogerty* factors, the Court finds that M&F Western is entitled to full costs, including reasonable attorneys' fees, as the prevailing party under 17 U.S.C. § 505.

## B.

Having concluded that M&F Western is entitled to reasonable attorneys' fees, the Court turns to the amount. "The calculation of attorney's fees involves a well-established process." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998) (internal citations omitted). First, the Court calculates "a 'lodestar' fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Id.* Then, the Court "considers whether the lodestar figure should be adjusted upward or downward depending on the circumstances of the case." *Id.* The lodestar figure should only be modified in "exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

In calculating the lodestar value, the reasonable number of hours is determined by subtracting duplicative, excessive, and inadequately documented hours from the records provided by the prevailing party. *Id.* (citing *Hensley v.*

8

*Eckerhart*, 461 U.S. 424, 432–34 (1983)). And the reasonable hourly rates are determined by looking at what is reasonable in the community, rather than what may be reasonable nationwide. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012) (citing *Tollett v. City of Kemah*, 285 F.3d 356 (5th Cir. 2002)).

Supported by 157 pages of documentation and declarations, M&F Western has proposed a lodestar value of $483,808.20 based on 1035.15 hours worked at billing rates ranging from $145 per hour for a staff-member to $885 per hour for a partner with one associate billing 509.8 of those hours at a maximum rate of $385 per hour. Docket No. 101, attachs. 1& 2; Docket No. 102. Berg responds with two conclusory sentences:

> In the event the Court grants a fee award, the Court should reduce Defendant's fee application across-the-board by at least fifty percent on grounds that defense counsel intentionally racked up unnecessary fees through its refusal to extend the filing of lengthy pretrial submissions while its second dispositive motion remained pending. The overall hours billed are also hyper-inflated.

Docket No. 103 at 15. Berg does not argue that any of the attorneys' billing rates are unreasonable. Nor does he identify any "duplicative, excessive, [or] inadequately documented hours from the records provided" by M&F Western. *Watkins*, 7 F.3d at 457. Berg elsewhere suggests that, once M&F Western filed its dispositive motions, it should have stopped working on the case altogether because "it knew [those motions] would be dispositive of the case." Docket No. 105 at 2. But as the Court's Scheduling Order makes clear, "[a] party is not excused from the requirements of this scheduling order by virtue of the fact that dispositive motions are pending." Docket

9

No. 20 at 9. And even that argument addresses only a portion of the fees. Docket No. 105 at 2. Without more, the Court is left guessing about what is objectionable in M&F Western's billing records.

M&F Western, on the other hand, has provided a breakdown of all hours billed between September 2019 and February 2021, two declarations attesting to the accuracy of those records from its lead counsel, and a declaration attesting to the reasonableness of the billing rates from Perkins Coie's Director of Pricing and Practice Management Economics. Docket No. 101, attachs. 1& 2; Docket No. 102. The Court has reviewed these records and declarations and finds the hours billed and the billing rates are reasonable. Further, the Court has compared the billing rates to a normalized median rate—calculated using adjusted-for-inflation median rates provided by the State Bar of Texas.[2] This comparison further confirms the reasonableness of the rates provided by M&F Western. *Cf. Nguyen v. Hoang*, Civ. No. H-17-2060, 2018 WL 8732490, at *7 (S.D. Tex. Oct. 19, 2018) (affirming the reasonableness of fees slightly above the average billing rate).

Accordingly, the Court accepts M&F Western's proposed lodestar value of $483,808.20.

---

[2] *See* 2015 HOURLY FACT SHEET, STATE BAR OF TEX. 1–8 (2016), *available at* https://www.texasbar.com/AM/Template.cfm?Section+Demographic_and_Economic_Trends&Template=/CM/contentDisplay.cfm&ContentID=34182; *CPI Inflation Calculator*, U.S. BUREAU OF LABOR STATS. (last accessed June 4, 2021), https://www.bls.gov/data/inflation_calculator.htm; *see also Stanton v. Jarvis Christian Coll.*, No. 6:18-cv-479-JDK-JDL, 2020 WL 5269439, at *6 (compiling cases that use the fact sheet in determining reasonable rates).

10

## C.

The lodestar value is presumptively reasonable but may be adjusted for the circumstances of the case. *Fordice*, 7 F.3d at 457 (citing *Hensley*, 461 U.S. at 432–34); *Migis*, 135 F.3d at 1047. Courts look to the twelve *Johnson* factors in considering whether such an adjustment is needed. *Migis*, 135 F.3d at 1047 (discussing *Johnson v. Ga. Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Adjustments are proper only in "exceptional cases." *Fordice*, 7 F.3d at 457. And neither party has argued that this is an exceptional case or that circumstances require an adjustment here.

In any event, the Court has independently reviewed the *Johnson* factors and declines to adjust the lodestar value. The Court considered two of the factors—the time and labor required and the experience, reputation, and ability of the attorneys—in calculating the lodestar, and thus these two factors will not impact the adjustment analysis. *Migis*, 135 F.3d at 1047. And the parties failed to provide the Court with sufficient information to consider the following six factors in the adjustment analysis: the preclusion of other employment by the attorney due to acceptance of the case; the customary fee; time limitations imposed by the client or the circumstances; the undesirability of the case; the nature and length of the professional relationship with the client; and awards in similar cases. Of the remaining four factors, two cut in favor of reducing the lodestar and two cut in favor of maintaining it. While the novelty and difficulty of the case and the skill required to perform the legal services might support discounting the fee, the Court finds that the fee structure and the result obtained more strongly support maintaining the lodestar value. Further, the

result obtained is "the most critical factor" and the Court is directed to give it special consideration. *Id.*

The Court thus accepts the lodestar value—$483,808.20—as the reasonable fee in this case.

* * *

Having determined that M&F Western is entitled to fees and costs under 17 U.S.C. § 505, that the proposed lodestar value is reasonable, and that no adjustment is warranted, the Court hereby **GRANTS** M&F Western's motion for attorneys' fees and costs of $483,808.20.

### III.

M&F Western also seeks a sanction against Richard Liebowitz, Berg's counsel, under either Federal Rule of Civil Procedure 11 or the Court's inherent powers. Docket No. 101.

### A.

Rule 11 provides that an attorney "presenting to the court a pleading, written motion, or other paper . . . certifies that to the best of the person's knowledge, information, and belief . . . it is not being presented for any improper purpose[,] . . . the claims . . . are warranted[, and] . . . the factual contentions have evidentiary support or . . . will likely have evidentiary support." The Supreme Court has explained that this rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not imposed for any improper purpose.'" *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Accordingly,

12

counsel must: (1) make a reasonable inquiry into the factual basis of any pleading, motion or other paper; (2) make a reasonable inquiry into the law; and (3) not sign a pleading, motion, or other paper intended to delay proceedings, harass another party, or increase the costs of litigation. *St. Anant v. Bernard*, 859 F.2d 379, 382–83 (5th Cir. 1988) (citing *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988) (en banc)); *see also Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992). There is a presumption that pleadings are filed in good faith and the party seeking sanctions has the burden to prove otherwise. *Tompkins v. Cyr*, 202 F.3d 770, 788 (5th Cir. 2000). Under Rule 11(c), a court may "impose an appropriate sanction" on any attorney who violates the rule. FED. R. CIV. P. 11(c).

M&F Western argues that "Liebowitz's approach in re-asserting the Buckle Claims with no investigation and no basis" violates Rule 11, "is consistent with his behavior in other cases geared toward leveraging a settlement," and is therefore sanctionable. Docket No. 101 at 9. The Court agrees. Liebowitz knew M&F Western's buckles predated Berg's designs, and yet he signed his name to pleadings, motions, and other papers claiming that the buckles illegally copied Berg. As M&F Western has conclusively demonstrated, its counsel sent Liebowitz authenticated photos of a catalog with the allegedly infringing buckles dated 1995—seven years before Berg created his designs. Docket No. 37 at 7–8. Liebowitz's only justification for pursuing these claims in the face of such fatal evidence was his unsupported speculation that the 1995 catalog "easily could have been fabricated." Docket No. 30 at 8. And realizing this was a losing argument, Liebowitz alternatively claimed that

13

M&F Western did not own the earlier buckles, ignoring the asset purchase agreement that plainly transferred the relevant intellectual property rights. Docket No. 37 at 8–9. Further, this is not a first offense for Liebowitz, who has been described by another court as a "clear and present danger to the fair and efficient administration of justice." *Mondragon v. Nosrak LLC*, No. 19-cv-01437-CMA-NRN, 2020 WL 2395641, at *1 (D. Colo. May 11, 2020); *see also Rock v. Enfants Riches Deprimes, LLC*, No. 17-cv-2618, 2020 WL 468904, at *4 (S.D.N.Y. Jan. 29, 2020) (detailing Liebowitz's "fail[ure] to investigate the evidentiary basis for a Complaint," misleading the court, and making meritless arguments).

Accordingly, the Court finds that Liebowitz violated Rule 11 by filing pleadings, motions, and papers reasserting and maintaining the buckle claims knowing that the claims were meritless. *See, e.g.*, *Estate of Milburn v. Colonial Freight Sys., Inc.*, No. 2:19-cv-233-JRG, 2020 WL 6701557, at *4–5 (E.D. Tex. Nov. 12, 2020) (sanctioning counsel who, "despite being firmly on notice that Plaintiffs' claims were barred as a matter of law, . . . continued to pursue those claims"); *see also Morrison v. Walker*, 939 F.3d 633, 639–40 (5th Cir. 2019) (affirming that "disregard[ing] overwhelming evidence" of an "obvious bar" to a claim violates Rule 11).

### B.

Having found that Liebowitz violated Rule 11, the Court must impose "an appropriate sanction." *Cooter & Gell*, 496 U.S. at 393. "Such a sanction may, but need not, include payment of the other parties' expenses." *Id.* When selecting an appropriate sanction, "[c]ourts have a duty to impose the least severe sanction that

is sufficient to deter future conduct." *Zuffante v. Stephens*, No. 3:13-cv-1146-B, 2013 WL 4829193, at *1 (N.D. Tex. Sept. 9, 2013) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 196 (5th Cir. 1993)); FED. R. CIV. P. 11(c)(4); *see also Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1190 (E.D. Tex. 1996) (listing factors to consider).

The Court has already awarded M&F Western its attorneys' fees and costs. This cures the injury stemming from Liebowitz's misconduct. It may also deter future misconduct because clients will be less willing to retain Liebowitz if his unwillingness to vet and reject frivolous claims causes such expense. *Thomas*, 836 F.2d at 877 ("[T]he imposition of sanctions pursuant to Rule 11 is meant to deter attorneys from violating the rule." (quoting *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (en banc))). Further, the Eastern District of Texas recently suspended Liebowitz from practicing law in this district based on his suspension from the practice of law before the Southern District of New York. *In re Liebowitz*, No. 6:21-mc-9, Docket No. 1. Taking into account Liebowitz's misconduct, the fee award, and Liebowitz's indefinite suspension, the Court finds that a nonmonetary sanction is sufficient here to deter future misconduct.

Accordingly, the Court hereby publicly **REPRIMANDS** Richard Liebowitz for his misconduct in this case and **ADMONISHES** him that, should his ability to practice be restored, future breaches of Rule 11 duties will result in the imposition of more severe sanctions. *See, e.g.*, *Thomas*, 836 F.2d at 878; *Gonzalez v. Bank of Am., N.A.*, Civ. No. H-13-861, 2014 WL 12616132, at *7–8 (S.D. Tex. Aug. 5, 2014).

**IV.**

The Court hereby **GRANTS** M&F Western's motion and

**ORDERS** Robert Berg to pay M&F Western's attorneys' fees and costs in the amount of $483,808.20;

**REPRIMANDS** Richard Liebowitz for breaching his duties under Federal Rule of Civil Procedure 11; and

**ADMONISHES** Richard Liebowitz that future breaches of such duties will result in imposition of more severe sanctions.

So **ORDERED** and **SIGNED** this **28th** day of **June, 2021.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE